## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **INDUSTRIAL BANK, N.A.** | * | |
| **2002 Eleventh Street, N.W.** | | |
| **Washington, D.C.  20001** | * | |
| | | |
| **Plaintiff** | * | **Civil Action No. _____** |
| | | |
| **v.** | * | |
| | | |
| **UNITED STATES OF AMERICA** | * | |
| | | |
| Serve on:  Kenneth L. Wainstein, Esq. | * | |
| United States Attorney for the | | |
| District of Columbia | * | |
| 555 4th Street, N.W. | | |
| Washington, D.C.  20530 | * | |
| | | |
| And | * | |
| | | |
| The Honorable Alberto Gonzales | * | |
| Attorney General for the | | |
| United States of America | * | |
| 950 Pennsylvania Ave., N.W. | | |
| Washington, D.C. 20530-0001 | * | |
| | | |
| And | * | |
| | | |
| **COMMISSIONER OF INTERNAL** | * | |
| **  REVENUE SERVICE** | | |
| **1111 Constitution Avenue, N.W.** | * | |
| **Washington, D.C.  20224** | | |
| | * | |
| Serve on:  Kenneth L. Wainstein, Esq. | | |
| United States Attorney for the | * | |
| District of Columbia | | |
| 555 4th Street, N.W. | * | |
| Washington, D.C.  20530 | | |
| | * | |
| Defendants | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Industrial Bank, N.A. (the "Bank"), by its undersigned counsel, files this Complaint for Declaratory Judgment and Injunctive Relief against Defendants United States of America and the Commissioner of the Internal Revenue Service (collectively the "IRS"), and in support, states as follows:

### Introduction

This Complaint seeks a declaration that the Bank -- by virtue of preexisting security agreements, subsequent forbearance agreements, and properly perfected liens -- has a superior claim than the IRS to the proceeds of a Settlement Agreement between the Small Business Administration ("SBA") and Nexgen Solutions, Inc. ("Nexgen"). Beginning in 1996, the Bank extended to Nexgen several loans totaling more than $300,000. The loans were secured by blanket liens on all of Nexgen's assets. The Bank perfected its interest in the Collateral by filing a UCC-1 financing statement with the Maryland State Department of Assessments and Taxation on July 16, 1997 and with the District of Columbia Recorder of Deeds. The SBA has, in part, refused to release the remaining funds of the Settlement Agreement to the Bank because of the IRS's Notice of Levy directing the SBA to turn over the remaining proceeds. The IRS has an inferior interest in these funds since its Federal Tax Lien was not filed until March 2004 -- almost seven years after the Bank perfected its security interests in **all** of Nexgen's assets.

### Parties

1.    The Bank is a national banking association organized under the laws of the United States of America. The Bank conducts business in Maryland, Virginia, and the District of Columbia.

2.    The IRS is a bureau of the United States Department of the Treasury under the

immediate direction of the Commissioner of Internal Revenue (the "Commissioner"). The Commissioner has general superintendence of the assessment and collection of all taxes imposed by any law providing internal revenue.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this matter pursuant to 26 U.S.C. § 7426 and 28 U.S.C. § 1331.

4.      Venue is proper in this District because the United States of America is a named defendant and the IRS is a federal agency located in the District of Columbia.

### Factual Background

### NEXGEN LOANS

5.      On or about September 9, 1996, the Bank extended to Nexgen a United States Small Business Administration loan in the total principal amount of $125,000. During all relevant times, Edward L. Howlette, Jr. ("Howlette") was President of Nexgen and the personal guarantor of its obligations to the Bank. Upon information and belief, Howlette is currently in personal bankruptcy.

6.      Pursuant to the terms of the Note, Nexgen was required to repay the Note indebtedness plus accrued interest by paying to the Bank monthly installments of $2,107.58 commencing October 9, 1996 and continuing thereafter through and including September 9, 2003.

7.      The Note indebtedness was secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired (the "First Note Collateral").

8.     Nexgen and Howlette later borrowed an additional $250,000 from the Bank as evidenced by a Promissory Note dated May 31, 1997 (the "Second Note").

9.     The Second Note indebtedness was also secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired (the "Second Note Collateral"), as evidenced by a Commercial Security Agreement dated May 31, 1997 ( the "Second Security Agreement").  (The First Note Collateral and Second Note Collateral are hereinafter referred to as the "Collateral").

10.     The Bank perfected its interest in the Collateral by filing a UCC-1 financing statement with the Maryland State Department of Assessments and Taxation on July 16, 1997 and with the District of Columbia Recorder of Deeds.  Evidence of the perfection of these liens are incorporated herein and attached as Exhibit 1.

11.     The Bank agreed to advance additional funds to Nexgen and Howlette under a line of credit arrangement with the sum of such additional funds and the balance of the Second Note indebtedness collectively capped at $330,000.

12.     Nexgen and Howlette later defaulted under both the Note and Second Note.  They defaulted under the Note by failing to pay the January and February, 1999 installments of $2,107.58 each.  They defaulted under the Second Note by failing to pay the $264,950.67 balance owed when the Second Note matured on October 30, 1998.

13.     On or about September 1, 2000, the Bank filed a Complaint for Confession of Judgment, Breach of Contract, and Preliminary and Permanent Injunction in the Circuit Court for Montgomery County.  On September 1, 2000, the Clerk for the Circuit Court for Montgomery entered an Amended Notice of Judgment granting the Bank a judgment by confession against

Nexgen (the "Nexgen Judgment").

14.    On or about September 20, 2000, the Bank and Nexgen entered into an interim forbearance agreement, (the "First Forbearance Agreement"), in which Nexgen and Howlette agreed, among other things, to make an immediate payment of $28,000.00 to the Bank and to pay the full amount owed under the Note and the Nexgen Judgment, including interest, late charges, applicable fees, costs, and attorney's fees, on or before January 1, 2001.

15.    Nexgen was unable to pay the Bank in full by January 1, 2001. The Bank and Nexgen, therefore, agreed on April 10, 2001, to modify and extend the First Forbearance Agreement thereby extending the time for payment in full to September 1, 2001 (the "Second Forbearance Agreement").

### SMALL BUSINESS ADMINISTRATION SETTLEMENT AGREEMENT

16.    On or before August 14, 2001, Howlette informed the Bank that Nexgen would not be in a position to pay the balance in full by September 1, 2001, but suggested that Nexgen's debt would be paid on an indefinite timetable through proceeds from an agreement between Nexgen and the Small Business Administration.

17.    On the basis of Howlette's representation that Nexgen's relationship with the SBA would result in proceeds sufficient to pay the Bank in full, the Bank agreed to modify and extend the existing forbearance agreements with Nexgen on or about March 4, 2003 (the "Third Forbearance Agreement").

18.    On or before December 2003, the Bank learned that SBA had terminated its contract with Nexgen for convenience. Nexgen, however, took the position that the termination was wrongful and initiated litigation to contest the termination. On December 11, 2003, the Bank, as a secured and judgment creditor, put Nexgen and Howlette on notice of its lien against

all of Nexgen's assets and requested that Nexgen and Howlette provide it with all information and documents relevant to its claims against the SBA.

19.    On or about November 15, 2004, Nexgen and the SBA executed the Settlement Agreement in which the SBA agreed to pay $2,900,00.00 to Nexgen immediately, with $600,000.00 "carved out" by the SBA. The carve out was intended to reimburse small businesses with legitimate claims as a result of their involvement in Nexgen's small business exchange program with the SBA. Any remaining balance from the $600,000.00 was to be remitted to Nexgen. A copy of the Settlement Agreement is attached hereto as Exhibit 2.

20.    Notwithstanding its entry into the Settlement Agreement and receipt of substantial proceeds from the SBA, Howlette did not inform the Bank of the settlement, despite the requirement that Nexgen do so pursuant to the terms of its forbearance agreements. In fact, the Bank did not become aware of the Settlement Agreement until it received notice of it from an anonymous source.

21.    When confronted by the Bank on or about February 7, 2005, Nexgen informed the Bank that the SBA had retained "well over $300,000.00" that would be paid to it "within the next 60 days." Nexgen further proposed that it would assign to the Bank its interest in the remaining settlement proceeds from the SBA.

22.    On or about February 28, 2005, Nexgen and the Bank entered into a revised forbearance agreement in which Nexgen, among other things, agreed to execute an assignment of its interest in the full amount of the SBA proceeds.

23.    On or about May 15, 2005, Nexgen assigned its interest in the Settlement Agreement to the Bank (the "Assignment"). A copy of the Assignment is attached hereto as Exhibit 3. Nexgen and the Bank also executed a Notice of Assignment, which was sent to the

SBA along with a copy of the Assignment document. A copy of the Notice of Assignment is attached hereto as Exhibit 4. On or about July 13, 2005, the Bank sent a copy of the Assignment and Notice of Assignment to the SBA and requested a date upon which the SBA anticipated making the final settlement payment disbursement.

24.     In late 2005, the SBA informed the Bank that, although all payments owed to the small business claimants pursuant to the Settlement Agreement had been made, the Bank would not be paid before the close of 2005.

25.     In or about January 2006, the SBA notified the Bank that it intended to conduct another round of direct notification to potential small business claimants. The Bank informed the SBA that it did not consent to payments to any additional small business claimants and the remaining settlement proceeds constituted the Bank's collateral.

26.     As a result of not having received any payments from the SBA and upon being notified that the SBA intended to conduct another round of direct notification to potential claimants, the Bank sent a letter to the SBA on January 18, 2006, in which it reiterated its rights to receive the final settlement proceeds, notified the SBA of the balance owed by Nexgen, withheld consent to payments to additional claimants that would cause insufficient funds remaining to pay the Bank in full, and gave the SBA an additional ninety days to complete the settlement distribution process. A copy of the letter to the SBA from Robert A. Gordon, Esq., dated January 18, 2006, is attached hereto as Exhibit 5. The Bank also demanded an immediate partial payment of $50,000.00 as a show of good faith. Ex. 5 at 2.

27.     The SBA made a payment to the Bank on or about March 24, 2006, in the amount of $50,000.00.

28.     Despite repeated demands, the SBA has failed and refused to make any

additional payments to the Bank pursuant to the terms of the Settlement Agreement.

INTERNAL REVENUE SERVICE NOTICE OF LEVY

29.     On or about August 14, 2006, the Bank learned that the IRS had advised the SBA of a tax levy against Nexgen in the amount of $1,050, 236.35.  A copy of the IRS's Notice of Levy is attached hereto as Exhibit 6.

30.     On or about August 17, 2006, the Bank performed a Federal Tax Lien Search and discovered that the IRS has two liens filed against Nexgen.  A copy of the Federal Tax Lien Search Report is attached hereto as Exhibit 7.  Apparently, the IRS filed liens against Nexgen on March 17, 2004 and December 15, 2005, for $504,133.77 and $219,469.43 respectively. *Id.*

31.     The IRS's liens, therefore, were filed no earlier than seven years following the date the Bank perfected its own liens to Nexgen's assets.

32.     In both Maryland and the District of Columbia, jurisdictions where the Bank's liens were filed against Nexgen, the general rule is that where two or more creditors have competing liens against the same property, the creditor whose lien was perfected at the earlier time takes priority over the creditor whose lien was perfected at a later time.  *See* Md. Code, Comm. Law § 9-322 (2007) and D.C. Code § 28:9-322 (2007).

33.     At the request of the IRS, the Bank provided the IRS with documents to support its superior claim to the remaining proceeds of the Settlement Agreement.  These documents included, but were not limited to, the Note and other finance agreements establishing Nexgen's indebtedness to the Bank and proof of the Bank's perfected liens.

34.     Despite the Bank's presentation of proof of its superior claim to the Settlement Agreement proceeds, the IRS has refused to withdraw the Notice of Levy sent to the SBA.

35.     The SBA has maintained that it will not and, indeed, cannot release the remaining

proceeds of the Settlement Agreement unless and until the IRS withdraws the Notice of Levy.

36.    There is no basis whatsoever for the IRS's claim that it has a superior interest in the remaining proceeds of the Settlement Agreement.

## Count I
### (Declaratory Judgment)

37.    The Bank repeats and incorporates herein by reference all facts alleged in paragraphs 1 through 36 above.

38.    An actual controversy exists between the Bank and the IRS, and the Bank is entitled to declaratory judgment under 28 U.S.C. 2201(a).

39.    In particular, an actual controversy exists concerning:

      a.    The Bank's superior claim to the remaining proceeds of the Settlement Agreement; and

      b.    The IRS's wrongful refusal to withdraw its Notice of Levy and thereby allow the SBA to release the remaining proceeds of the Settlement Agreement to the Bank.

WHEREFORE, Plaintiff Industrial Bank, N.A. requests that this Court enter an order:

(1)    Declaring that the Bank has perfected liens that were filed earlier, and are, therefore, superior to the Federal Tax Liens filed by Defendants United States of America and the Commissioner of the Internal Revenue Service, and

(2)    Award Plaintiff Industrial Bank, N.A. the costs of these proceedings and any further relief that this Court deems appropriate.

## Count II
### (Injunctive Relief)

40.    The Bank repeats and incorporates herein by reference all facts alleged in paragraphs 1 through 39 above.

41.    If the IRS is permitted to levy the remaining proceeds of the Settlement

Agreement, the Bank will suffer irreparable harm by its inability to protect its interest in the remaining settlement proceeds and ensure that the settlement fund will not be depleted.

42.     This Court has the authority, pursuant to 26 U.S.C. § 7426(b), to prohibit the IRS's enforcement of the Notice of Levy.

WHEREFORE, Plaintiff Industrial Bank, N.A. requests that this Court enter an order:

(1)     Enjoining Defendants United States of America and the Commissioner of the Internal Revenue Service from enforcing any levy on any remaining funds held by the Small Business Administration in connection with the Settlement Agreement, and

(2)     Award Plaintiff Industrial Bank, N.A. the costs of these proceedings and any further relief that this Court deems appropriate.

Respectfully submitted,

Dated: February 8, 2007

/s/
Alan M. Grochal, D.C. Bar No. 315218
Toyja E. Kelley, D.C. Bar No. 482977
**TYDINGS & ROSENBERG LLP**
100 East Pratt Street, 26th Floor
Baltimore, Maryland  21202
Phone: (410) 752-9700

**Attorneys for Plaintiff**
**Industrial Bank, N.A.**

08/21/00  MON 16:36 FAX 202 722 2096    INDUSTRIAL BANK    Ø 003

The underlying secured transaction being publicized by this Financing Statement ☐ is ☒ is not wholly or partially subject to the Maryland Recordation Tax on the taxable principal amount of the debt: $ _____

To the Court of _____

# MARYLAND FINANCING STATEMENT FORM
## TO BE RECORDED IN LAND RECORDS ☐YES ☒NO
### STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

This Financing Statement dated 05–31–1997 is presented to a filing officer for filing pursuant to the Uniform Commercial Code

| | |
|---|---|
| Debtor(s) (Last Name First) and mailing address:<br>Nexgen Solutions, Inc.<br>8403 Colesville Rd., Suite #915<br>Silver Spring Md 20910, DC 20910<br>No Principal Place of Business in Maryland | Check the box indicating the kind of statement.<br>Check only one box.<br><br>(X) ORIGINAL FINANCING STATEMENT<br>( ) CONTINUATION ORIGINAL STILL EFFECTIVE<br>( ) AMENDMENT<br>( ) ASSIGNMENT<br>( ) PARTIAL RELEASE OF COLLATERAL<br>( ) TERMINATION |

Name and address of Secured Party

INDUSTRIAL BANK, NATIONAL ASSOCIATION
2002 ELEVENTH STREET N.W.

WASHINGTON, DC 20001

Name and address of Assignee

**71988033**

Date of maturity, if any                    Check if proceeds/products of collateral are covered (X)

This Financing Statement covers the following types (or items) of collateral (if collateral is timber to be cut, or minerals (including oil and gas) to be extracted, or accounts therefrom, or crops growing or to be grown or goods which are or are to become fixtures, also describe real estate concerned and add name and address of record owner or record lessee of real estate):

See Attached Exhibit to UCC Financing Statement dated May 31, 1997.

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Maryland from another jurisdiction.

Describe Real Estate if applicable:

This statement is filed without the debtor's signature to perfect a security interest in collateral (check appropriate box)
( ) already subject to a security interest in the state of _____ when it was brought into this state or
    when the debtor's location was changed to this state, or
( ) which is proceeds of the original collateral described above in which a security interest was perfected.

                                                INDUSTRIAL BANK, NATIONAL ASSOCIATION

By: Edward Howlette, Jr., President            Signature of Secured Party
Signature of Debtor

RECORDED ON JUL 16, 1997 AT 09:17 AM
IN THE FINANCING RECORDS OF THE MD. ST.
DEPARTMENT OF ASSESSMENTS AND TAXATION
ID #:171988033  RECEIPT #:014B2120065
SEE BOTTOM OF PAGE FOR LIBER & FOLIO
RECORDING FEE                    20.00
RECORDATION TAX
EXPEDITED FEE

COUNTY CODE

EXHIBIT E

Exhibit 1.

08/21/00  MON 16:36 FAX 202 722 2006        INDUSTRIAL BANK        ☐004

May 31, 1997

**DEBTOR:**

Nexgen Solutions, Inc.

**MAILING ADDRESS:**

8403 Colesville Rd., Suite #915, Silver Spring Md 20910, DC  20910

**COLLATERAL DESCRIPTION:**

All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures; together with the following specifically described property; Direct assignment of various contracts; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

This Financing Statement is to be recorded in the real estate records.  Some or all of the collateral is located on the following described real estate:

This Exhibit is executed on the same date as the UCC-1 Financing Statement by INDUSTRIAL BANK, NATIONAL ASSOCIATION and the undersigned.

Edward Howlette, III, President                    INDUSTRIAL BANK, NATIONAL ASSOCIATION

_____                    By: _____
Signature(s) of Debtor(s)                         Signature(s) of Secured Party(ies)

3948  0477

08/21/00   MON 16:37 FAX 202 722 2096     INDUSTRIAL BANK     ☑007

This FINANCING STATEMENT is presented to a filing office ~~~~ ing pursuant to the Uniform Commercial Code.

| Debtor(s) (Last Name first) and mailing address: | ~~ured Party(ies) Name and address: | ~~ficer (Date, Time, Number and Filing Office) |
|---|---|---|
| NEXGEN Solutions, Inc. 52-1764732 <br> 1~~~ Vermont Avenue, N.W., #400 <br> ~~~ington, DC 20005 | INDUSTRIAL BANK, NATIONAL ASSOCIATION <br> 2002 ELEVENTH STREET N.W. <br> WASHINGTON, DC 20001 | |

This Financing Statement covers the following types (or items) of collateral (if collateral is crops growing or to be grown or goods which are or are to become fixtures, also describe real estate concerned and add name and address of record owner or record lessee of real estate):

**Name and address of Assignee of Secured Party:**

All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

**Name and address of record owner or lessee of real estate concerned:**

This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate: 1010 Vermont Avenue, N.W., Washington, D.C. 20005

Check [X] if covered. [X] Proceeds of collateral are also covered. [X] Products of collateral are also covered. Number of additional sheets presented: . . . . .

Filed with: **Recorder of Deeds of District of Columbia**

This statement is filed without the debtor's signature to perfect a security interest in collateral (check appropriate box)

[ ] already subject to a security interest in the state of _____ when it was brought into this state, or

[ ] which is proceeds of the original collateral described above in which a security interest was perfected.

NEXGEN Solutions, Inc.

By: _____
          Signature(s) of Debtor(s)

Edward Howlette, Jr., President

(5) Debtor Copy.

INDUSTRIAL BANK, NATIONAL ASSOCIATION

By: _____
          Signature(s) of Secured Party(ies)

08/21/00  MON 16:37 FAX 202 722 2096    INDUSTRIAL BANK    ☑008

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code:

| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) 006.2000560 | 3. Maturity date (if any): |
|---|---|---|
| Nexgen Solutions, Inc. 1010 Vermont Avenue, N.W. Suite 400 Washington, D.C. 20005 | Industrial Bank, N.A. 2002 11th Street, N.W. Washington, D.C. 20001 | For Filing Officer (Date, Time, Number, and Filing Office) |

4. This financing statement covers the following types (or items) of property:

SEE SCHEDULE "A" ATTACHED HERETO

5. Assignee(s) of Secured Party and Address(es)

96 OCT -2 PM 3:26

96 0000 17147

This statement is filed without the debtor's signature to perfect a security interest in collateral.  (check ☒ if so)    Filed with:

☐ already subject to a security interest in another jurisdiction when it was brought into this state.

☐ which is proceeds of the original collateral described above in which a security interest was perfected.

Check ☒ if covered: ☒Proceeds of Collateral are also covered. ☒ Products of Collateral are also covered. No. of additional Sheets presented:

| Nexgen Solutions, Inc. | President | Industrial Bank, N.A. | AVP |
|---|---|---|---|
| By [signature] Signature(s) of Debtor(s) | Title | By [signature] Signature(s) of Secured Party(ies) | Title |
| (1) Filing Officer Copy-Alphabetical | STANDARD FORM - FORM UCC-1. | (For Use In Most States) | |

RECORDER OF DEEDS
HENRY M TERRELL
WASHINGTON, DC

10-02(WED)'96  3:15 PM

#           9600017147
1275CHR     15.00

TOTAL       15.00
CHECK       15.00

PURCHASE      1
E01 #   0 R1271

INDUSTRIAL BANK
0017900056

INDUSTRIAL BANK, N.A.    Schedule "A" to UCC-1 Financing Statement

All goods, inventory merchandise, materials, and other personal property now owned or hereafter acquired by Debtor that are held for sale or lease, or are furnished or to be furnished under any contract of service, or are used or consumed, additions, or accessions therefore and thereto; and

All machinery, equipment, furniture, and fixtures, now owned or hereafter acquired by Debtor, and used or acquired for use in the business of Debtor, together with all accessories thereto, and all substitutions and replacements thereof and parts therefor; and including, but not limited to, all listed on the schedule attached hereto; and

All cash or non-cash proceeds of any of the foregoing, including insurance proceeds; and

All ledger sheets, files, records, documents, and instruments (including, but not limited to, computer programs, tapes, and related electronic data processing software) evidencing an interest in or relating to the above; and

All instruments, documents, securities, cash, property, and the proceeds of any of the foregoing, owned by Debtor or in which Debtor has an interest, which now or hereafter are at any time in the possession or control of Secured Party or in transit by mail or carrier to or in the possession of any third party acting on behalf of Secured Party, without regard to whether Secured Party received the same in pledge, for safekeeping, as agent for collection or transmission, or whether Secured Party had conditionally released the same.

All accounts, accounts and notes receivable, conditional bills of sale, installment contracts, contract rights, security agreements, instruments, documents, chattel paper, repossessions, returns, deposit accounts, rights to payment owing to the Debtor from third parties, general intangibles (including, but not limited to, choses in action, tax refunds, and insurance proceeds), and any other obligations or indebtedness owed to Borrower from whatever source arising; all rights of Borrower to receive any payments in money or kind; all guarantees of the foregoing and security therefor; all of the right, title, and interest of Borrower in and with respect to the goods, services, or other property that give rise to or that secure any of the foregoing, and any insurance policies and proceeds relating thereto, and all rights of Borrower as an unpaid seller of goods and services, including, but not limited to, the rights of stoppage in transit, replevin, reclamation, and resale; and all of the foregoing, whether now owned or existing or hereafter created or acquired.

_____        _____
Nexgen Solutions, Inc., Debtor        Industrial Bank, N.A., Secured Party
By: Edward Howlette, Jr., President        By:  Thomas McLaurin, Jr., Assistant Vice President

Attest:        Attest:

(Corporate Seal)        (Corporate Seal)

By:_____        By:_____

### IN THE MATTER OF NEXGEN SOLUTIONS; INC.
### AND THE UNITED STATES

<u>SETTLEMENT AGREEMENT</u>

For the purpose of disposing of any pending or potential claims of NEXGEN Solutions, Inc., its principals, parents, affiliates and subsidiaries, and any other related entities or individuals (collectively "NEXGEN"), or the United States arising out of or related to contracts SBAHQ-01-C-001 and SBAHQ-02-D-001 between NEXGEN Solutions, Inc., and the United States Small Business Administration ("SBA"), without any judicial or administrative proceedings, and without there being any trial or adjudication of any issue of law or fact, and without constituting an admission of liability on the part of any party, and for no other purpose, NEXGEN and the United States (the "parties") stipulate and agree as follows:

### DEFINITIONS

A.  For purposes of this Settlement Agreement (the "Agreement"), the term "NEXGEN" shall include NEXGEN Solutions, Inc., all of its subsidiaries, parents, affiliates (including, but not limited to, NEXGEN Commerce, Inc., and/or any other corporation owned and controlled by Edward Howlette, Jr.), and each of their respective past, present, and future shareholders, owners, directors, officers, employees, partners, agents, attorneys, predecessors and successors in interest, legal representatives, and assigns, both in their official capacities



Exhibit 2.

and individually.

B.  For purposes of this Agreement, the term "United States" shall include all of its agencies and departments, including the SBA, and any officials, employees, agents, representatives, and attorneys acting on their behalf.

C.  For purposes of this Agreement, the term "Small Business Registrants" shall include the small business entities that registered and paid for the SBA Exchange Program, as well as their principals, owners, employees and agents.  The Small Business Registrants are listed in Attachment A, appended hereto, along with the amount of registration fees they paid.

## TERMS

1.  On October 19, 2000, SBA entered into contract number SBAHQ-01-C-001 with NEXGEN Solutions, Inc. ("the first contract") pursuant to SBA's Business Development (8(a)) Program to develop an e-commerce marketplace known as "SBA Exchange" (or "SBA Exchange Program").

2.  On September 30, 2002, SBA entered into contract number SBAHQ-02-D-001 with NEXGEN Solutions, Inc. ("the second contract") under which task orders would be issued and NEXGEN Solutions, Inc. would "furnish customized services for SBA Exchange."

3.  On or about August 28, 2003, SBA advised NEXGEN Solutions, Inc. that it planned to terminate the first and second

2

contracts for the convenience of the Government.

4.  On September 4, 2003, NEXGEN submitted a "Termination for Convenience Settlement Proposal, Stop Work Order Adjustment and Request for Equitable Adjustment of NEXGEN Solutions, Inc. Pursuant to Contract No. SBAHQ-01-C-001."

5.  On October 22, 2003, NEXGEN submitted a revised "Termination for Convenience Settlement Proposal, Claim, Stop Work Order Adjustment and Request for Equitable Adjustment of NEXGEN Solutions, Inc. Pursuant to Contract Nos. SBAHQ-01-C-001 and SBAHQ-02-D-001."

6.  On December 11, 2003, SBA terminated the first and second contracts for the convenience of the Government.

7.  The parties subsequently entered into negotiations designed to resolve amicably any and all claims NEXGEN has or may have against the United States under or related to the first and second contracts.

8.  NEXGEN has offered to settle its claims for payment by the United States in the amount of $2,900,000; of which $2,300,000 is to be paid as soon as possible to NEXGEN (c/o its attorneys, Holland & Knight, LLP); and $600,000 is to be held by the United States for the purpose of reimbursing the Small Business Registrants, as described in paragraphs 10 and 11, below, with any balance remaining from the $600,000 remitted to NEXGEN in accordance with paragraph 11d, following payments to

3

the Small Business Registrants listed in Attachment A to this Agreement that have made or may make claims against SBA for refund of their fees.  This payment is inclusive of interest, with each party to bear its own costs, attorney fees and expenses.

9.  NEXGEN's offer has been accepted on behalf of the Attorney General.

10. a.  At the time of execution of this Agreement, NEXGEN agrees to furnish to SBA the following information with respect to each and every Small Business Registrant listed on Attachment A:

> (1) the company name;
>
> (2) the contract with the Small Business Registrant and the amount paid;
>
> (3) the amount, if any, refunded by NEXGEN or from any other source;
>
> (4) the name of a point of contact, if any;
>
> (5) the business address, telephone number and e-mail address (if any); and
>
> (6) any additional information in its possession that will assist SBA in identifying and contacting each and every Small Business Registrant.

b.  NEXGEN and Edward Howlette, Jr. hereby warrant and represent that to the best of their knowledge, the information in

subparagraph 10a is true and correct and that Attachment A

contains each and every Small Business Registrant that paid

registration or other fees to NEXGEN to participate in SBA

Exchange.

c.   NEXGEN agrees to undertake all reasonable efforts

to assist SBA in identifying and locating the Small Business

Registrants, resolving any issues concerning the amount and

nature of fees paid by and/or refunded to such Small Business

Registrants, and distributing the funds in exchange for the Small

Business Registrant's release of claims referred to in paragraphs

8 and 11b.

11.   The United States agrees to take the following actions:

a.   Counsel for the Department of Justice will refer

the matter to the Department of the Treasury for payment pursuant

to the Judgment Fund, 28 U.S.C. § 2414, in the amount of

$2,300,000.   The United States will request that payment be made

to counsel for NEXGEN, Gerry Sikorski, Esq., Holland & Knight,

LLP, in the manner identified by NEXGEN Solutions, Inc. and/or

Mr. Sikorski.

b.   Upon receipt of the information identified in

paragraph 10a, above, the appropriate official(s) within SBA will

make best efforts to identify and locate the Small Business

Registrants identified in Attachment A; provide these Registrants

with a claim form and notice of the deadline for filing their

claims for refund of the registration fees paid to NEXGEN (minus any reimbursement of these fees in whole or part from any source whatsoever), which payment will be conditioned on the release by the Small Business Registrant of any and all claims the Small Business Registrant may have against NEXGEN and/or SBA and the United States, as a result of having registered to participate in SBA Exchange and its agreement with NEXGEN; and to establish and implement the procedures for refunding such fees to the appropriate Registrants and execution of the release. Nothing herein shall be construed as an admission by NEXGEN or the United States that any Small Business Registrant is entitled to a refund of money or that any Small Business Registrant has a valid claim against the United States or NEXGEN. SBA will have the sole discretion in determining the amount to be refunded to each of the Registrants. The United States will refer the approved claims of the Small Business Registrants to the Department of the Treasury for payment pursuant to the Judgment Fund, 28 U.S.C. $ 2414, in the amount determined by SBA, for each Small Business Registrant that has agreed to accept such amount in exchange for the release of any and all claims that the Registrant may have against NEXGEN and/or SBA and the United States as a result of having registered to participate in SBA Exchange and its agreement with NEXGEN.

     c. If the $600,000 identified in paragraphs 8 and 11b,

6

above, is not sufficient to reimburse fully all Small Business
Registrants that file a timely claim and release, SBA shall have
the sole discretion to determine the amount each Registrant shall
receive.   NEXGEN will not be required to provide any additional
funds for this purpose.

   d.   If any part of the $600,000 to be distributed to
Small Business Registrants following the expiration of the claim
period is not expended to reimburse fully all the Small Business
Registrants, the remaining amount shall be paid to NEXGEN
Solutions, Inc., c/o its attorneys, Holland & Knight, LLP.   In
the event of an unresolved dispute with a Small Business
Registrant, the United States may hold back from the payment to
NEXGEN a reasonable amount sufficient to resolve the dispute.

   12.   Upon satisfaction of the terms set forth in paragraphs
10 and 11, above, NEXGEN releases, waives, and abandons all
claims against the United States, its political subdivisions
(including but not limited to SBA), its officers, agents, and
employees, both in their official capacities and individually,
arising out of or related to the first and second contracts, the
SBA Exchange Program, and NEXGEN's agreements with the Small
Business Registrants, regardless of whether they were included in
the termination for convenience and claim proposals, including
but not limited to any claims for defamation, costs, expenses,
interest, attorney fees, compensatory damages, and exemplary

damages.

13. Upon satisfaction of the terms set forth in paragraphs 10 and 11, above, the United States releases, waives, and abandons any and all potential claims which it may have against NEXGEN, except fraud, arising out of or related to the first and second contracts and the SBA Exchange Program, including but not limited to any claims for defamation, costs, expenses, interest, attorney fees, compensatory damages, and exemplary damages.

14. This Agreement is in no way related to or concerned with income or other taxes for which NEXGEN is now liable or may become liable in the future as a result of this Agreement.

15. NEXGEN warrants and represents that no other action, alternative dispute resolution proceeding, or suit arising out of or related to the claims advanced in its termination for convenience proposals and claims, the first and second contracts, the SBA Exchange Program, and/or its agreements with the Small Business Registrants against the United States is pending or will be filed in or submitted to any court, administrative agency, legislative body, or any other legal proceeding. NEXGEN further warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to any such claims. Should there be now or in the future any violation of these warranties and representations, any amount paid by the United States pursuant to this Agreement shall

8

be refunded promptly by NEXGEN, together with interest thereon at the rates provided in 41 U.S.C. § 611, computed from the date the United States makes payment.

16. This Agreement is for the purpose of settling any and all pending or potential claims arising out of or related to the first and second contracts, the SBA Exchange Program, as well as the claims of the Small Business Registrants as described in paragraphs 10 and 11, above, and for no other purpose. Accordingly, this Agreement shall not bind the parties, nor shall it be cited or otherwise referred to, in any proceedings, whether judicial or administrative in nature (including dispute resolution proceedings), in which the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of this Agreement.

17. All persons signing this Agreement represent that they are authorized to enter into this Agreement on behalf of the entity for which they sign.

18. This document constitutes a complete integration of the agreement between NEXGEN and the United States and supercedes any and all prior oral or written representations, understandings or agreements among or between them.

**AGREED TO:**

PETER D. KEISLER
Assistant Attorney General

9

DAVID M. COHEN
Director
Authorized Representative of
the Attorney General


KATHRYN A. BLEECKER
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn:   Classification Unit
        8th floor
1100 L Street, N.W.
Washington, D.C.    20530

Attorneys for the
United States

Dated: _11/12/04_

EDWARD HOWLETTE, JR.
Individually and as President
of NEXGEN Solutions, Inc.

Dated:

HOLLAND & KNIGHT, LLP

By: _PAUL KIERNATX_
Suite 100
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Attorneys for NEXGEN

Dated: _11/15/04_

10

# INSTRUMENT OF ASSIGNMENT OF GOVERNMENT CONTRACTS

WHEREAS, NEXGEN SOLUTIONS, INC., has entered into the contracts described below (singly and collectively, the "Contracts"), and

WHEREAS, INDUSTRIAL BANK, N.A., is a financing institution as described in the Assignment of Claims Act of 1940, as amended (31 U.S.C. § 3727, 41 U.S.C. §15); and

WHEREAS, the Contracts provide for payments to NEXGEN SOLUTIONS, INC. aggregating $1,000 or more; and

WHEREAS, the Contracts do not prohibit an assignment.

NOW, THEREFORE, NEXGEN SOLUTIONS, INC. ("Assignor"), in consideration of financial accommodations provided or to be provided and for other good and valuable consideration, the receipt of which is hereby acknowledged, and pursuant to the provisions of the Assignment of Claims Act of 1940, as amended, hereby assigns, transfers, conveys and sets over to INDUSTRIAL BANK, N.A. (the "Bank") all of the Assignor's right, title and interest in and to all money due or to become due to the Assignor from the United States of America or any agency or department thereof under the following Contracts:

| Contract Number | Date | Contracting Agency | Requisition/Project Number |
|---|---|---|---|
| SBAHQ-01-C-001 | October 19, 2000 | U.S. Small Business Administration | |
| SBAHQ-02-D-001 | September 30, 2002 | U.S. Small Business Administration | |

This Assignment also extends to and covers all monies due or to become due under the Settlement Agreement dated November 2004, as amended (the "Settlement Agreement"), between NEXGEN Solutions, Inc. and the U.S. Small Business Administration relating to claims arising out of or related to the Contracts.

The Assignor hereby authorizes the Bank either in the name of the Assignor or in the name of the Bank to collect and receive all monies which are due or to become due under the Contracts, and to receive and collect any such monies as fully and to the same extent as if such monies were its own funds and to apply such monies to any indebtedness of the Assignor to the Bank now existing or hereafter arising. The Assignor further authorizes the Bank either in the name of the Assignor or in the name of the Bank to prosecute any proceedings at law, in equity or otherwise for any monies which are due or to become due under the contracts described above, and to execute any agreements, release or other instruments which the Bank may from time to time hereafter deem necessary or convenient in its sole discretion in furtherance of or to effectuate the collection of any monies which are due or to become due under the Contracts.

#464890v.1

Exhibit 3.

ALL-STATE LEGAL®

The Assignor represents and warrants to the Bank that: (i) the facts recited in this Assignment are true and correct; (ii) the Contracts are valid and binding on the parties thereto, and in full force and effect; (iii) the Assignor has made no previous assignment of the Contracts and knows of no fact or defense that will render the monies due or to become due uncollectible; and (iv) the execution and delivery of this Assignment does not violate and is not in conflict with the provisions of the Contracts.

IN WITNESS WHEREOF, the Assignor, intending to be legally bound, has executed this Assignment under seal by its duly authorized representative on this 15 day of MAY , 2005.

WITNESS/ATTEST:

ASSIGNOR:
NEXGEN SOLUTIONS, INC.

By: _____ (SEAL)
Name: Edward Howlette, Jr.
Title: President

_____

## ACKNOWLEDGMENT

STATE OF MARYLAND ` ) to wit:
CITY/COUNTY OF Washington

On this 15th day of May , 2005, before me, a Notary Public, personally appeared Edward Howlette, Jr. who acknowledged himself to be the President of NEXGEN SOLUTIONS, INC., and that he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of NEXGEN SOLUTIONS, INC.

IN WITNESS MY Hand and Notarial Seal.

_____ [SEAL]
Notary Public

My Commission Expires: 05/28/2008

TARA CROOKS
NOTARY PUBLIC
WASHINGTON CO., MD

TARA CROOKS
Notary Public, State of Maryland
County of Washington
My Commission Expires May 28, 2008

## NOTICE OF ASSIGNMENT

(Name and Address of Contracting Agency)

(Name and Address of Contracting Officer)

U.S. Small Business Administration
Office of General Counsel
409 3rd Street, S.W., Suite 7200
Washington, D.C. 20416
Attn: David A. Fishman

**Contract Nos.**

SBAHQ-01-C-001
SBAHQ-02-D-001

**Contract Date**

October 19, 2000
September 30, 2002

NOTICE is hereby given that subject to the provisions of the Assignment of Claims Act of 1940, as amended, **NEXGEN SOLUTIONS, INC.** has assigned to **INDUSTRIAL BANK, N.A.,** 2002 11th Street, N.W., Washington, D.C. 20001 all of its right, title and interest in moneys due or to become due under the contracts described above, including all monies due or to become due under the Settlement Agreement dated November 2004, as amended (the "Settlement Agreement"), between NEXGEN Solutions, Inc. and the U.S. Small Business Administration relating to claims arising out of or related to the contracts described above.

Your are directed to make all payments on the contracts described above and the Settlement Agreement to Industrial Bank, N.A. 2002 11th Street, N.W., Washington, D.C. 20001, Attention: John Gamble.

A true copy of the instrument of assignment from Assignor to Assignee executed on May 15_____, 2005, is attached hereto.

Please return to Assignee a copy of this notice duly signed by the Contracting Agency with appropriate notations showing the date and hour of receipt on behalf of the Contracting Agency.

Assignee:
**INDUSTRIAL BANK, N.A.**

By: _____ (SEAL)
Name: John Gamble
Title: Vice President

Address: 2002 11th Street, N.W.,
Washington, D.C. 20001

Assignor:
**NEXGEN SOLUTIONS, INC.**

By: _____ (SEAL)
Name: Edward Howlette, Jr.
Title: President

Address: 8630 Fenton Street, Suite 925
Silver Spring, MD 20910

#464874v.1

ALL-STATE LEGAL®

Exhibit 4.

F

ΠΠ MERITAS LAW FIRMS WORLDWIDE

100 EAST PRATT STREET
26TH FLOOR
BALTIMORE MARYLAND 21202
410.752.9700
FAX 410.727.5460

WASHINGTON DC OFFICE
202.296.1642
FAX 202.828.4130

www.tydingslaw.com

ATTORNEYS AT LAW

# TYDINGS & ROSENBERG LLP

ROBERT A. GORDON
410.752.9749
rgordon@tydingslaw.com

January 18, 2006

**VIA ELECTRONIC TRANSMISSION**
**AND REGULAR MAIL**

U.S. Small Business Administration
Office of General Counsel
Department of Litigation and Claims
Attention: David A. Fishman
409 3rd Street, S.W., Suite 7200
Washington, DC 20416

>      **Re:    Industrial Bank, N.A./Nexgen Solutions, Inc./Proceeds of the SBA
>              Settlement**

Dear Mr. Fishman:

        With reference to the above, I write to you with regards to our telephone
discussions held over the last few weeks.  At the outset, I take this opportunity to provide
you with some background regarding the Industrial Bank, N.A.'s (the "Bank")
relationship with Nexgen Solutions, Inc. ("Nexgen") and Ed Howlette.  By virtue of pre-
existing security agreements and subsequent forbearance agreements, the Bank has long
been Nexgen's primary secured creditor.  The Bank's lien and security interest extends to
all assets of Nexgen including all of the settlement proceeds being administered by you
on behalf of the Small Business Administration (the "SBA").

        We understand that an initial, large distribution was made by the SBA to Nexgen
over one year ago.  The only reason the Bank's debt was not paid in full at that time was
because Mr. Howlette purposefully did not tell the Bank about either the settlement or the
distribution.  When we discovered the settlement, we compelled him and Nexgen to make
a substantial payment against the total indebtedness due and to execute the Instrument of
Assignment of Government Contracts (the "Assignment") that we forwarded to you
previously.  The Assignment was obtained to insure the remaining settlement payments
would not be diverted away from the Bank.

Exhibit 5.

ALL-STATE LEGAL®

ATTORNEYS AT LAW

TYDINGS & ROSENBERG LLP
Attention: David A. Fishman
January 18, 2006
Page 2

Accordingly, it is the Bank's position that all of the settlement proceeds are subject to its lien and security interest and that none of the money should have been paid (or should be paid) to anyone before the Bank is paid in full. However, as you know we so far have done nothing to disrupt the SBA's distribution of the settlement proceeds to individual claimants. The Bank was willing to allow these payments not because we believed they were proper but only to avoid unnecessary litigation costs. Based upon the approximate figures you gave me it appeared reasonable to expect there would be more than enough money available to pay the Bank in full after all of the individual claimants were paid.

We were told many months ago that all individual claimants had been contacted (or given reasonable notice) and that a substantial number of them had actually submitted claims. We were also told that those payments were being processed and would soon be completed.

On the basis of all the foregoing, I thought it reasonable to expect that the Bank would be paid before the end of 2005. Although you told me before the holidays that the Bank would not be paid before the close of 2005, we agreed (conditioned upon official SBA approval) that the process for paying the Bank a substantial portion of its indebtedness could begin. As I understood it, after all payments to individual claimants had been made, the remaining balance due the Bank would then be paid. At no time have we ever believed that full payment of the Bank's debt could be in jeopardy.

However, you have now notified me that not only will the SBA not immediately pay a substantial portion of the Bank's claim but instead it intends to conduct yet another round of direct notification to potential claimants. The Bank does not agree this is a reasonable way to proceed; however, we have agreed to accept a $50,000 partial payment to forbear from taking any immediate action against the SBA while that process unfolds. It is my understanding that you are now processing the $50,000 payment for electronic disbursement to the Bank. While the Bank is willing to wait for a reasonable period of time for its final payment, for all the reasons set forth above, I am compelled to notify you of the following.

The total sum due and owing the Bank at this time is $189,066.81 consisting of $120,423.03 in principal, $6,020.31 in interest, $13,086.61 in late charges and $49,536.86 in attorney's fees and costs. Interest at the *per diem* rate of 5.75% continues to accrue against the indebtedness resulting in total daily interest of $19.23. The Bank does **not** consent to the payment to anyone of any sums that would cause there to be insufficient funds remaining to pay the Bank in full. The Bank waives no rights with regards to any such action and expressly reserves all rights with respect to the same. If it

ATTORNEYS AT LAW

TYDINGS & ROSENBERG LLP
Attention: David A. Fishman
January 18, 2006
Page 3

appears that the Bank's right to full payment will be infringed upon by any contemplated action of the SBA, then the SBA must give the Bank advance notice of said action.

Furthermore, the Bank has decided that it has been patient enough under the circumstances and can no longer wait for this process to unfold on its own. Therefore, the Bank will agree to give the SBA ninety (90) days from the date of this letter to complete the settlement distribution process. If the Bank does not receive final payment in full by the end of that time period, then the Bank will have no choice but to seek the aid of the judicial system to enforce its rights and collect the balance due.

Please do not hesitate to call or write if you have any questions. Thank you. I am,

Very truly yours,

Robert A. Gordon

cc:    John Gamble (via facsimile)

#498035v.1

AUG-14-2006  16:07        SBA LITIGATION



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, DC  20224**

SMALL BUSINESS / SELF-EMPLOYED DIVISION

SMALL BUSINESS ADMINISTRATION                    Date: August 11, 2006
DAVID FISHMAN
CHIEF COUNSEL/SPECIAL LITIGATION
409 THIRD STREET, S.W.
WASHINGTON, DC. 20416

---

Dear: SMALL BUSINESS ADMINISTRAION

Please be advised that this levy is being issued and served in order to effectuate an offset.

If you have any questions or need more information, please contact me at the address or the telephone number listed below:

   Internal Revenue Service

Phone#: 202-283-0952
Fax#:  202-283-1664

                              Sincerely,

                              A S Hall

                    Employee ID#: ████████



| Form 668-A(ICS)<br>(Jan. 2003) | | Department of the Treasury – Internal Revenue Service<br>**Notice of Levy** |
|---|---|---|

DATE: 08/11/2006

REPLY TO:  **Internal Revenue Service**
**A. HALL**
**11510 GEORGIA AVENUE**
**SUITE 200**
**WHEATON, MD 20902**

TELEPHONE NUMBER
OF IRS OFFICE: (202)283-0952

NAME AND ADDRESS OF TAXPAYER:
**NEXGEN SOLUTIONS INC**
**% ACCOUNTS PAYABLE**
**8630 FENTON ST STE 925**
**SILVER SPRING, MD 20910-3811**

TO:  **SMALL BUSINESS ADMINISTRATION**
**DAVID FISHMAN**
**CHIEF COUNSEL/SPECIAL LITIGATION**
**409 THIRD STREET, S.W.**
**WASHINGTON, DC 20416**

NEXG

IDENTIFYING NUMBER(S):

THIS IS NOT A BILL FOR TAXES YOU OWE. THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 941 | 06/30/2000 | 99622.51 | 41596.29 | 141218.80 |
| 941 | 09/30/2000 | 263426.69 | 102978.61 | 366405.30 |
| 941 | 12/31/2000 | 57828.78 | 23335.92 | 81164.70 |
| 941 | 03/31/2001 | 4701.48 | 1538.73 | 6240.21 |
| 941 | 06/30/2002 | 102725.94 | 30223.88 | 132949.82 |
| 941 | 03/31/2003 | 19325.62 | 5081.87 | 24407.49 |
| 941 | 06/30/2003 | 24358.31 | 6596.47 | 30954.78 |
| 941 | 09/30/2003 | 36716.76 | 10058.81 | 46775.57 |
| 941 | 12/31/2003 | 83655.73 | 18172.22 | 101827.95 |
| 1120 | 12/31/1996 | 33407.13 | 17107.93 | 50515.06 |
| 1120 | 12/31/1997 | 44755.68 | 23020.99 | 67776.67 |

| THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ⟹ | Total Amount Due | 1050236.35 |
|---|---|---|

We figured the interest and late payment penalty to  **09-10-2006**

The Internal Revenue Code provides that there is a lien for the amount that is owed. Although we have given the notice and demand required by the Code, the amount owed hasn't been paid. This levy requires you to turn over to us this person's property and rights to property (such as money, credits, and bank deposits) that you have or which you are already obligated to pay this person. However, don't send us more than the "Total Amount Due."

Money in banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must be held for 21 calendar days from the day you receive this levy before you send us the money. Include any interest the person earns during the 21 days. Turn over any other money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment.

Make a reasonable effort to identify all property and rights to property belonging to this person. At a minimum, search your records using the taxpayer's name, address, and identifying number(s) shown on this form. Don't offset money this person owes you without contacting us at the telephone number shown above for instructions. You may not subtract a processing fee from the amount you send us.

To respond to this levy —
1. Make your check or money order payable to United States Treasury.
2. Write the taxpayer's name, identifying number(s), kind of tax and tax period shown on this form, and "LEVY PROCEEDS" on your check or money order (not on a detachable stub).
3. Complete the back of Part 3 of this form and mail it to us with your payment in the enclosed envelope.
4. Keep Part 1 of this form for your records and give the taxpayer Part 2 within 2 days.

If you don't owe any money to the taxpayer, please complete the back of Part 3, and mail that part back to us in the enclosed envelope.

| Signature of Service Representative<br>A. HALL | Title<br>**REVENUE OFFICER** |
|---|---|

Part 1 —    For Addressee

Catalog No. 35389E    www.irs.gov    Form 668-A(ICS) (1-2003)

Excerpts from the Internal Revenue Code
* * * * * * * *

**Sec. 6331. LEVY AND DISTRAINT.**

(b) Seizure and Sale of Property.—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) Successive Seizures.—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) Requirement.—Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.—A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the cash amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.—Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.—The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.—Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.—In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.—

(1) In general.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.—If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.—

If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States,

the provisions of subsection (b) shall apply in the same manner as if such property had been wrongfully levied upon, except that no interest shall be allowed under subsection (c).

* * * * * * * *

Applicable Sections of Internal Revenue Code

6321. LIEN FOR TAXES.

6322. PERIOD OF LIEN.

6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.

6331. LEVY AND DISTRAINT.

6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.

6333. PRODUCTION OF BOOKS.

6334. PROPERTY EXEMPT FROM LEVY.

6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.

7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

Form 668-A(ICS) (1-2003)



— HARBOR CITY RESEARCH, INC.

P.O. BOX 86
BALTIMORE, MARYLAND 21203
(410) 539-0400
(800) 445-6029

TO:    TYDINGS & ROSENBERG
       Attn: CHERITA MARTIN
       100 E. PRATT STREET
       26TH FLOOR
       BALTIMORE, MD 21202

INVOICE No.    534044

---

FILES CURRENT THROUGH: July 26, 2006

JURISDICTION: CLERK OF CIRCUIT COURT, MONTGOMERY COUNTY, MD

TYPE OF SEARCH CONDUCTED: FEDERAL TAX LIEN SEARCH.

RE: NEXGEN SOLUTIONS INC.

| ORDER No. | T-221081 |
| INVOICE DATE | 8/17/2006 |
| ACCOUNT No. | 7452 |
| REF # | I-03552042998 |

| DATE: | FILE#: | AMOUNT: |
|-------|--------|---------|
| 3/17/04 | F 76012 | $504,133.77 |
| 12/15/05 | F 78466 | $219,469.43 |

COPIES ENCLOSED.

SERVICE FEE:     $    72.00

COPIES:          $     2.50

DISBURSEMENTS:   $_____

OTHER:

                 $_____

TOTAL:           $    74.50

HARBOR\diane

NOTE: Although we provide the most accurate and current information possible, our results are based on the responsibility of the filing officer. Please judge this information accordingly, as we accept no liability for errors or omissions.

---

*PLEASE RETURN THIS PORTION WITH REMITTANCE*

REMIT TO: **HARBOR CITY RESEARCH, INC.**
          P.O. BOX 86
          BALTIMORE, MD 21203

TO:    TYDINGS & ROSENBERG
       Attn: CHERITA MARTIN
       100 E. PRATT STREET
       26TH FLOOR
       BALTIMORE, MD 21202

| ACCOUNT No. | 7450 |
| INVOICE No. | 534044 |
| INVOICE DATE | 8/17/2006 |
| ORDER No. | T-221081 |
| REF # | I-03552042998 |

**TOTAL DUE:**    $    74.50

ALL-STATE LEGAL®  Exhibit 7.

1008

Form 668 (Y)(c)
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (410) 962-1871 | Serial Number<br><br>162115104 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer NEXGEN SOLUTIONS INC , a Corporation

Residence         8630 FENTON ST STE 925
                  SILVER SPRING, MD 20910-3811

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

F76012

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1120 | 12/31/1996 | 52-1764732 | 02/28/2000 | 03/30/2010 | 33407.13 |
| 1120 | 12/31/1997 | 52-1764732 | 02/14/2000 | 03/16/2010 | 44749.68 |
| 940 | 12/31/2000 | 52-1764732 | 03/04/2002 | 04/03/2012 | 397.50 |
| 941 | 06/30/2000 | 52-1764732 | 01/06/2003 | 02/05/2013 | 99622.51 |
| 941 | 09/30/2000 | 52-1764732 | 03/04/2002 | 04/03/2012 | 263426.69 |
| 941 | 12/31/2000 | 52-1764732 | 03/04/2002 | 04/03/2012 | 57828.78 |
| 941 | 03/31/2001 | 52-1764732 | 06/04/2001 | 07/04/2011 | 4701.48 |

2004 MAR 17 A 11: 23
KELLY O. RUHL
CLERK'S OFFICE
MONTGOMERY CO. MD

| Place of Filing | CLERK OF THE CIRCUIT COURT<br>MONTGOMERY COUNTY<br>ROCKVILLE, MD 20850 | Total | $ | 504133.77 |
|---|---|---|---|---|

This notice was prepared and signed at     BALTIMORE, MD                                    , on this,

the    11th    day of    March    , 2004

| Signature<br>for C. SHEPPARD    *K. L. Blint* | Title<br>REVENUE OFFICER<br>(202) 283-0951 | 24-05-3267 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 80025X

08/17/2004 11:50 FAX 410 659 0517    HARBOR CITY RESEARCH    ☒004

1872

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>262062605 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer NEXGEN SOLUTIONS INC , a Corporation

Residence        8630 FENTON ST STE 925
                 SILVER SPRING, MD 20910-3811

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

*78466*

| Kind of Tax<br>(a) | Tax Period Ending<br>(b) | Identifying Number<br>(c) | Date of Assessment<br>(d) | Last Day for Refiling<br>(e) | Unpaid Balance of Assessment<br>(f) |
|---|---|---|---|---|---|
| 941 | 06/30/2002 | 52-1764732 | 11/08/2004 | 12/08/2014 | 102725.94 |
| 941 | 03/31/2003 | 52-1764732 | 06/09/2003 | 07/09/2013 | |
| 941 | 03/31/2003 | 52-1764732 | 02/07/2005 | 03/09/2015 | 19319.62 |
| 941 | 06/30/2003 | 52-1764732 | 09/01/2003 | 10/01/2013 | |
| 941 | 06/30/2003 | 52-1764732 | 02/28/2005 | 03/30/2015 | 24358.31 |
| 941 | 09/30/2003 | 52-1764732 | 02/21/2005 | 03/23/2015 | 36716.76 |
| 941 | 12/31/2003 | 52-1764732 | 02/21/2005 | 03/23/2015 | 36348.80 |

Place of Filing    CLERK OF THE CIRCUIT COURT
                   MONTGOMERY COUNTY
                   ROCKVILLE, MD 20850

Total $    219469.43

This notice was prepared and signed at    BALTIMORE, MD    , on this,

the  01st  day of  December , 2005 .

| Signature<br>*Susan A. Hansen*<br>for JAMES MCDONOUGH | Title<br>REVENUE OFFICER<br>(202) 283-1029 | 24-05-3219 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

07-291
RMC

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Industrial Bank, N.A
2002 Eleventh Street, N.W.
Washington, D.C. 20001

*1100*

**DEFENDANTS**

United States of America
And
Commissioner of Internal Revenue Service
111 Constitution Avenue, N.W.
Washington, D.C. 20530

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

D.C.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LA

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Toyja E. Kelley, Esq., Bar No. 482977
Tydings & Rosenberg LLP
100 E. Pratt Street, 26th Flr
Baltimore, Maryland 21202

CASE NUMBER    1:07CV00291

JUDGE: Rosemary M. Collyer

DECK TYPE: General Civil

DATE STAMP: 02/08/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENS
FOR PLAINTIFF AND ONE BOX FOR DEFE...

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

***(If Antitrust, then A governs)***

◉ **E.** *General Civil (Other)*     OR     ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☒ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**⊙ ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

26 U.S.C. 7426 and 28 U.S.C 1331

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____  Check YES only if demanded in complaint   JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

DATE  2/8/07   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.