## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **INDUSTRIAL BANK, N.A.** | * | |
| **Plaintiff/Counter-Defendant** | * | |
| **v.** | * | **Civil Action No. 07-CV- 00291 RMC** |
| **UNITED STATES OF AMERICA, et al.** | * | |
| **Defendants/Counter-Plaintiffs** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### INDUSTRIAL BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Industrial Bank, N.A., by and through its undersigned counsel, pursuant to Rule 56, moves this Court for summary judgment against Defendants, Unites States of America, and the Commissioner of Internal Revenue Service.  The grounds for this motion are fully set forth in the accompanying memorandum of law, which is attached and incorporated by reference.

WHEREFORE, Industrial Bank, N.A., requests that this Court (1) grant its motion for summary judgment, and (2) grant such other and further relief as it deems equitable.

Respectfully submitted,

Dated: <u>March 10, 2008</u>

<u>/s/_____</u>
Alan M. Grochal, D.C. Bar No. 315218
Toyja E. Kelley, D.C. Bar No. 482977
**TYDINGS & ROSENBERG LLP**
100 East Pratt Street, 26th Floor
 Baltimore, Maryland  21202
 (410) 752-9700

**Attorneys for Plaintiff**
 **Industrial Bank, N.A.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of March, 2008, a copy of the foregoing

Motion for Summary Judgment for Industrial Bank, N.A., Memorandum of Law in Support, and

Proposed Order was severed electronically via the CM/ECF system:


/s/_____
Toyja E. Kelley

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INDUSTRIAL BANK, N.A.** | * |
| **Plaintiff/Counter-Defendant** | * |
| **v.** | *  **Civil Action No. 07-CV- 00291 RMC** |
| **UNITED STATES OF AMERICA, et al.** | * |
| **Defendants/Counter-Plaintiffs** | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Industrial Bank, N.A. ("Bank"), by undersigned counsel, and pursuant to Rule 56 of the

Federal Rules of Civil Procedure, files this memorandum of law in support of its motion for

summary judgment and states as follows:

**INTRODUCTION**

The Bank, by virtue of its preexisting security agreements, properly perfected liens,

consent judgment, and subsequent forbearance agreements, has a superior claim than the Internal

Revenue Service ("IRS") to the proceeds of a settlement agreement between the Small Business

Administration ("SBA") and Nexgen Solutions, Inc. ("Nexgen").

**UNDISPUTED MATERIAL FACTS**

Nexgen Loans

Beginning in 1996, the Bank extended to Nexgen two loans totaling more than

$300,000.[1]  *See* Affidavit of John N. Gamble, Vice-President of Industrial Bank, N.A., attached

and incorporated herein as Exhibit 1.  The loans were secured by blanket liens on all of Nexgen's

---

[1] The Bank extended to Nexgen a United States Small Business Administration loan for $125,000 on September 9, 1996, and another $250,000 on May 31, 1997. *See* Exhibit 1 at ¶¶ 2, 5.

assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired. *Id.* at ¶¶ 4, 6. The Bank then perfected its interest in Nexgen's collateral by filing a UCC-1 financing statement with the Maryland State Department of Assessments and Taxation on July 16, 1997, and with the District of Columbia Recorder of Deeds (collectively "UCC Financing Statements"). *See* Copies of the UCC Financing Statements attached and incorporated herein as Exhibit 2.

Unable to make payment, Nexgen defaulted on both loans from the Bank beginning October 30, 1998.[2] *See* Exhibit 1 at ¶ 9. The Bank, exercising its rights as a perfected secured creditor, filed a Complaint for Confession of Judgment in the Circuit Court for Montgomery County, which entered an Amended Notice of Judgment granting the Bank a judgment by confession against Nexgen on September 1, 2000. *See* Notice of Confessed Judgment, attached and incorporated herein as Exhibit 3. Subsequent to the judgment, the Bank and Nexgen entered into the first of several forbearance agreements, in which the Bank agreed to not collect on its judgment providing that Nexgen pay the full amount owed, to include interest, late charges, applicable fees, costs and attorney's fees, on or before January 1, 2001. *See* Exhibit 1 at ¶ 11. Nexgen, unfortunately, was unable to pay in full by January 1, 2001. *Id*. at ¶ 12. The Bank, recognizing that Nexgen was a going concern, agreed to modify the forbearance agreement to extend the time payment was due to September 1, 2001. *Id*. Again, the Bank modified the forbearance agreement after Nexgen informed it on August 14, 2001, that it could not pay in full by September 1, 2001. *Id*. at ¶¶ 14-15. The Bank agreed to not levy on its judgment based on

---

[2] Nexgen defaulted on its original loan by failing to pay the January and February, 1999 installments of $2,107.58, and it defaulted on the second loan by failing to pay the $264,950.67 balance owed that was due on October 30, 1998.

Nexgen's assurances that its outstanding debt would be satisfied by payment on an indefinite

timetable through the proceeds from two contracts it had with the SBA.[3]  *Id*.

SBA Settlement Agreement

In December 2003, the Bank learned that the SBA had wrongfully terminated its

contracts with Nexgen, thereby causing Nexgen to initiate litigation.  *See* Exhibit 1 at ¶ 16.

Unbeknownst to the Bank, however, Nexgen and the SBA subsequently settled their dispute and

entered into a Settlement Agreement on November 15, 2004.  The Settlement Agreement

provided, in relevant part, that Nexgen would "release[], waive[], and abandon[] all claims

against the United States . . . arising out of or related to the first and second contracts, the SBA

Exchange Program, and NEXGEN's agreements with the Small Business Registrants," *see*

Settlement Agreement ¶ 12, attached and incorporated herein as Exhibit 4, providing the SBA

agreed to immediately pay $2,900,000 to Nexgen, *see id.* ¶ 8.  The Bank became aware of the

settlement agreement between Nexgen and the SBA on or about January 19, 2005.  *See* Exhibit 1

at ¶ 18.

The Bank, again considering to foreclose on its judgment, agreed to modify the

forbearance agreement a third time based on Nexgen's proposal to execute an assignment of its

interest in the full amount of remaining proceeds to its settlement agreement with the SBA.[4]  *See*

Exhibit 1 at ¶ 20.  The purpose of this final modification to the forbearance agreement was to

ensure that payment of the settlement agreement proceeds flowed directly from the SBA to the

Bank; thereby removing Nexgen, along with the corresponding risk that Nexgen would not fulfill

its obligation to pay the Bank pursuant to the Bank's confessed judgment.  Nexgen assigned its

---

[3] Nexgen entered into two contracts with the SBA: SBAHQ-01-C-001 (Oct. 19, 2000), and SBAHQ-02-D-001 (Sep. 30, 2002).
[4] Nexgen informed the Bank that the SBA had retained well over $300,000 of the settlement agreement proceeds.
*See* Exhibit 1 at ¶19.

interest in its settlement agreement with the SBA to the Bank on May 15, 2005.  *See* Instrument

of Assignment of Government Contracts, attached and incorporated herein as Exhibit 5.  The

Bank then executed a Notice of Assignment that was sent to the SBA.  *See* Notice of

Assignment, attached and incorporated herein as Exhibit 6.  The SBA, however, has paid only

$50,000[5] of the settlement agreement proceeds pursuant to the Notice of Assignment, and has

repeatedly refused the Bank's demands to make additional payments.  *See* Exhibit 1 at ¶¶ 25-26.

The Bank learned that the SBA's repeated refusal to pay it according to the Notice of

Assignment was caused by the IRS.  *See* Exhibit 1 at ¶ 26.   In a Notice of Levy dated August 11,

2006, attached and incorporated herein as Exhibit 7, the IRS advised the SBA of two tax levies

against Nexgen totaling $1,050,236.35, which were filed in the Circuit Court for Montgomery

County on March 17, 2004 ($504,133.77), and December 15, 2005 ($219,469.43).  *See* Notice of

Federal Tax Liens attached and incorporated herein as Exhibit 8.  Despite the Bank's

presentation of proof of its superior claim to the settlement agreement proceeds (the Bank

provided the IRS with a copy of the promissory notes, security agreements and financing

statements), the IRS has refused to withdraw the Notice of Levy it sent to the SBA.  As a result,

the SBA continues to maintain that it will not and, indeed, cannot release the remaining proceeds

of the settlement agreement unless and until the IRS withdraws the Notice of Levy.

## **STANDARD OF REVIEW**

Summary Judgment is mandated under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law."  *See also  Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986) (confirming the same).  In reviewing a motion for

---

[5] The SBA paid $50,000 to the Bank on March 24, 2006.  Exhibit 1 at ¶ 25.

summary judgment, the Court must view the facts and any inferences drawn from these facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 236 (4th Cir. 1995). "In essence the test . . . is 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" *Est. of Reap v. Malloy*, 1999 D.C. App. LEXIS 75, *7 (Apr. 1, 1999) (quoting *Anderson*, 477 U.S. 242, 251-52 (1986). The party who bears the burden of proof on an issue at trial cannot, however, survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## **ARGUMENT**

## I. **The Bank's Perfected Security Interest in Nexgen's Collateral Remains Effective**

The IRS' federal tax liens against Nexgen do not prime the Bank's security interest in the proceeds of the Nexgen-SBA settlement agreement ("Settlement Agreement"). The Bank's security interest remains valid and takes priority over the IRS' federal tax liens because the proceeds of the Agreement arise out of two definite and enforceable pre-existing contracts incurred by Nexgen in the ordinary course of its business. The Settlement Agreement specifically states:

> For the purpose of disposing of any pending or potential claims of NEXGEN Solutions, Inc., . . . **arising out of or related to contracts SBAHQ-01-C-001 and SHAQ-02-D-001** between NEXGEN Solutions, Inc., and the Unites States Small Business Administration ("SBA"), without any judicial or administrative proceedings, and without there being any trial of adjudication of an issue of law or fact.

Exhibit 4 at 1 (emphasis added).

The Bank's perfected security interest in Nexgen's collateral remains effective and took priority over the IRS' federal tax liens.  The Bank obtained a **confessed judgment** in addition to its perfected security interest in Nexgen's collateral within the five year period following filing of its financing statement.  In *Styles v. Eastern Tractor Manufacturing Corp.*, the court held that "a competing private lien which is specific and choate under state law, cannot prevail as against a federal tax lien, notwithstanding that the private lien antedated the tax lien, **unless the private lien has been reduced to a final judgment**."  154 F. Supp. 393, 395 (S.D.N.Y. 1957) (emphasis added).

Here, the Bank filed its financing statement securing loans made to Nexgen on July 16, 1997.  Under Maryland law, the Bank's lien against Nexgen was then specific and choate.  *See* Md. Code Ann., Com. Law § 9-310(a).  Upon default, the Bank obtained a **confessed judgment**, which is a **final judgment**, against Nexgen on September 1, 2000, less than four years following the filing of its financing statement, while the Bank's lien was specific and choate.  Therefore, the Bank's security interest in collateral covered by its written security agreement with Nexgen remains effective, via its confessed judgment, and took priority over the IRS' federal tax liens that were not filed until November 15, 2004, more than four years after the Bank exercised its rights as a perfected secured creditor.

**II.     The Bank's Security Interest Takes Priority Over the IRS' Federal Tax Liens**

The Bank's security interest in the proceeds of the Settlement Agreement takes priority over the IRS' federal tax liens, even though the Settlement Agreement was executed more than 45 days after the IRS filed its first notice of tax levy, because the Agreement arose out of two definite and enforceable pre-existing contracts between Nexgen and the SBA.[6]

---

[6] The SBA entered into contract SBAHQ-01-C-001 with Nexgen on October 19, 2000, "to develop an e-commerce marketplace known as 'SBA Exchange.'"  Exhibit 4 at ¶ 2.  The SBA then entered into a second contract with

Generally, "a federal tax lien is invalid against a security interest arising within 45 days after a tax lien is filed in qualified property covered by a written commercial transaction financing agreement executed prior to the tax filing." *Dorrough, Parks & Co. v. Aspen Marine Group*, 185 B.R. 46, 48 (E.D. Tenn. 1995); *see* 26 U.S.C. § 6323(d).[7] "In other words, collateral that constitutes qualified property acquired by a borrower within 45 days after the filing of a federal tax lien is protected from the tax lien." *Dorrough, Parks & Co.,* 185 B.R. at 49 (citing *State Bank of Fraser v. United States*, 861 F. 2d 954, 963-65 (6th Cir. 1988)). The IRS, therefore, would be "entitled to all debtor [Nexgen] assets or rights acquired by the debtor [Nexgen] after 45 days from filing, **unless the proceeds arose pursuant to a pre-existing contract**." *Id.* (emphasis added).

*Dorrough* is instructive. The court, applying the aforementioned law, held that the secured creditor's perfected security interest took priority over the IRS' federal tax lien in the proceeds of a settlement agreement that arose pursuant to a pre-existing contract between the debtor and third party. *Dorrough, Parks & Co.*, 185 B.R. at 50. The court's decision turned on its finding that the debtor and third party had in fact entered into a **definite and enforceable contract**. *Id.* at 49. The secured creditor's lien took priority over the IRS' federal tax lien because the court specifically found that the secured creditor had "acquired a security interest . . .

---

Nexgen on September 30, 2002, contract number SBAHQ-02-D-001, to "furnish customized services for SBA Exchange." Id. ¶ 3.

[7] Section 6323(d) provides that:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing by reason of disbursements made before the 46th day after the date of tax lien filing, or (if earlier) before the person making such disbursements had actual notice or knowledge of tax lien filing, but only if such security interest – (1) is in property (A) subject, at the time of tax lien filing, to the lien imposed by section 6321, and (B) covered by the terms of a written agreement entered into before tax lien filing, and (2) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

in the contract rights and subsequent proceeds arising from the debtor's **oral contract**." *Id.* at 50 (emphasis added).

Factually, *Dorrough* is analogous and relevant to this case. The Bank of East Tennessee ("BET") made a series of loans to Dorrough, an accounting firm, totaling $1,061,323. The BET secured its loans pursuant to a security agreement entered on December 5, 1988, which encumbered all of debtor's personal property, that it subsequently perfected by filing a financing statement. The IRS then filed a Notice of Federal Tax Lien against Dorrough for $64,704 on February 14, 1992.

An involuntary Chapter 7 petition was subsequently filed against Dorrough on June 18, 1992. Prior to the order of relief being granted, however, Dorrough **settled** a $285K account receivable for professional fees owed to it by Aspen Marine Group. The IRS claimed it was entitled to the settlement proceeds because the settlement agreement between Dorrough and Aspen Marine Group was reached more than 45 days after the Notice of Federal Tax Lien was filed. *Id.* at 49. The IRS, however, did acknowledge "that if the disputed funds were received by the debtor as payment for work performed under a pre-existing contract, then Union Planter's (BET's successor) security interest should prevail over its tax lien." *Id.* Accordingly, after reviewing the evidence, the court concluded that Union Planter's lien took priority over the IRS' lien because the settlement proceeds arose from Dorrough's agreement with Aspen Marine Group, which was entered in 1991, **prior** to the IRS filing its Notice of Federal Tax Lien. *See Id.* at 50 (emphasis added).

In making its decision, the court was careful to distinguish its holding from *In re May Reporting Services, Inc.*, 115 Bankr. 652 (Bankr. D.S.D. 1990). The court distinguished *May* only to emphasize that a secured creditor's lien on qualified property took priority over a federal

tax lien if the qualified property arises out of a **definite and enforceable contract**.  *Id.* 49.

Although the debtor in *May* billed its clients after services were performed, "[t]he *May* court held

that 'no evidence admitted established May entered into any definite contracts' to provide . . .

services."  *Id.*  Applying the rationale in *May*, the *Dorrough* court found that the "[secured

creditor] presented evidence of the lengthy relationship between the debtor and [third party], as

well as evidence that **the debtor agreed to perform extensive, technical, and specialized work**

**for [the third party] . . . in return for a reasonable fee**."  *Id.*  (emphasis added).  The court

concluded by stating: "In this case, the disputed funds were received by the debtor for work

performed pursuant to an **oral contract** that was entered into in 1991 [before the IRS filed its

federal tax lien] when debtor agreed to perform the transactional work."  *Id.* at 50 (emphasis

added).

      Here, Nexgen and the SBA executed the Settlement Agreement on November 15, 2004 –

more than 45 days after the IRS filed its first Notice of Federal Tax Lien.  The IRS' liens,

however, do not take priority over the Bank's lien.  The Settlement Agreement expressly states

that it "aris[es] out of or [is] related to contracts SBAHQ-01-C-001 and SBAHQ-02-D-001," two

pre-existing contracts between Nexgen and the SBA.  Exhibit 4 at 1.

      Although the Settlement Agreement was not executed until more than 45 days after the

IRS filed its first Notice of Federal Tax Lien, the proceeds from that Settlement Agreement arise

out of two definite and enforceable pre-existing contracts entered into before the IRS filed its tax

liens that were sufficient to give either party contract rights when made.[8]  Nexgen's right to

---

[8] In the event this Court characterizes the two pre-existing contracts as generating "account receivables," the Bank still has priority to the proceeds of the Settlement Agreement.  The proceeds of the Settlement Agreement arise out of two pre-existing contracts that were **terminated prior to the IRS filing its first Notice of Tax Levy**.  As a result, the Bank's interest in the proceeds of the Settlement Agreement do not arise out of any account generated after the IRS filed its first notice of tax levy.  *See Penetryn Int'l, Inc. v. United States*, 391 F. Supp. 729 (D. NJ 1975) (holding that the creditors' security interest did not prime the IRS' federal tax liens because at the time of the recording of the federal tax liens, the accounts receivables were no more than anticipated future business that debtor

payment under these contracts was specific and choate when made because the failure of either party to fulfill their promises would subject either to a suit for breach of contract. As a result, the proceeds from the Settlement Agreement are qualified property that fall within the Bank's perfected security interest, which serves as the basis for its confessed judgment, and gives the Bank priority over the IRS' federal tax liens.

Lending further support to the Bank's position is *Breman Bank & Trust Co. v. U.S.*, 131 F. 3d 1259 (8th Cir. 1997) ("BB&T") and *American Investment Financial v. U.S.*, 2007 U.S. App. LEXIS 20512 (10th Cir. Feb. 2, 2007). These cases stand for the proposition that the two Nexgen/SBA contracts underlying the Agreement were definite and enforceable when made, generating a specific and choate right to payment.

In *BB&T*, the court defined a contract right as "any right to payment under a contract not yet earned by performance and not evidenced in an instrument or chattel paper." 131 F. 3d at 1265 (citing 26 C.F.R. 301.6323(c)-1(c)(2)(i)). The court stated that "[a] contract right to payment upon services rendered is choate, or 'specific and certain,' when the parties have promised under a binding agreement to render goods or services in exchange for payment." *Id.* at 1266. Most importantly, the court emphasized that "[u]nder such an agreement, either party's failure to fulfill its promise would subject that party to suit for breach of contract." *Id.* The rationale cited by the court supporting its definition of a contract right is supportive.

> Congress's understanding that in the ordinary commercial context, actual payment under a contract is typically due only when it is earned by some performance but contract rights may exist prior to that time. [The C.F.R.] explicitly recognizes that such contracts generate "contract rights" from the outset even though

---

"might perhaps receive but to which it had no binding claim"). In this case, at the time the IRS filed its first notice of tax levy against Nexgen, the SBA had already wrongfully terminated its contracts: therefore, the proceeds of the Settlement Agreement do not represent any anticipated future business that Nexgen might receive, but had no binding claim against. It is undisputed that Nexgen had a binding claim to the Settlement Agreement proceeds due to the SBA's wrongful termination of its contracts. *See* Exhibit 4 at 1.

> performance has not yet occurred.  To hold otherwise would be to exclude most service contracts, thereby frustrating congressional intent to improve the status of private secured creditors and prevent impairment of commercial financing transactions by modernizing the relationship of Federal tax liens to the interests of other creditors.

*Id.* (citing *Kimball Foods, Inc.*, 440 U.S. at 738)).

Application of *BB&T* to this case supports the Bank's position: Nexgen acquired contractual rights in its two contracts with the SBA at the outset because it entered into a binding agreement to render services in exchange for payment, which obligated both parties to fulfill their promises or be subject to a breach of contract.  This is supported by the fact that the SBA settled its dispute with Nexgen for $2,900,000.

*American Investment* complements the *Breman* analysis; i.e. contract rights arise when made if the agreement is definite, binding and enforceable, obligating both parties to perform.  In fact, the court favorably cited *Dorrough* in its analysis; first finding that an oral contract existed, then stating that "because the contract had been entered into prior to the filing of the tax lien by the IRS, the private security interest took priority."  2007 U.S. App. LEXIS 20512, *15 (Feb. 2, 2007).

In making its point, the *American Investment* court illustrated other contractual examples between a taxpayer and third party giving a right to payment that supports the Bank's position. For example, (1) a contract between a builder and homeowner to construct a house, *id.* at *10; (2) a contract between a taxpayer and hospital to help obtain a license, *id.* at *11; and (3) a contract between a taxpayer and apartment complex to install carpet, *id.*   These examples are no different than the relationship between Nexgen and the SBA; i.e., a contract between an information solutions company and a government agency to develop and maintain an e-marketplace business solution.

Therefore, the Bank's interest in the proceeds of the Settlement Agreement took priority over the IRS' federal tax liens because Nexgen acquired contract rights that were specific and choate under the federal tax code when the contracts were made.

## CONCLUSION

For the foregoing reasons, the Bank requests that this Court enter summary judgment in its favor and against the IRS.  The Bank's security interest in Nexgen's collateral remains valid and took priority over the IRS' federal tax liens because: (1) it was specific and choate when the Bank obtained its confessed judgment against Nexgen; and (2) the Settlement Agreement arose out of two definite and enforceable pre-existing contracts.


Dated: <u>March 10, 2008</u>          /s/_____
                                       Alan M. Grochal, D.C. Bar No. 315218
                                       Toyja E. Kelley, D.C. Bar No. 482977
                                       **TYDINGS & ROSENBERG LLP**
                                       100 East Pratt Street, 26th Floor
                                        Baltimore, Maryland  21202
                                        (410) 752-9700

                                       **Attorneys for Plaintiff**
                                        **Industrial Bank, N.A.**

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INDUSTRIAL BANK, N.A. | * |
|     Plaintiff/Counter-Defendant | * |
| v. | * Civil Action No. 07-CV- 00291 RMC |
| UNITED STATES OF AMERICA, et al. | * |
|     Defendants/Counter-Plaintiffs | * |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, John N. Gamble, being over the age of 21 years, am competent to testify to the matters herein, and hereby certify as follows:

1.　　I am a Vice President for Industrial Bank, N.A. (the "Bank").

2.　　On or about September 9, 1996, the Bank extended to NEXGEN Solutions, Inc. ("Nexgen") a United States Small Business Administration loan in the total principal amount of $125,000. Edward L. Howlette, Jr. ("Howlette"), President of Nexgen, personally guaranteed Nexgen's loan from the Bank.

3.　　Pursuant to the terms of the Note, Nexgen and Howlette were required to repay the Note indebtedness plus accrued interest by paying to the Bank monthly installments of $2,107.58 commencing October 9, 1996 and continuing thereafter through and including September 9, 2003.

4.　　The Note indebtedness was secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired (the "First Note Collateral").

#807314v.1

5.     Nexgen and Howlette later borrowed an additional $250,000 from the Bank as evidenced by a Promissory Note dated May 31, 1997 (the "Second Note").

6.     The Second Note indebtedness was secured by a blanket lien on all of Nexgen's assets including, but not limited to, accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired (the "Second Note Collateral"), as evidenced by a Commercial Security Agreement dated May 31, 1997 ( the "Second Security Agreement"). (The First Note Collateral and Second Note Collateral are hereinafter referred to as the "Collateral").

7.     The Bank perfected its interest in the Collateral by filing a UCC-1 financing statement with the Maryland State Department of Assessments and Taxation on July 16, 1997 and with the District of Columbia Recorder of Deeds.

8.     The Bank agreed to advance additional funds to Nexgen and Howlette under a line of credit arrangement with the sum of such additional funds and the balance of the Second Note indebtedness collectively capped at $330,000.

9.     Nexgen and Howlette later defaulted under both the Note and Second Note. It defaulted under the Note by failing to pay the January and February, 1999 installments of $2,107.58 each. It defaulted under the Second Note by failing to pay the $264,950.67 balance owed when the Second Note matured on October 30, 1998.

10.     On or about September 1, 2000, the Bank filed a Complaint for Confession of Judgment, Breach of Contract, and Preliminary and Permanent Injunction in the Circuit Court for Montgomery County. On September 1, 2000, the Clerk for the Circuit Court for Montgomery entered an Amended Notice of Judgment granting the Bank a judgment by confession against Nexgen (the "Nexgen Judgment").

11.     On or about September 20, 2000, the Bank and Nexgen entered into an interim forbearance agreement, (the "First Forbearance Agreement"), in which Nexgen and Howlette agreed, among other things, to make an immediate payment of $28,000.00 to the Bank and to pay the full amount owed under the Note and the Nexgen Judgment, including interest, late charges, applicable fees, costs, and attorney's fees, on or before January 1, 2001.

12.     Nexgen was unable to pay the Bank in full by January 1, 2001. The Bank and Nexgen, therefore, agreed on April 10, 2001, to modify and extend the First Forbearance Agreement thereby extending the time for payment in full to September 1, 2001 (the "Second Forbearance Agreement").

13.     On or before August 14, 2001, Howlette informed the Bank that Nexgen would not be in a position to pay the balance in full by September 1, 2001, but suggested that Nexgen's debt would be paid on an indefinite timetable through proceeds from an agreement between Nexgen and the Small Business Administration.

14.     On the basis of Howlette's representation that Nexgen's relationship with the SBA would result in proceeds sufficient to pay the Bank in full, the Bank agreed to modify and extend the existing forbearance agreements with Nexgen on or about March 4, 2003 (the "Third Forbearance Agreement").

15.     On or before December 2003, the Bank learned that SBA had terminated its contract with Nexgen for convenience. Nexgen, however, took the position that the termination was wrongful and initiated litigation to contest the termination. On December 11, 2003, the Bank, as a secured and judgment creditor, put Nexgen and Howlette on notice of its lien against all of Nexgen's assets and requested that Nexgen and Howlette provide it with all information and documents relevant to its claims against the SBA.

16.     On or about November 15, 2004, Nexgen and the SBA executed the Settlement Agreement in which the SBA agreed to pay $2,900,00.00 to Nexgen immediately, with $600,000.00 "carved out" by the SBA.  The carve out was made to reimburse small businesses with legitimate claims as a result of their involvement in Nexgen's small business exchange program with the SBA.  Any remaining balance from the $600,000.00 was to be remitted to Nexgen.

17.     Notwithstanding its entry into the Settlement Agreement and receipt of substantial proceeds from the SBA, Howlette did not inform the Bank of the settlement, despite the requirement that Nexgen do so pursuant to the terms of its forbearance agreements.  In fact, the Bank did not become aware of the Settlement Agreement until it received notice of it from an anonymous source.

18.     When confronted by the Bank on or about February 7, 2005, Nexgen informed the Bank that the SBA had retained "well over $300,000.00" that would be paid to it "within the next 60 days."  Nexgen further proposed that it would assign to the Bank its interest in the remaining settlement proceeds from the SBA.

19.     On or about February 28, 2005, Nexgen and the Bank entered into a revised forbearance agreement in which Nexgen, among other things, agreed to execute an assignment of its interest in the full amount of the SBA proceeds.  The agreement also provided that Nexgen would receive any portion of the settlement remaining after its indebtedness (including all interest and attorney's fees) to the Bank was satisfied in full.

20.     On or about May 15, 2005, Nexgen assigned its interest in the Settlement Agreement to the Bank (the "Assignment").  Nexgen and the Bank also executed a Notice of Assignment, which was sent to the SBA along with a copy of the Assignment document.  On or

about July 13, 2005, the Bank sent a copy of the Assignment and Notice of Assignment to the

SBA and requested a date upon which the SBA anticipated making the final settlement payment

disbursement.

21.    In late 2005, the SBA informed the Bank that, although all payments owed to the

small business claimants pursuant to the Settlement Agreement had been made, the Bank would

not be paid before the close of 2005.

22.    In or about January 2006, the SBA notified the Bank that it intended to conduct

another round of direct notification to potential small business claimants.  The Bank informed

the SBA that it did not consent to payments to any additional small business claimants and the

remaining settlement proceeds were effectively its payments.

23.    As a result of not having received any payments from the SBA and upon being

notified that the SBA intended to conduct another round of direct notification to potential

claimants, the Bank sent a letter to the SBA on January 18, 2006, in which it reiterated its rights

to receive the final settlement proceeds, notified the SBA of the balance owed by Nexgen,

withheld consent to payments to additional claimants that would cause insufficient funds

remaining to pay the Bank in full, and gave the SBA an additional ninety days to complete the

settlement distribution process.  The Bank also demanded an immediate partial payment of

$50,000.00 as a show of good faith.

24.    The SBA made a payment to the Bank on or about March 24, 2006, in the amount

of $50,000.00.

25.    From March 2006 until the Bank filed suit against the SBA in August 2006, the

SBA made repeated assurances that there remained more than enough proceeds from the

Settlement Agreement to satisfy the full amount of the debt owed to the Bank.

26.    Despite repeated demands from the Bank and assurances from the SBA that the Bank would be paid in full, the SBA has failed and refused to make any additional payments to the Bank pursuant to the terms of the Settlement Agreement. It was not until the eve of filing suit against the SBA that the SBA informed the Bank that its repeated refusal to pay according to the Notice of Assignment was because of a tax levy filed by the IRS.

I solemnly affirm under the penalties of perjury that the contents of the foregoing are true to the best of my personal knowledge, information and belief.

Date: _3/6/08_

_____
John N. Gamble, Vice President
Industrial Bank, N.A.

STATE OF _District of Columbia_    :
CITY/COUNTY OF _Washington_    :    To Wit:

I HEREBY CERTIFY that on this _6th_ day of _March_, 2008, before me, the undersigned, a Notary Public of said State, personally appeared John N. Gamble, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and John N. Gamble acknowledged that he executed the same for the purposes contained therein and that it is his act and deed.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My commission expires: _____    **ROYDELL N. STEPHENS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 14, 2012

# EXHIBIT 2

08/21/00  MON 16:36 FAX 202 722 2096          INDUSTRIAL BANK                    ☑003

The underlying secured transaction being publicized by this
Financing Statement ☐ is ☑ is not wholly or partially subject
to the Maryland Recordation Tax on the taxable principal
amount of the debt: $_____
To the Court of _____

# MARYLAND FINANCING STATEMENT FORM
## TO BE RECORDED IN LAND RECORDS  ☐ YES  ☑ NO
### STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

This Financing Statement dated 05-31-1997 is presented to a filing officer for filing pursuant to the Uniform Commercial Code

Debtor(s) (Last Name First) and mailing address:
Nexgen Solutions, Inc.
8403 Colesville Rd., Suite #915
Silver Spring Md 20910, DC  20910
No Principal Place of Business in Maryland

Check the box indicating the kind of statement.
Check only one box.

(X) ORIGINAL FINANCING STATEMENT
( ) CONTINUATION ORIGINAL STILL EFFECTIVE
( ) AMENDMENT
( ) ASSIGNMENT
( ) PARTIAL RELEASE OF COLLATERAL
( ) TERMINATION

Name and address of Secured Party
INDUSTRIAL BANK, NATIONAL ASSOCIATION
2002 ELEVENTH STREET N.W.

WASHINGTON, DC  20001

Name and address of Assignee

**71988033**

Date of maturity, if any                          Check if proceeds/products of collateral are covered (X)

This Financing Statement covers the following types (or items) of collateral (if collateral is timber to be cut, or minerals (including oil and gas) to be extracted, or accounts therefrom, or crops growing or to be grown or goods which are or are to become fixtures, also describe real estate concerned and add name and address of record owner or record lessee of real estate):

See Attached Exhibit to UCC Financing Statement dated May 31, 1997.

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Maryland from another jurisdiction.

Describe Real Estate if applicable:

This statement is filed without the debtor's signature to perfect a security interest in collateral (check appropriate box)
( ) already subject to a security interest in the state of _____ when it was brought into this state or
    when the debtor's location was changed to this state, or
( ) which is proceeds of the original collateral described above in which a security interest was perfected.

By: Edward Howlette, Jr., President          INDUSTRIAL BANK, NATIONAL ASSOCIATION
Signature of Debtor                          Signature of Secured Party

RECORDED ON JUL 16, 1997 AT 09:17 AM
IN THE FINANCING RECORDS OF THE MD. ST.
DEPARTMENT OF ASSESSMENTS AND TAXATION
ID #:171988033  RECEIPT #:01482120065
SEE BOTTOM OF PAGE FOR LIBER & FOLIO
RECORDING FEE                    20.00
RECORDATION TAX
EXPEDITED FEE

COUNTY CODE

**EXHIBIT E**

08/21/00  MON 16:36 FAX 202 722 2096     INDUSTRIAL BANK                              ☑004

May 31, 1997

DEBTOR:

Nexgen Solutions, Inc.

MAILING ADDRESS:

8403 Colesville Rd., Suite #915, Silver Spring Md 20910, DC  20910

COLLATERAL DESCRIPTION:

All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures; together with the following specifically described property: Direct assignment of various contracts; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

This Financing Statement is to be recorded in the real estate records.  Some or all of the collateral is located on the following described real estate:

This Exhibit is executed on the same date as the UCC-1 Financing Statement by INDUSTRIAL BANK, NATIONAL ASSOCIATION and the undersigned.

_____  Edward Hawkins, President           INDUSTRIAL BANK, NATIONAL ASSOCIATION

Signature(s) or Debtor(s)                          By: _____
                                                        Signature(s) of Secured Party (ies)

3948  0477

08/21/00  MON 16:37 FAX 202 722 2096      INDUSTRIAL BANK                    ☑007

This FINANCING STATEMENT is presented to a filing office          ing pursuant to the Uniform Commercial Code.          ficer (Date, Time, Number and Filing Office).

Debtor(s) Last Name first; and mailing address:          ured Party(ies) Name and address:

NEXGEN Solutions, Inc. 52-1764732          INDUSTRIAL    BANK,    NATIONAL
                                          ASSOCIATION
1009 Vermont Avenue, N.W., #400           2002 ELEVENTH STREET N.W.
ington, DC 20005                          WASHINGTON, DC 20001

This Financing Statement covers the following types (or items) of collateral (if collateral is crops growing or to be grown or goods which are or are to become fixtures, also describe real estate concerned and add name and address of record owner or record lessee of real estate):

Name and address of Assignee of Secured Party:

All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate: 1010 Vermont Avenue, N.W., Washington, D.C. 20005

Name and address of record owner or lessee of real estate concerned:

Check  ☒  if covered;    ☒  Proceeds of collateral are also covered.    ☒  Products of collateral are also covered.          Number of additional sheets presented: . . . . .

Filed with:  Recorder of Deeds of District of Columbia

This statement is filed without the debtor's signature to perfect a security interest in collateral  (check appropriate box)

☐ already subject to a security interest in the state of _____ when it was brought into this state, or

☐ which is proceeds of the original collateral described above in which a security interest was perfected.          INDUSTRIAL BANK, NATIONAL ASSOCIATION

NEXGEN Solutions, Inc.                                    By: _____

By: _____                          Signature(s) of Secured Party(ies)
   Signature(s) of Debtor(s)
Edward Howlette, Jr., President

(5) Debtor Copy.

08/21/00  MON 16:37 FAX 202 722 2096       INDUSTRIAL BANK                    ☑008

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code:

| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | 3. Maturity date (if any): |
|---|---|---|
| Nexgen Solutions, Inc. | Industrial Bank, N.A. | For Filing Officer (Date, Time, Number, and Filing Office) |
| 1010 Vermont Avenue, N.W. | 2002 11th Street, N.W. | |
| Suite 400 | Washington, D.C. 20001 | |
| Washington, D.C. 20005 | | |

4. This financing statement covers the following types (or items) of property:

SEE SCHEDULE "A" ATTACHED HERETO

5. Assignee(s) of Secured Party and Address(es)

96 OCT -2  PM 3:26

96 0 0 0 0 1 7 1 4 7

This statement is filed without the debtor's signature to perfect a security interest in collateral. (check ☒ if so)    Filed with:

☐ already subject to a security interest in another jurisdiction when it was brought into this state.

☐ which is proceeds of the original collateral described above in which a security interest was perfected.

Check ☒ If covered: ☐ Proceeds of Collateral are also covered. ☒ Products of Collateral are also covered. No. of additional Sheets presented:

| Nexgen Solutions, Inc. | | Industrial Bank, N.A. | |
|---|---|---|---|
| By: | President | By: | AVP |
| Signature(s) of Debtor(s) | Title | Signature(s) of Secured Party(ies) | Title |
| (1) Filing Officer Copy-Alphabetical | STANDARD FORM - FORM UCC-1. | | (For Use In Most States) |

RECORDER OF DEEDS
HENRY N TERRELL
WASHINGTON, DC

10-02(WED)'96  3:15 PM

#      9600017147
1275CHR      15.00

TOTAL      15.00
CHECK      15.00

PURCHASE      1
E01 #   0 R1271

08/21/00  MON 16:37 FAX 202 722 2096

**INDUSTRIAL BANK**
0017900560

INDUSTRIAL BANK, N.A.        Schedule "A" to UCC-1 Financing Statement

All goods, inventory merchandise, materials, and other personal property now owned or hereafter acquired by Debtor that are held for sale or lease, or are furnished or to be furnished under any contract of service, or are used or consumed, additions, or accessions therefore and thereto; and

All machinery, equipment, furniture, and fixtures, now owned or hereafter acquired by Debtor, and used or acquired for use in the business of Debtor, together with all accessories thereto, and all substitutions and replacements, thereof and parts therefor; and including, but not limited to, all listed on the schedule attached hereto; and

All cash or non-cash proceeds of any of the foregoing, including insurance proceeds; and

All ledger sheets, files, records, documents, and instruments (including, but not limited to, computer programs, tapes, and related electronic data processing software) evidencing an interest in or relating to the above; and

All instruments, documents, securities, cash, property, and the proceeds of any of the foregoing, owned by Debtor or in which Debtor has an interest, which now or hereafter are at any time in the possession or control of Secured Party or in transit by mail or carrier to or in the possession of any third party acting on behalf of Secured Party, without regard to whether Secured Party received the same in pledge, for safekeeping, as agent for collection or transmission, or whether Secured Party had conditionally released the same.

All accounts, accounts and notes receivable, conditional bills of sale, installment contracts, contract rights, security agreements, instruments, documents, chattel paper, repossessions, returns, deposit accounts, rights to payment owing to the Debtor from third parties, general intangibles (including, but not limited to, choses in action, tax refunds, and insurance proceeds), and any other obligations or indebtedness owed to Borrower from whatever source arising; all rights of Borrower to receive any payments in money or kind; all guarantees of the foregoing and security therefor; all of the right, title, and interest of Borrower in and with respect to the goods, services, or other property that give rise to or that secure any of the foregoing, and any insurance policies and proceeds relating thereto, and all rights of Borrower as an unpaid seller of goods and services, including, but not limited to, the rights of stoppage in transit, replevin, reclamation, and resale; and all of the foregoing, whether now owned or existing or hereafter created or acquired.

By: _____
Norgen Solutions, Inc., Debtor
By: Edward Howlette, Jr., President

By: _____
Industrial Bank, N.A., Secured Party
By: Thomas McLaughlin, Jr. Assistant Vice President

Attest: _____        Attest: _____

(Corporate Seal)        (Corporate Seal)

By: _____        By: _____

# EXHIBIT 3

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

INDUSTRIAL BANK N A
PLAINTIFF

vs.                                                   Case No.: 214185 Civil

NEXGEN SOLUTIONS INC
DEFENDANT

*Amended* **NOTICE OF JUDGMENT**
(817)

I **HEREBY CERTIFY** that the following Judgment was entered in the

above entitled case on September  1st, 2000:

CASE DOCKETED AND JUDGMENT BY CONFESSION IS ENTERED AS TO COUNT I OF
THE COMPLAINT IN FAVOR OF THE PLAINTIFF, INDUSTRIAL BANK, N.A.,
AGAINST THE DEFENDANT NEXGEN SOLUTIONS, INC., AS OF AUGUST 28, 2000
THE TOTAL AMOUNT OWED BY NEXGEN TO THE BANK UNDER THE SECOND NOTE IS
TWO HUNDRED SIXTY EIGHT THOUSAND FOUR HUNDRED THIRTY NINE AND SEVENTY
ONE CENTS ($268,439.71), WHICH CONSISTS OF OUTSTANDING PRINCIPAL OF
TWO HUNDRED TWO THOUSAND SEVEN HUNDRED FORTY NINE AND SEVEN CENTS
($202,749.07), LATE FEES OF THIRTEEN THOUSAND EIGHTY SIX DOLLARS AND
SIXTY ONE CENTS ($13,086.61), ACCURED INTEREST OF TWENTY THOUSAND SIX
HUNDRED NINETY ONE AND SIXTY SEVEN CENTS ($20,691.67) THROUGH AND
INCLUDING AUGUST 28, 2000, FIELD EXAMINATION COSTS OF $1,500.00,
ONE THOUSAND FIVE HUNDRED, ATTORNEYS' FEES OF $30,412,36, THIRTY
THOUSAND FOUR HUNDRED TWELVE AND THIRTY SIX CENTS, PRE-JUDGMENT
INTEREST AT THE DAILY RATE OF $61.95, SIXTY ONE DOLLARS AND NINETY
FIVE CENTS, FROM AUGUST 29, 2000 THROUGH THE DATE OF ENTRY OF THE
CONFESSED JUDGMENT, POST-JUDGMENT INTEREST AT THE LEGAL RATE AND THE
COSTS OF THIS ACTION.

IN **TESTIMONY WHEREOF,** I hereunto set my hand and affix the seal of

this Court.

Clerk of the Circuit Court for
Montgomery County, Maryland

ALAN M GROCHAL, ESQ
26TH FLOOR
100 EAST PRATT ST
BALTIMORE MD 21202

# EXHIBIT 4

**IN THE MATTER OF NEXGEN SOLUTIONS, INC.
AND THE UNITED STATES**

<u>SETTLEMENT AGREEMENT</u>

For the purpose of disposing of any pending or potential claims of NEXGEN Solutions, Inc., its principals, parents, affiliates and subsidiaries, and any other related entities or individuals (collectively "NEXGEN"), or the United States arising out of or related to contracts SBAHQ-01-C-001 and SBAHQ-02-D-001 between NEXGEN Solutions, Inc., and the United States Small Business Administration ("SBA"), without any judicial or administrative proceedings, and without there being any trial or adjudication of any issue of law or fact, and without constituting an admission of liability on the part of any party, and for no other purpose, NEXGEN and the United States (the "parties") stipulate and agree as follows:

**DEFINITIONS**

A.  For purposes of this Settlement Agreement (the "Agreement"), the term "NEXGEN" shall include NEXGEN Solutions, Inc., all of its subsidiaries, parents, affiliates (including, but not limited to, NEXGEN Commerce, Inc., and/or any other corporation owned and controlled by Edward Howlette, Jr.), and each of their respective past, present, and future shareholders, owners, directors, officers, employees, partners, agents, attorneys, predecessors and successors in interest, legal representatives, and assigns, both in their official capacities

and individually.

B.  For purposes of this Agreement, the term "United States" shall include all of its agencies and departments, including the SBA, and any officials, employees, agents, representatives, and attorneys acting on their behalf.

C.  For purposes of this Agreement, the term "Small Business Registrants" shall include the small business entities that registered and paid for the SBA Exchange Program, as well as their principals, owners, employees and agents.  The Small Business Registrants are listed in Attachment A, appended hereto, along with the amount of registration fees they paid.

## TERMS

1.  On October 19, 2000, SBA entered into contract number SBAHQ-01-C-001 with NEXGEN Solutions, Inc. ("the first contract") pursuant to SBA's Business Development (8(a)) Program to develop an e-commerce marketplace known as "SBA Exchange" (or "SBA Exchange Program").

2.  On September 30, 2002, SBA entered into contract number SBAHQ-02-D-001 with NEXGEN Solutions, Inc. ("the second contract") under which task orders would be issued and NEXGEN Solutions, Inc. would "furnish customized services for SBA Exchange."

3.  On or about August 28, 2003, SBA advised NEXGEN Solutions, Inc. that it planned to terminate the first and second

2

contracts for the convenience of the Government.

    4.  On September 4, 2003, NEXGEN submitted a "Termination for Convenience Settlement Proposal, Stop Work Order Adjustment and Request for Equitable Adjustment of NEXGEN Solutions, Inc. Pursuant to Contract No. SBAHQ-01-C-001."

    5.  On October 22, 2003, NEXGEN submitted a revised "Termination for Convenience Settlement Proposal, Claim, Stop Work Order Adjustment and Request for Equitable Adjustment of NEXGEN Solutions, Inc. Pursuant to Contract Nos. SBAHQ-01-C-001 and SBAHQ-02-D-001."

    6.  On December 11, 2003, SBA terminated the first and second contracts for the convenience of the Government.

    7.  The parties subsequently entered into negotiations designed to resolve amicably any and all claims NEXGEN has or may have against the United States under or related to the first and second contracts.

    8.  NEXGEN has offered to settle its claims for payment by the United States in the amount of $2,900,000; of which $2,300,000 is to be paid as soon as possible to NEXGEN (c/o its attorneys, Holland & Knight, LLP); and $600,000 is to be held by the United States for the purpose of reimbursing the Small Business Registrants, as described in paragraphs 10 and 11, below, with any balance remaining from the $600,000 remitted to NEXGEN in accordance with paragraph 11d, following payments to

the Small Business Registrants listed in Attachment A to this
Agreement that have made or may make claims against SBA for
refund of their fees.  This payment is inclusive of interest,
with each party to bear its own costs, attorney fees and
expenses.

9.  NEXGEN's offer has been accepted on behalf of the
Attorney General.

10.  a.  At the time of execution of this Agreement, NEXGEN
agrees to furnish to SBA the following information with respect
to each and every Small Business Registrant listed on Attachment
A:

> (1) the company name;
>
> (2) the contract with the Small Business
> Registrant and the amount paid;
>
> (3) the amount, if any, refunded by NEXGEN or from
> any other source;
>
> (4) the name of a point of contact, if any;
>
> (5) the business address, telephone number and e-
> mail address (if any); and
>
> (6) any additional information in its possession
> that will assist SBA in identifying and contacting
> each and every Small Business Registrant.

b.  NEXGEN and Edward Howlette, Jr. hereby warrant and
represent that to the best of their knowledge, the information in

4

subparagraph 10a is true and correct and that Attachment A contains each and every Small Business Registrant that paid registration or other fees to NEXGEN to participate in SBA Exchange.

 c. NEXGEN agrees to undertake all reasonable efforts to assist SBA in identifying and locating the Small Business Registrants, resolving any issues concerning the amount and nature of fees paid by and/or refunded to such Small Business Registrants, and distributing the funds in exchange for the Small Business Registrant's release of claims referred to in paragraphs 8 and 11b.

 11. The United States agrees to take the following actions:

 a. Counsel for the Department of Justice will refer the matter to the Department of the Treasury for payment pursuant to the Judgment Fund, 28 U.S.C. § 2414, in the amount of $2,300,000. The United States will request that payment be made to counsel for NEXGEN, Gerry Sikorski, Esq., Holland & Knight, LLP, in the manner identified by NEXGEN Solutions, Inc. and/or Mr. Sikorski.

 b. Upon receipt of the information identified in paragraph 10a, above, the appropriate official(s) within SBA will make best efforts to identify and locate the Small Business Registrants identified in Attachment A; provide these Registrants with a claim form and notice of the deadline for filing their

claims for refund of the registration fees paid to NEXGEN (minus any reimbursement of these fees in whole or part from any source whatsoever), which payment will be conditioned on the release by the Small Business Registrant of any and all claims the Small Business Registrant may have against NEXGEN and/or SBA and the United States, as a result of having registered to participate in SBA Exchange and its agreement with NEXGEN; and to establish and implement the procedures for refunding such fees to the appropriate Registrants and execution of the release.  Nothing herein shall be construed as an admission by NEXGEN or the United States that any Small Business Registrant is entitled to a refund of money or that any Small Business Registrant has a valid claim against the United States or NEXGEN.  SBA will have the sole discretion in determining the amount to be refunded to each of the Registrants.  The United States will refer the approved claims of the Small Business Registrants to the Department of the Treasury for payment pursuant to the Judgment Fund, 28 U.S.C. $ 2414, in the amount determined by SBA, for each Small Business Registrant that has agreed to accept such amount in exchange for the release of any and all claims that the Registrant may have against NEXGEN and/or SBA and the United States as a result of having registered to participate in SBA Exchange and its agreement with NEXGEN.

    c.  If the $600,000 identified in paragraphs 8 and 11b,

above, is not sufficient to reimburse fully all Small Business
Registrants that file a timely claim and release, SBA shall have
the sole discretion to determine the amount each Registrant shall
receive.  NEXGEN will not be required to provide any additional
funds for this purpose.

     d.  If any part of the $600,000 to be distributed to
Small Business Registrants following the expiration of the claim
period is not expended to reimburse fully all the Small Business
Registrants, the remaining amount shall be paid to NEXGEN
Solutions, Inc., c/o its attorneys, Holland & Knight, LLP.  In
the event of an unresolved dispute with a Small Business
Registrant, the United States may hold back from the payment to
NEXGEN a reasonable amount sufficient to resolve the dispute.

     12.  Upon satisfaction of the terms set forth in paragraphs
10 and 11, above, NEXGEN releases, waives, and abandons all
claims against the United States, its political subdivisions
(including but not limited to SBA), its officers, agents, and
employees, both in their official capacities and individually,
arising out of or related to the first and second contracts, the
SBA Exchange Program, and NEXGEN's agreements with the Small
Business Registrants, regardless of whether they were included in
the termination for convenience and claim proposals, including
but not limited to any claims for defamation, costs, expenses,
interest, attorney fees, compensatory damages, and exemplary

damages.

13.   Upon satisfaction of the terms set forth in paragraphs 10 and 11, above, the United States releases, waives, and abandons any and all potential claims which it may have against NEXGEN, except fraud, arising out of or related to the first and second contracts and the SBA Exchange Program, including but not limited to any claims for defamation, costs, expenses, interest, attorney fees, compensatory damages, and exemplary damages.

14.   This Agreement is in no way related to or concerned with income or other taxes for which NEXGEN is now liable or may become liable in the future as a result of this Agreement.

15.   NEXGEN warrants and represents that no other action, alternative dispute resolution proceeding, or suit arising out of or related to the claims advanced in its termination for convenience proposals and claims, the first and second contracts, the SBA Exchange Program, and/or its agreements with the Small Business Registrants against the United States is pending or will be filed in or submitted to any court, administrative agency, legislative body, or any other legal proceeding.  NEXGEN further warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to any such claims.  Should there be now or in the future any violation of these warranties and representations, any amount paid by the United States pursuant to this Agreement shall

8

Jan-12-05   12:44pm   From-HOLLAND & KNIGHT LLP 7 SOUTH          +2029555664          T-646  P.011/022  F-472

be refunded promptly by NEXGEN, together with interest thereon at
the rates provided in 41 U.S.C. § 611, computed from the date the
United States makes payment.

16.   This Agreement is for the purpose of settling any and
all pending or potential claims arising out of or related to the
first and second contracts, the SBA Exchange Program, as well as
the claims of the Small Business Registrants as described in
paragraphs 10 and 11, above, and for no other purpose.
Accordingly, this Agreement shall not bind the parties, nor shall
it be cited or otherwise referred to, in any proceedings, whether
judicial or administrative in nature (including dispute
resolution proceedings), in which the parties or counsel for the
parties have or may acquire an interest, except as is necessary
to effect the terms of this Agreement.

17.   All persons signing this Agreement represent that they
are authorized to enter into this Agreement on behalf of the
entity for which they sign.

18.   This document constitutes a complete integration of the
agreement between NEXGEN and the United States and supercedes any
and all prior oral or written representations, understandings or
agreements among or between them.

**AGREED TO:**

PETER D. KEISLER
Assistant Attorney General

9

DAVID M. COHEN
Director
Authorized Representative of
the Attorney General


KATHRYN A. BLEECKER
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn:  Classification Unit
       8th floor
1100 L Street, N.W.
Washington, D.C.   20530

Attorneys for the
United States

Dated: _11/12/04_____

EDWARD HOWLETTE, JR.
Individually and as President
of NEXGEN Solutions, Inc.

Dated:

HOLLAND & KNIGHT, LLP

By: PAUL KIERNAN
Suite 100
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Attorneys for NEXGEN

Dated: _11/15/04_____

10

# EXHIBIT 5

## INSTRUMENT OF ASSIGNMENT OF GOVERNMENT CONTRACTS

WHEREAS, NEXGEN SOLUTIONS, INC., has entered into the contracts described below (singly and collectively, the "Contracts"), and

WHEREAS, INDUSTRIAL BANK, N.A., is a financing institution as described in the Assignment of Claims Act of 1940, as amended (31 U.S.C. § 3727, 41 U.S.C. §15); and

WHEREAS, the Contracts provide for payments to NEXGEN SOLUTIONS, INC. aggregating $1,000 or more; and

WHEREAS, the Contracts do not prohibit an assignment.

NOW, THEREFORE, NEXGEN SOLUTIONS, INC. ("Assignor"), in consideration of financial accommodations provided or to be provided and for other good and valuable consideration, the receipt of which is hereby acknowledged, and pursuant to the provisions of the Assignment of Claims Act of 1940, as amended, hereby assigns, transfers, conveys and sets over to INDUSTRIAL BANK, N.A. (the "Bank") all of the Assignor's right, title and interest in and to all money due or to become due to the Assignor from the United States of America or any agency or department thereof under the following Contracts:

| Contract Number | Date | Contracting Agency | Requisition/Project Number |
|---|---|---|---|
| SBAHQ-01-C-001 | October 19, 2000 | U.S. Small Business Administration | |
| SBAHQ-02-D-001 | September 30, 2002 | U.S. Small Business Administration | |

This Assignment also extends to and covers all monies due or to become due under the Settlement Agreement dated November 2004, as amended (the "Settlement Agreement"), between NEXGEN Solutions, Inc. and the U.S. Small Business Administration relating to claims arising out of or related to the Contracts.

The Assignor hereby authorizes the Bank either in the name of the Assignor or in the name of the Bank to collect and receive all monies which are due or to become due under the Contracts, and to receive and collect any such monies as fully and to the same extent as if such monies were its own funds and to apply such monies to any indebtedness of the Assignor to the Bank now existing or hereafter arising. The Assignor further authorizes the Bank either in the name of the Assignor or in the name of the Bank to prosecute any proceedings at law, in equity or otherwise for any monies which are due or to become due under the contracts described above, and to execute any agreements, release or other instruments which the Bank may from time to time hereafter deem necessary or convenient in its sole discretion in furtherance of or to effectuate the collection of any monies which are due or to become due under the Contracts.

#464890v.1

The Assignor represents and warrants to the Bank that: (i) the facts recited in this Assignment are true and correct; (ii) the Contracts are valid and binding on the parties thereto, and in full force and effect; (iii) the Assignor has made no previous assignment of the Contracts and knows of no fact or defense that will render the monies due or to become due uncollectible; and (iv) the execution and delivery of this Assignment does not violate and is not in conflict with the provisions of the Contracts.

IN WITNESS WHEREOF, the Assignor, intending to be legally bound, has executed this Assignment under seal by its duly authorized representative on this 15 day of MAY , 2005.

WITNESS/ATTEST:

ASSIGNOR:
NEXGEN SOLUTIONS, INC.

_____

By: _____ (SEAL)
Name: Edward Howlette, Jr.
Title: President

## ACKNOWLEDGMENT

STATE OF MARYLAND           ) to wit:
CITY/COUNTY OF Washington)

On this 15th day of May , 2005, before me, a Notary Public, personally appeared Edward Howlette, Jr. who acknowledged himself to be the President of NEXGEN SOLUTIONS, INC., and that he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of NEXGEN SOLUTIONS, INC.

IN WITNESS MY Hand and Notarial Seal.

_____ [SEAL]
Notary Public

**TARA CROOKS**
Notary Public, State of Maryland
County of Washington
My Commission Expires May 28, 2008

My Commission Expires: 05/28/2008

#464890v.1                                        2

# EXHIBIT 6

## NOTICE OF ASSIGNMENT

(Name and Address of Contracting Agency)     (Name and Address of Contracting Officer)

U.S. Small Business Administration
Office of General Counsel
409 3rd Street, S.W., Suite 7200
Washington, D.C. 20416
Attn: David A. Fishman

**Contract Nos.**                    **Contract Date**

SBAHQ-01-C-001                       October 19, 2000
SBAHQ-02-D-001                       September 30, 2002

NOTICE is hereby given that subject to the provisions of the Assignment of Claims Act of 1940, as amended, **NEXGEN SOLUTIONS, INC.** has assigned to **INDUSTRIAL BANK, N.A.**, 2002 11th Street, N.W., Washington, D.C. 20001 all of its right, title and interest in moneys due or to become due under the contracts described above, including all monies due or to become due under the Settlement Agreement dated November 2004, as amended (the "Settlement Agreement"), between NEXGEN Solutions, Inc. and the U.S. Small Business Administration relating to claims arising out of or related to the contracts described above.

Your are directed to make all payments on the contracts described above and the Settlement Agreement to Industrial Bank, N.A. 2002 11th Street, N.W., Washington, D.C. 20001, Attention: John Gamble.

A true copy of the instrument of assignment from Assignor to Assignee executed on _May 15_____, 2005, is attached hereto.

Please return to Assignee a copy of this notice duly signed by the Contracting Agency with appropriate notations showing the date and hour of receipt on behalf of the Contracting Agency.

Assignee:                            Assignor:
**INDUSTRIAL BANK, N.A.**            **NEXGEN SOLUTIONS, INC.**

By: _____ (SEAL)    By: _____ (SEAL)
Name: John Gamble                    Name: Edward Howlette, Jr.
Title: Vice President                Title: President

Address: 2002 11th Street, N.W.,     Address: 8630 Fenton Street, Suite 925
Washington, D.C. 20001               Silver Spring, MD 20910

#464874v.1

# EXHIBIT 7





**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, DC 20224**

*SMALL BUSINESS / SELF-EMPLOYED DIVISION*

**SMALL BUSINESS ADMINISTRATION**                Date: August 11, 2006
**DAVID FISHMAN**
**CHIEF COUNSEL/SPECIAL LITIGATION**
**409 THIRD STREET, S.W.**
**WASHINGTON, DC 20416**

Dear: SMALL BUSINESS ADMINISTRAION

Please be advised that this levy is being issued and served in order to effectuate an offset.

If you have any questions or need more information, please contact me at the address or
the telephone number listed below:

    Internal Revenue Service

    Phone#: 202-283-0952
    Fax#:   202-283-1664

                                    Sincerely,

                                    A S Hall

                                    Employee ID#:

AUG-14-2006  16:07      SBA LITIGATION      

| Form 668-A(ICS) (Jan. 2003) | | Department of the Treasury — Internal Revenue Service **Notice of Levy** |
|---|---|---|

DATE: 08/11/2006

REPLY TO: **Internal Revenue Service**
**A. HALL**
**11510 GEORGIA AVENUE**
**SUITE 200**
**WHEATON, MD 20902**

TELEPHONE NUMBER
OF IRS OFFICE: (202)283-0952

NAME AND ADDRESS OF TAXPAYER:
**NEXGEN SOLUTIONS INC**
**% ACCOUNTS PAYABLE**
**8630 FENTON ST STE 925**
**SILVER SPRING, MD 20910-3811**

TO: **SMALL BUSINESS ADMINISTRATION**
**DAVID FISHMAN**
**CHIEF COUNSEL/SPECIAL LITIGATION**
**409 THIRD STREET, S.W.**
**WASHINGTON, DC 20416**

**NEXG**

IDENTIFYING NUMBER(S):  

THIS IS NOT A BILL FOR TAXES YOU OWE. THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE.

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 941 | 06/30/2000 | 99622.51 | 41596.29 | 141218.80 |
| 941 | 09/30/2000 | 263426.69 | 102978.61 | 366405.30 |
| 941 | 12/31/2000 | 57828.78 | 23335.92 | 81164.70 |
| 941 | 03/31/2001 | 4701.48 | 1538.73 | 6240.21 |
| 941 | 06/30/2002 | 102725.94 | 30223.88 | 132949.82 |
| 941 | 03/31/2003 | 19325.62 | 5081.87 | 24407.49 |
| 941 | 06/30/2003 | 24358.31 | 6596.47 | 30954.78 |
| 941 | 09/30/2003 | 36716.76 | 10058.81 | 46775.57 |
| 941 | 12/31/2003 | 83655.73 | 18172.22 | 101827.95 |
| 1120 | 12/31/1998 | 33407.13 | 17107.93 | 50515.06 |
| 1120 | 12/31/1997 | 44755.68 | 23020.99 | 67776.67 |

THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ====>

| Total Amount Due | 1050236.35 |
|---|---|

We figured the interest and late payment penalty to  09-10-2006

The Internal Revenue Code provides that there is a lien for the amount that is owed. Although we have given the notice and demand required by the Code, the amount owed hasn't been paid. This levy requires you to turn over to us this person's property and rights to property (such as money, credits, and bank deposits) that you have or which you are already obligated to pay this person. However, don't send us more than the "Total Amount Due."

Money in banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code **must be held for 21 calendar days** from the day you receive this levy before you send us the money. Include any interest the person earns during the 21 days. Turn over any other money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment.

Make a reasonable effort to identify all property and rights to property belonging to this person. At a minimum, search your records using the taxpayer's name, address, and identifying number(s) shown on this form. Don't offset money this person owes you without contacting us at the telephone number shown above for instructions. You may not subtract a processing fee from the amount you send us.

To respond to this levy —
1. Make your check or money order payable to United States Treasury.
2. Write the taxpayer's name, identifying number(s), kind of tax and tax period shown on this form, and "LEVY PROCEEDS" on your check or money order (not on a detachable stub).
3. Complete the back of Part 3 of this form and mail it to us with your payment in the enclosed envelope.
4. Keep Part 1 of this form for your records and give the taxpayer Part 2 within 2 days.
If you don't owe any money to the taxpayer, please complete the back of Part 3, and mail that part back to us in the enclosed envelope.

| Signature of Service Representative *A. Hall* | Title **REVENUE OFFICER** |
|---|---|

A. HALL

Part 1 —  For Addressee

Catalog No. 35389E      www.irs.gov      Form 668-A(ICS) (1-2003)

AUG-14-2006  16:08          SBA LITIGATION

Excerpts from the Internal Revenue Code
* * * * * * * * * *

**Sec. 6331. LEVY AND DISTRAINT.**

(b) Seizure and Sale of Property.--The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) Successive Seizures.--Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

**Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**

(a) Requirement.--Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property of rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) in general.--A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.--Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.--The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.--Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.--Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.--In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.--Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

**Sec. 6333. PRODUCTION OF BOOKS.**

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or rights to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

**Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**

(a) Release of Levy and Notice of Release.--

(1) In general.--Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if--

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.--In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.--The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.--If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return--

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(c) Return of Property in Certain Cases.--

If--

(1) any property has been levied upon, and

(2) the Secretary determines that--

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States,

the provisions of subsection (b) shall apply in the same manner as if such property had been wrongfully levied upon, except that no interest shall be allowed under subsection (c).

* * * * * * * * * *

**Applicable Sections of Internal Revenue Code**

6321. LIEN FOR TAXES.
6322. PERIOD OF LIEN.
6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.
6331. LEVY AND DISTRAINT.
6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.
6333. PRODUCTION OF BOOKS.
6334. PROPERTY EXEMPT FROM LEVY.
6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.
7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.
7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.

For more information about this notice, please call the phone number on the front of this form.

# EXHIBIT 8

08/17/2006 11:50 FAX 410 659 0517     HARBOR CITY RESEARCH     ☒003

1008

| Form 668 (Y)(c)<br>(Rev. February 2004) | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | |
|---|---|---|
| **Area:**<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (410) 962-1871 | **Serial Number**<br>162115104 | **For Optional Use by Recording Office** |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer NEXGEN SOLUTIONS INC , a Corporation

Residence        8630 FENTON ST STE 925
                 SILVER SPRING, MD 20910-3811

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

F76012

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1120 | 12/31/1996 | 52-1764732 | 02/28/2000 | 03/30/2010 | 33407.13 |
| 1120 | 12/31/1997 | 52-1764732 | 02/14/2000 | 03/16/2010 | 44749.68 |
| 940 | 12/31/2000 | 52-1764732 | 03/04/2002 | 04/03/2012 | 397.50 |
| 941 | 06/30/2000 | 52-1764732 | 01/06/2003 | 02/05/2013 | 99622.51 |
| 941 | 09/30/2000 | 52-1764732 | 03/04/2002 | 04/03/2012 | 263426.69 |
| 941 | 12/31/2000 | 52-1764732 | 03/04/2002 | 04/03/2012 | 57828.78 |
| 941 | 03/31/2001 | 52-1764732 | 06/04/2001 | 07/04/2011 | 4701.48 |

2006 MAR 17 A 11: 23
MOLLY Q. RUHL
CLERKS OFFICE
MONTGOMERY CO. MD

Place of Filing        CLERK OF THE CIRCUIT COURT
                       MONTGOMERY COUNTY              Total | $        504133.77
                       ROCKVILLE, MD 20850

This notice was prepared and signed at        BALTIMORE, MD        , on this,

the     11th     day of    March     2004.

| Signature<br>for C. SHEPPARD      K. L. Blunt | Title<br>REVENUE OFFICER<br>(202) 283-0951 | 24-05-3267 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

08/17/2004 11:50 FAX 410 659 0517    HARBOR CITY RESEARCH    Ø004

1872

Department of the Treasury - Internal Revenue Service

**Form 668 (Y)(c)**
(Rev. February 2004)

# Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #4 Lien Unit Phone: (800) 913-6050 | Serial Number 262062605 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer NEXGEN SOLUTIONS INC , a Corporation

Residence    8630 FENTON ST STE 925
SILVER SPRING, MD 20910-3811

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

784666

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 06/30/2002 | 52-1764732 | 11/08/2004 | 12/08/2014 | 102725.94 |
| 941 | 03/31/2003 | 52-1764732 | 06/09/2003 | 07/09/2013 | |
| 941 | 03/31/2003 | 52-1764732 | 02/07/2005 | 03/09/2015 | 19319.62 |
| 941 | 06/30/2003 | 52-1764732 | 09/01/2003 | 10/01/2013 | |
| 941 | 06/30/2003 | 52-1764732 | 02/28/2005 | 03/30/2015 | 24358.31 |
| 941 | 09/30/2003 | 52-1764732 | 02/21/2005 | 03/23/2015 | 36716.76 |
| 941 | 12/31/2003 | 52-1764732 | 02/21/2005 | 03/23/2015 | 36348.80 |

2005 DEC 15 P 2:48
FILED
CIRCUIT COURT
CLERKS OFFICE
MONTGOMERY CO. MD

| Place of Filing | CLERK OF THE CIRCUIT COURT MONTGOMERY COUNTY ROCKVILLE, MD 20850 | Total $ | 219469.43 |
|---|---|---|---|

This notice was prepared and signed at _____ BALTIMORE, MD _____, on this,

the ___01st___ day of ___December___, ___2005___.

| Signature *Susan A. Hansen* for JAMES MCDONOUGH | Title REVENUE OFFICER (202) 283-1029 | 24-05-3219 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INDUSTRIAL BANK, N.A.** | * |
| **Plaintiff/Counter-Defendant** | * |
| **v.** | * **Civil Action No. 07-CV- 00291 RMC** |
| **UNITED STATES OF AMERICA, et al.** | * |
| **Defendants/Counter-Plaintiffs** | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**ORDER**</u>

Upon consideration of the Plaintiff Industrial Bank, N.A.'s Motion for Summary

Judgment, any opposition thereto, and the reply, it is this _____ day of _____ 2008,

hereby:

**ORDERED** that the Motion be, and hereby is, **GRANTED**; it is further

**ORDERED** that judgment be, and hereby is, entered in favor of Industrial Bank, N.A. as

follows:

(1)     Industrial Bank has perfected liens that were filed earlier, and are superior to the federal tax liens that were filed by the United States of America; and

(2)     The United States of America is permanently enjoined from enforcing any levy on any remaining funds held by the Small Business Administration in connection with this dispute; and it is further

**ORDERED** that the Clerk of the Court shall inform all counsel and parties of record of

this Order.

_____
Judge, United States District Court for the
District of Columbia

#809806v.1