IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INDUSTRIAL BANK, N.A., | ) |
| | ) |
| Plaintiff and | ) |
| Counterclaim Defendant, | ) No.: 07-cv-291 (RMC) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, et al., | ) |
| | ) |
| Defendants and | ) |
| Counterclaim Plaintiffs. | ) |

## UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The United States moves pursuant to Fed. R. Civ. P. 56 for summary regarding plaintiff's complaint.[1]  As grounds for this motion, the United States asserts that there are no issues of material fact and that its lien has priority over Industrial Bank's purported lien.  A memorandum of law in support of this motion as well as a statement of undisputed facts pursuant to LCvR 56.1, the Declarations of Benjamin J. Weir and John W. Klein and a proposed order are filed concurrently with this motion.

---

[1]The United States does not move for summary judgment herein regarding its counterclaim.

3118266.1

Dated: March 10, 2008

Respectfully submitted,

_____/s/ Benjamin J. Weir_____
BENJAMIN J. WEIR (D.C. Bar No. 494045)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-0855
Fax: (202) 514-6866
benjamin.j.weir@usdoj.gov
*Counsel for United States*

OF COUNSEL:

JEFFREY A. TAYLOR
United States Attorney

3118266.1

**CERTIFICATE OF SERVICE**

I, Benjamin J. Weir, certify that on March 10, 2008, I caused a copy of the

foregoing memorandum of law in support of the United States' motion for summary

judgment to be served upon the following via the Court's ECF protocol:

Alan M. Grochal
Toyja E. Kelley
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th floor
Baltimore, Maryland 21202
agrochal@tydingslaw.com
tkelley@tydingslaw.com.

/s/ Benjamin J. Weir

BENJAMIN J. WEIR

3

3118266.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INDUSTRIAL BANK, N.A., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | No.: 07-cv-291 (RMC) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim Plaintiffs. | ) | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

This case concerns which of the parties has a superior claim to funds resulting from a settlement between the Small Business Administration and Nexgen Solutions, Inc. Industrial Bank claims that it has priority to the funds from its security agreements, forbearance agreements, assignment, and purportedly perfected liens against Nexgen. The United States asserts its rights to the settlement funds as a result of federal tax liens against Nexgen.

**Statement**

Industrial Bank filed suit on February 8, 2007, seeking a declaratory judgment and injunctive relief regarding its rights to a monetary fund resulting from a settlement between Nexgen and the Small Business Administration. (Compl. 9-10.) Nexgen had "no cost" contracts with the SBA in which it was contracted to set up an electronic procurement website. (Klein Decl. ¶ 4.) The electronic procurement site was to be used

1

by small businesses seeking to gain government contracts.  (Klein Decl. ¶ 4.)  The SBA

did not make any payments to Nexgen pursuant to the "no cost" contracts prior to their

termination.  (Klein Decl.  ¶¶ 8, 12, 15.)

Industrial Bank claims to have extended loans to Nexgen on September 9, 1996

and May 31, 1997, which were secured by collateral agreements.  (Comp. ¶5, 7-10.)[1]

Nexgen and Edward Howlette, president of Nexgen, defaulted under the provisions of

the loan agreements.  (Compl. ¶ 12.)  On September 1, 2000, Industrial Bank obtained a

judgment by confession against Nexgen.  (Compl. ¶ 14.)

The United States filed its first notice of federal tax lien on March 17, 2004, for the

tax periods ending: December 31, 1996, December 31, 1997, December 31, 2000, June 30,

2001, September 30, 2000, December 31, 2000, March 31, 2001.  (Weir Decl. Ex. 1.)  The

first notice of federal tax lien reflected an amount due of $504,133.77. (Id.)

The United States filed its second notice of federal tax lien on December 15, 2005,

for the tax periods ending: June 30, 2002, March 31, 2003, June 30, 2003, September 30,

2003, December 31, 2003.  (Weir Decl. Ex. 2.)  The second notice of federal tax lien

reflected an amount due of $219,469.43.  (Id.)  Nexgen Solutions still has outstanding

federal tax liabilities totaling $770,922.13, plus interest and statutory additions.  (Weir

Decl. ¶¶ 5, 7, 9.)

On October 15, 2004, Nexgen and the SBA entered into a settlement agreement

---

[1]For purposes of providing background in this  motion, the United States' cites to
plaintiff's complaint regarding certain facts not in evidence.  The United States does not,
however, concede any of these facts.

wherein the SBA paid $2.3 million to Nexgen immediately, while $600,000 was used to reimburse participants in Nexgen's electronic procurement site.  (Klein Decl. ¶ 23.) Nexgen had a reversionary interest in any funds that remained from the $600,000 that were not used for small business reimbursements.  (Klein Decl. Ex. 104.)  On or about February 28, 2005, Nexgen assigned its interest to Industrial Bank.  (Compl. ¶ 23; Compl. Ex. 3.) To date, roughly $160,000 of the $600,000 remains. (Klein Decl. ¶ 23.) These funds are currently held by the United States Department of the Treasury.  (Id.) These remaining funds are the subject of this litigation.

## I.     Legal Standard

Summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of establishing "the absence of a genuine dispute of material fact."  Haney v. Marriott Int'l, Inc., No. 05-2501, 2007 U.S. Dist. LEXIS 74872 at *6 (D.D.C. Oct. 9, 2007)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once established, the non-movant must show by its "own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Frazza v. United States, No. 06-1410, U.S. Dist. LEXIS 794 at *20 (D.D.C. Jan. 7, 2008) (quoting Celotex Corp., 477 U.S. at 324). To establish a triable issue of fact, the non-moving party "must establish more than the

'mere existence of a scintilla of evidence' in support of its position." Haney, 2007 U.S.

Dist. LEXIS 74872 at *6. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

"To be material, the factual assertion must be capable of affecting the substantive

outcome of the litigation; to be genuine, the issue must be supported by sufficient

admissible evidence that a reasonable trier-of-fact could find for the nonmoving party."

Frazza, U.S. Dist. LEXIS 794 at *20(citations omitted).   Thus, the non-movant must

establish that there are "specific facts showing that there is a genuine issue for trial." Id.

at *21.

## II.    Argument

### A.    United States' federal tax liens

"If any person liable to pay any tax neglects or refuses to pay the same after

demand, the amount (including any interest, additional amount, addition to tax, or

assessable penalty, together with any costs that may accrue in addition thereto) shall be

a lien in favor of the United States upon all property and rights to property, whether

real or personal, belonging to such person."  26 U.S.C. § 6321; United States v. National

Bank of Commerce, 472 U.S. 713, 719 (1985). The lien arises when an assessment is

recorded and continues until the tax debt is satisfied or becomes unenforceable by

reason of lapse of time. 26 U.S.C. § 6322; National Bank of Commerce, supra; Glass City

Bank v. United States, 326 U.S. 265, 267 (1945). The lien is general in nature, United

States v. City of New Britain, 347 U.S. 81, 84 (1954), and reaches "every interest in

property that a taxpayer might have," National Bank of Commerce, 472 U.S. at 720.

3106984.1

Accord, United States v. Gold (In re Avis), 178 F.3d 718, 721 (4th Cir. 1999); M&T

Electrical Contractors, Inc. v. Capital Lighting & Supply, Inc., 267 B.R. 434, 455-56

(Bankr. D.D.C. 2001); Jones v. Internal Revenue Service, 206 B.R. 614, 617 (Bankr. D.D.C.

1997).

The United States filed its first notice of federal tax lien on March 17, 2004, and its

second notice of federal tax lien on December 15, 2005.  (Weir Decl. ¶¶ 2,3.)

 **B. Priority of the United States' federal tax liens**

Federal law determines the relative priority of federal tax liens and any

competing liens. Aquilino v. United States, 363 U.S. 509, 513-14 (1960). In the absence of

statutory authority to the contrary, "priority for purposes of federal law is governed by

the common-law principle that 'the first in time is the first in right.'" United States v.

McDermott, 507 U.S. 447, 449 (1993); United States v. New Britain, 347 U.S. 81, 85 (1954).

However, "[w]hether a state created lien is 'first in time' is not simply a question of

whether it was perfected prior to the federal tax lien.  Federal law requires that the state

lien be both perfected and choate, or complete, for it to take priority over the federal tax

lien." County Nat'l Bank of South Florida v. Duper, No. 95-2165, 1996 U.S. Dist. LEXIS

17342, at *7 (D.D.C. Oct. 28, 1996).

  **i. The United States' lien is superior to Industrial Bank pursuant to the "first in time, first in right" principle**

Federal law provides that a state-created lien is choate only if "the identity of the

lienor, the property subject to the lien, and the amount of the lien are established." Id.

(quoting <u>United States v. New Britain</u>, 347 U.S. 81, 84 (1954); <u>see</u> <u>also</u> <u>United States v.</u>

<u>McDermott</u>, 507 U.S. at 453.  Federal law holds that a "'general' tax lien receives priority

over a judgment creditor's perfected, yet inchoate lien." <u>County Nat'l Bank of South</u>

<u>Florida</u>, 1996 U.S. Dist. LEXIS 17342 at *7-8. (collecting cases).

Industrial Bank's lien was created via a state-court confession of judgment.

(Compl. ¶ 13.)  The Bank claims that it properly perfected its lien by filing the required

financing statements prior to the date the United States filed its notices of federal tax

liens.[2]  (Compl. 2.) But Industrial Bank merely filing its state-created lien prior to the

United States filing its notices of federal tax liens is insufficient, standing alone, for

Industrial Bank 's lien to have priority over the federal tax liens.  <u>See</u>, <u>e.g.</u>, <u>County Nat'l</u>

<u>Bank of South Florida</u>, 1996 U.S. Dist. LEXIS 17342 at *7-8.  Rather, it must show that its

lien was choate by the establishment of "the identity of the lienor, the property subject

to the lien, and the amount of the lien," <u>id.</u>, and that the lien was choate prior to the

time the federal tax liens were filed.

In this case, Industrial Bank cannot show that the "property subject to the lien"

was established prior to the filing of the notices of federal tax liens.  Indeed, the

settlement agreement that created the funds at issue was not reached until October 15,

2004 – seven months after the United States filed its first notice of federal tax lien.

---

[2]When considering a motion for summary judgment, a court must construe
factual inferences in the light most favorable to the non-movant.  As such, the United
States does not contest that Industrial Bank properly filed its financing statements and
continuation statements.  The United States reserves the right to contest such facts at
trial should its motion for summary judgment be denied.

3106984.1

(Klein Decl. ¶ 20.)

The amount of the settlement, $2.3 million for immediate payment and $600,000 reserved to repay small businesses with Nexgen retaining a reversionary interest, was not known prior to date the stipulation of settlement was signed.   The contracts between Nexgen and the SBA were "no cost" contracts whereby the SBA was not required to make any payments to Nexgen.  (Klein Decl. ¶ 7, 11, 14.)   The contracts contained no provisions for the payment of $2.9 million or $600,000 to Nexgen.  (Id.)  As such, the "property subject to the lien" was, therefore, unknown to all parties, creditors and lienholders prior to the date the stipulation of settlement was reached and the settlement funds created.  Indeed, the property did not even exist prior to that time.  As such, Industrial Bank did not have a choate lien regarding the settlement funds prior to the date the United States' notices of federal tax liens were filed.  See County Nat'l Bank of South Florida,, 1996 U.S. Dist. LEXIS 17342, at *7; New Britain, 347 U.S. at  84; McDermott, 507 U.S. at 453.

The United States federal tax liens and Industrial Bank's judgment lien therefore attached on the date of the creation of the settlement funds.   When liens attach simultaneously, federal tax liens generally have priority.  See McDermott, 507 U.S. at 455.  Therefore, to the extent Industrial Bank claims its lien primes the United States' tax liens because Industrial Bank is a judgment lien creditor, its claims fail because the lien was not choate, as the settlement fund had not been created nor had the amount of the settlement been determined.

3106984.1

ii.     **Industrial Bank's liens do not qualify for "super-priority" protection pursuant to federal statute**

Federal law also provides for super-priority protection for certain commercial transactions financing agreements pursuant to 26 U.S.C. § 6323(c).  Industrial Bank is not afforded protection under the statute, however.  While Industrial Bank loaned money to Nexgen, and may assert a claim that its loan constituted a commercial financing agreement pursuant to section 6323(c), it does not meet the requirements necessary to be afforded the statutory super-priority protection.

26 U.S.C. § 6323(c) provides that a federal tax lien will not have priority over a security interest which came into existence after notice of the tax lien was filed, provided that the security interest "is in qualified property covered by the terms of a written agreement entered into before tax lien filing. . ."  26 U.S.C. § 6323(c)(1)(A).  The statute continues, stating, "Limitation on Qualified Property.  The term 'qualified property', when used with respect to a commercial transactions financial agreement, includes only commercial financial security acquired by the taxpayer before the 46th day after the date of the tax lien filing."  26 U.S.C. § 6323(c)(2)(B).  This is known as the "45 day rule", which bars any "commercial financing security" acquired by the taxpayer more than 45 days after the filing of the notice of federal tax lien from being afforded super-priority.  <u>Donald v. Madison Industries, Inc.</u>, 483 F.2d 837, 844-45 (10th Cir. 1973) (stating that "we find it evident form the face of the statute that property not

yet owned or 'acquired' by the debtor-taxpayer by the 45th day after the tax lien filing . . . would not be subject to the creditor's priority. . ."); <u>Transwestern Pipeline Co. v. Allied Bank of Texas</u>, No. 85-4347, 1989 U.S. Dist. LEXIS 7270 at *5 (S.D. Tex. Jan. 9, 1989)(citing <u>Rice Investment Co. v. United States</u>, 625 F.2d 565 (5th Cir. 1980)); <u>In re Thomas Communications, Inc. v. Allied Financial Corporation</u>, 161 B.R. 621, 627 (S.D. W.Va. 1993)(holding that the Service had priority over all accounts receivable earned beginning the 46th day after the filing of the notice of federal tax lien).

The United States filed its notice of federal tax lien on March 17, 2004. (Weir Decl. ¶ 2.) Therefore, for Industrial Bank's commercial transactions financing agreement to be afforded super-priority protection, Nexgen was required to <u>acquire</u> the qualified property within 45 days after the United States notice of tax lien was filed. The settlement between Nexgen and the SBA was not reached until October 15, 2004, nearly seven months after the United States filed its notice of federal tax and well beyond the protection afforded by the "45 day rule".

Industrial Bank does not qualify for protection under 26 U.S.C. § 6323 because Nexgen did not acquire the proceeds from its settlement with the SBA until more than 45 days after the filing of the United States notice of federal lien.

**C.    The United States is entitled to offset the settlement funds currently held by the Department of Treasury against Nexgen's federal tax liabilities**

The right of offset, also known as set-off, allows a party "to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due

9

him." <u>United States v. Munsey Trust Co.</u>, 332 U.S. 234 (1947). The United States is afforded the right of set off similar to any other creditor. <u>Id</u>. at 239; <u>Glassman Construction Co. v. Casualty Co.</u>, 356 F.2d 340, 342 n. 1(D.C. Cir. 1965).

Nexgen solutions is indebted to the United States in the following amounts, plus statutory interest and accruals: $78,162.81 for federal income tax liabilities, $692,361.82 for federal employment tax liabilities and $397.50 for unemployment tax liabilities. (Weir Decl. ¶¶ 5, 7, 9.)  The United States Department of the Treasury is currently in the possession of an estimated $160,000, which constitutes the remainder of the settlement fund between Nexgen and the SBA.  (Klein Decl. ¶ 23.)  The United States is, therefore, entitled to offset Nexgen's outstanding federal tax liabilities against the cash that it currently holds.

## Conclusion

The United States' federal tax liens have priority over the interest of Industrial Bank.  First, the Bank did not have a choate federal lien against the settlement proceeds at the time the federal tax lien was filed because the identity and amount of the property were unknown.  Second, Industrial Bank's loans to Nexgen do not qualify for "super-priority" protection pursuant to 26 U.S.C. § 6323(c) because the settlement proceeds were not acquired by Nexgen within 45 days after the United States filed its notice of federal tax lien and, therefore, are not considered "qualified property" under the statute.   Additionally, the United States is entitled to offset Nexgen's federal tax liabilities against the remaining settlement funds held by the Department of Treasury.

3106984.1

The motion for summary judgment should be granted in full.


Dated: March 10, 2008

                                                    Respectfully submitted,

                                                    ____/s/ Benjamin J. Weir_____
                                                    BENJAMIN J. WEIR (D.C. Bar No. 494045)
                                                    Trial Attorney, Tax Division
                                                    U.S. Department of Justice
                                                    Post Office Box 227
                                                    Ben Franklin Station
                                                    Washington, D.C.  20044
                                                    Telephone: (202) 307-0855
                                                    Fax: (202) 514-6866
                                                    benjamin.j.weir@usdoj.gov
                                                    *Counsel for United States*

OF COUNSEL:

JEFFREY A. TAYLOR
United States Attorney

## CERTIFICATE OF SERVICE

I, Benjamin J. Weir, certify that on March 10, 2008, I caused a copy of the

foregoing memorandum of law in support of the United States' motion for summary

judgment to be served upon the following via the Court's ECF protocol:

> Alan M. Grochal
> Toyja E. Kelley
> Tydings & Rosenberg, LLP
> 100 East Pratt Street, 26th floor
> Baltimore, Maryland 21202
> agrochal@tydingslaw.com
> tkelley@tydingslaw.com.

> /s/ Benjamin J. Weir
> BENJAMIN J. WEIR

3106984.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INDUSTRIAL BANK, N.A., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | No.: 07-cv-291 (RMC) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim Plaintiffs. | ) | |

**UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to LcvR 56.1, the United States states the following:

1.     The United States filed its first notice of federal tax lien against Nexgen

Solutions, Inc. on March 17, 2004, reflecting an amount due of $504,133.77. (Weir Decl. ¶

2.)

2.     The United States filed its second notice of federal tax lien against Nexgen

Solutions, Inc. on December 15, 2005, reflecting an amount due of $219,469.43.  (Weir

Decl. ¶ 3.)

3.     Nexgen Solutions has outstanding federal income tax liabilities, pursuant

to information contained within Form 1120, in an amount of $78,162.81 plus statutory

accruals and interest.  (Weir Decl. ¶4-5.)

4.     Nexgen Solutions has outstanding federal employment tax liabilities,

pursuant to information contained within Form 941, in an amount of $692,361.82, plus

statutory accruals and interest.  (Weir Decl.  ¶ 6-7.)

5.      Nexgen Solutions has outstanding federal unemployment tax liabilities, pursuant to information contained within Form 940, in an amount of $397.50 plus statutory interest and accruals.  (Weir Decl. ¶ 8-9.)

6.      On October 19, 2000, the Small Business Administration and Nexgen Solutions entered into contract number SBAHQ-01-0001.  (Klein Decl. ¶3.)

7.      The October 19, 2000 contract required Nexgen to develop an Electronic Procurement website designed to help small businesses enter into internet retailing for government contracts.  (Klein Decl. ¶ 4.)

8.      The small businesses paid fees directly to Nexgen and the SBA did not act as an intermediary regarding payments from the small business to Nexgen.  (Klein Decl. ¶¶ 5-6.)

9.      The SBA was not obligated to make any payments to Nexgen pursuant to the October 19, 2000 contract because it was a "no cost" contract.  (Klein Decl ¶ 7.)

10.     The SBA made no payments to Nexgen pursuant to the October 19, 2000 prior to the contract's termination.  (Klein Decl. ¶ 8.)

11.     Nexgen Solutions and the SBA entered into an amendment to the October 19, 2000, contract on September 30, 2002. (Klein Decl. ¶ 13.)

12.     The September 30, 2002 amendment was also a "no cost" contract and contained no contractual provisions obligating the SBA to make payments to Nexgen. (Klein Decl. ¶ 11.)

3112051.1

13.     The SBA made no payments to Nexgen pursuant to the September 30, 2002 amendment prior to the contract's termination.  (Klein Decl. ¶ 12.)

14.     On September 30, 2002, the SBA and Nexgen Solutions entered into contract number SBAHQ002-D-001, which amended and modified the October 19, 2000 contract.  (Klein Decl. ¶ 13.)

15.     The September 30, 2002 contract was a "no cost" contract and did not obligate the SBA to make any payments to Nexgen.  (Klein Decl. ¶ 14.)

16.     The SBA made no payments pursuant to the September 30, 2002 contract prior to its termination.  (Klein Decl. ¶ 15.)

17.     On or about August 28, 2003, the SBA advised Nexgen that it intended to terminate the October 19, 2000 and September 30, 2002 contracts for the convenience of the government.  (Klein Decl. ¶ 16.)

18.     On December 11, 2003, the SBA terminated the contracts for the convenience of the government pursuant to the government's contractual rights.  (Klein Decl. ¶ 19.)

19.     On October 15, 2004, the SBA and Nexgen entered into a stipulation of settlement.  (Klein Decl. ¶20.)

20.     The stipulation of settlement released all claims pursuant or related to the contracts as well as claims for defamation.  (Klein Decl. ¶21.)

21.     In accordance with the stipulation of settlement, the SBA retained $600,000 to reimburse small business participants who had made payments to Nexgen

regarding their participation in the Electronic Procurement Site.  (Klein Decl. ¶ 23.)

22.     An estimated $160,000 remains from the $600,000 originally retained for reimbursement.  The funds are currently held by the United States Department of the Treasury. (Klein Decl. ¶ 23.)

23.     The SBA entered into the settlement agreement to ensure that the small business participants who made payments to Nexgen would be reimbursed for the losses and payments they incurred from their participation in the Electronic Procurement Site.  (Klein Decl. ¶ 24.)

24.     The SBA believed the stipulation of settlement to be in the best interests of the government.  (Klein Decl. ¶ 25.)

25.     The SBA made a $50,000 payment to Industrial Bank out of the retained $600,000 on or about March 24, 2006. (Klein Decl. ¶ 26.)


Dated: March 10, 2008

                                        Respectfully submitted,

                                        _____/s/ Benjamin J. Weir_____
                                        BENJAMIN J. WEIR (D.C. Bar No. 494045)
                                        Trial Attorney, Tax Division
                                        U.S. Department of Justice
                                        Post Office Box 227
                                        Ben Franklin Station
                                        Washington, D.C.  20044
                                        Telephone: (202) 307-0855
                                        Fax: (202) 514-6866
                                        benjamin.j.weir@usdoj.gov
                                        *Counsel for United States*

3112051.1

OF COUNSEL:

JEFFREY A. TAYLOR
United States Attorney

5

## CERTIFICATE OF SERVICE

I, Benjamin J. Weir, certify that on March 10, 2008, I caused a copy of the

foregoing statement of undisputed facts to be served upon the following via the Court's

ECF protocol:

> Alan M. Grochal
> Toyja E. Kelley
> Tydings & Rosenberg, LLP
> 100 East Pratt Street, 26th floor
> Baltimore, Maryland 21202
> agrochal@tydingslaw.com
> tkelley@tydingslaw.com.

> /s/Benjamin J. Weir
> BENJAMIN J. WEIR

3112051.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INDUSTRIAL BANK, N.A.                    )
                                         )
  Plaintiff and                        )
    Counterclaim Defendant,          ) No. 07-cv-291 (RMC)
                                         )
  v.                                   )
                                         )
UNITED STATES, et al.,                   )
                                         )
  Defendants and                       )
    Counterclaim Plaintiffs.         )

## ORDER

Upon consideration of the United States' motion for summary judgment, its pleadings in support, and for good cause shown, it is:

ORDERED that the United States' motion for summary judgment is GRANTED;

ORDERED that the United States' federal tax liens filed on March 17, 2004, and December 15, 2005, are "first-in-time, first-in-right" vis-a-vis the judgment lien of Industrial Bank, N.A., and therefore enjoy priority over Industrial Bank, N.A.'s lien on the estimated $160,000 fund held by the Treasury; and it is further

ORDERED that plaintiff's complaint is otherwise DISMISSED WITH PREJUDICE.  This dismissal shall have no effect upon the United States' counterclaim.

_____
UNITED STATES DISTRICT JUDGE

3111812.1

# Weir Decl. Part I

2915584.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INDUSTRIAL BANK, N.A., | ) |
| | ) |
| Plaintiff and | ) |
| Counterclaim Defendant, | ) No.: 07-cv-291 (RMC) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, et al., | ) |
| | ) |
| Defendants and | ) |
| Counterclaim Plaintiffs. | ) |

## DECLARATION OF BENJAMIN J. WEIR

I, Benjamin J. Weir, counsel for the defendant in the above captioned matter,

declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am employed as a trial attorney with the Tax Division of the United

States Department of Justice.  In this capacity I am one of the attorneys that has

litigation responsibility for the above captioned case.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a certified record

showing the United States' notice of federal tax lien against Nexgen Solutions, Inc.,

which was filed on March 17, 2004.

3.      Attached hereto as Exhibit 2 is a true and correct copy of a certified of a

certified record showing the United States' notice of federal tax lien against Nexgen

Solutions, Inc., which was filed on December 15, 2005.

4.      Attached hereto as Exhibit 3 is a true and correct copy of a Certificate of

Official Record for Nexgen Solutions, Inc.'s federal income taxes for tax periods ending:

1

3111813.1

December 31, 1996, and December 31, 1997.

5.    Exhibit 3 shows that Nexgen owes the following amounts, plus statutory additions and interest:

| Tax Period Ending | Unpaid Balance |
|---|---|
| December 31, 1996 | $33,407.13 |
| December 31, 1997 | $44,755.68 |
| Total: | $78,162.81 |

6.    Attached hereto as Exhibit 4 is a true and correct copy of a Certificate of Official Record for Nexgen Solutions, Inc.'s employment tax returns for the tax periods ending: June 30, 2000, September 30, 2000, December 31, 2000, March 31, 2001, June 30, 2002, March 31, 2003, June 30, 2003, September 30, 2003 and December 31, 2003.

7.    Exhibit 4 shows that Nexgen owes the following amounts, plus statutory additions and interest:

| Tax Period Ending | Unpaid Balance |
|---|---|
| June 30, 2000 | $99,622.51 |
| September 30, 2000 | $263,426.69 |
| December 31, 2000 | $57,828.78 |
| March 31, 2001 | $4,701.48 |
| June 30, 2002 | $102,725.94 |
| March 31, 2003 | $19,325.62 |
| June 30, 2003 | $24,358.31 |
| September 30, 2003 | $36,716.76 |
| December 31, 2003 | $83,655.73 |

2

| | |
|---|---|
| **Total:** | **$692,361.82** |

8.      Attached hereto as Exhibit 5 is a true and correct copy of a Certificate of Official Record for Nexgen Solutions, Inc.'s unemployment taxes for the tax period ending December 31, 2000.

9.      Exhibit 5 shows that Nexgen owes the following amounts, with interest and statutory additions accruing March 30, 2007:

| **Tax Period Ending** | **Unpaid Balance** |
|---|---|
| December 31, 2000 | $397.50 |
| **Total:** | **$397.50** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2008.

_BENJAMIN J. WEIR_
BENJAMIN J. WEIR
Washington, District of Columbia

3111813.1

# EXHIBIT 1

**IN THE RECORDS OF THE CIRCUIT COURT
FOR MONTGOMERY COUNTY, STATE OF MARYLAND,
AMONG OTHER PROCEEDINGS
IS THE FOLLOWING, TO WIT:**

1008

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (410) 962-1871 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer  NEXGEN SOLUTIONS INC , a Corporation

Residence         8630 FENTON ST STE 925
                  SILVER SPRING, MD 20910-3811

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

F76012

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1120 | 12/31/1996 | | 02/28/2000 | 03/30/2010 | 33407.13 |
| 1120 | 12/31/1997 | | 02/14/2000 | 03/16/2010 | 44749.68 |
| 940 | 12/31/2000 | | 03/04/2002 | 04/03/2012 | 397.50 |
| 941 | 06/30/2000 | | 01/06/2003 | 02/05/2013 | 99622.51 |
| 941 | 09/30/2000 | | 03/04/2002 | 04/03/2012 | 263426.69 |
| 941 | 12/31/2000 | | 03/04/2002 | 04/03/2012 | 57828.78 |
| 941 | 03/31/2001 | | 06/04/2001 | 07/04/2011 | 4701.48 |

2004 MAR 17 A 11: 23
MOLLY Q. RUHL
CLERK'S OFFICE
MONTGOMERY CO. MD

True Copy Test
Loretta E. Knight
Clerk

Place of Filing      CLERK OF THE CIRCUIT COURT
                     MONTGOMERY COUNTY        Total  $      504133.77
                     ROCKVILLE, MD 20850

This notice was prepared and signed at _____ BALTIMORE, MD _____, on this,

the _____ 11th _____ day of __ March __, __ 2004 __.

| Signature<br>for C. SHEPPARD   K. L. Blunt | Title<br>REVENUE OFFICER<br>(202) 283-0951 | 24-05-3267 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# STATE OF MARYLAND

# COUNTY OF MONTGOMERY, to wit:

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of
NOTICE OF FEDERAL TAX LIEN FILED ON MARCH 17, 2004 IN

No. 76012-F, truly taken and copied from the record of proceedings
in the Circuit Court for Montgomery County, Maryland, in the foregoing case.



In Testimony Whereof, I have hereunto subscribed my name
and affixed the seal of the Circuit Court for Montgomery
County this 28th day of February, A.D. 2008.

*Loretta E. Knight*

Loretta E. Knight
*Clerk of the Circuit Court for Montgomery County*

CIV00002 20000324

# EXHIBIT 2

IN THE RECORDS OF THE CIRCUIT COURT
FOR MONTGOMERY COUNTY, STATE OF MARYLAND,
AMONG OTHER PROCEEDINGS
IS THE FOLLOWING, TO WIT:

C1V00002 20000324

form 668 (Y)(c)
(Rev. February 2004)

# Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 913-6050 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer NEXGEN SOLUTIONS INC , a Corporation

Residence       8630 FENTON ST STE 925
                SILVER SPRING, MD 20910-3811

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

784466

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 941 | 06/30/2002 | | 11/08/2004 | 12/08/2014 | 102725.94 |
| 941 | 03/31/2003 | | 06/09/2003 | 07/09/2013 | |
| 941 | 03/31/2003 | | 02/07/2005 | 03/09/2015 | 19319.62 |
| 941 | 06/30/2003 | | 09/01/2003 | 10/01/2013 | |
| 941 | 06/30/2003 | | 02/28/2005 | 03/30/2015 | 24358.31 |
| 941 | 09/30/2003 | | 02/21/2005 | 03/23/2015 | 36716.76 |
| 941 | 12/31/2003 | | 02/21/2005 | 03/23/2015 | 36348.80 |

DEC 15 2005 P 2:48
FILED
CLERK'S OFFICE
MONTGOMERY CO. MD

True Copy Test
Loretta E. Knight
Clerk

| Place of Filing | CLERK OF THE CIRCUIT COURT<br>MONTGOMERY COUNTY<br>ROCKVILLE, MD 20850 | Total | $ | 219469.43 |
|---|---|---|---|---|

This notice was prepared and signed at ____BALTIMORE, MD____ , on this,

True Copy Test
Loretta E. Knight
Clerk

the __01st__ day of __December__ , __2005__ .

| Signature *Susan A. Hansen*<br>for JAMES MCDONOUGH | Title<br>REVENUE OFFICER<br>(202) 283-1029 | 24-05-3219 |
|---|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# STATE OF MARYLAND

# COUNTY OF MONTGOMERY, to wit:

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of
NOTICE OF FEDERAL TAX LIEN FILED ON 12/15/2005 IN

No. 78466-F, truly taken and copied from the record of proceedings
in the Circuit Court for Montgomery County, Maryland, in the foregoing case.



In Testimony Whereof, I have hereunto subscribed my name
and affixed the seal of the Circuit Court for Montgomery
County this 5th day of March, A.D. 2008.

*Loretta E. Knight*

Loretta E. Knight
*Clerk of the Circuit Court for Montgomery County*

CIV00002 20000324

# EXHIBIT 3



# United States  of America

**Department of the Treasury
Internal Revenue Service**

Date: **March 30, 2007**

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: **Form 4340 Certificate of Assessments, and Payments, consisting of 8 page(s), of taxpayer(s) named herein in respect to the taxes specified, is a true and complete transcript for the period(s) stated, and all assessments, credits, and refunds relating thereto as disclosed by the records of this office as of the date of this certification are shown therein. Nexgen Solutions, Inc., 8630 Fenton St. Suite 925, Silver Spring, MD 20910 for Tax Period(s) 199612 and 199712 Form 1120.** ———————————————————————

under the custody of this office.

IN WITNESS WHEREOF,  I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

**PAUL L. CZARNECKI
ACCOUNTING CONTROL/SERVICES OPERATION
MANAGER
PHILADELPHIA SUBMISSION PROCESSING CENTER**

Catalog Number 19002E

Form **2866** (Rev. 09-1997)

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN: '


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120      TAX PERIOD: DEC  1996

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| 11-27-1999 | RETURN FILED 28311-036-40311-0   200007 | | 51,617.00 | 02-28-2000 |
| 04-21-1997 | EXTENSION OF TIME TO FILE EXT. DATE   09-15-1997 | | | |
| | ESTIMATED TAX PENALTY 20000708 | | 2,771.00 | 02-28-2000 |
| | LATE FILING PENALTY 20000708 | | 11,613.83 | 09-15-1997 |
| | FAILURE TO PAY TAX PENALTY 20000708 | | 9,291.06 | 02-28-2000 |
| | INTEREST ASSESSED 20000708 | | 16,865.84 | 02-28-2000 |
| 03-06-2000 | PRIOR TAX ABATED CARRYBACK CLAIM 28354-447-91024-0 | | 51,617.00- | |
| | ADDITIONAL TAX ASSESSED 28354-447-91024-0   20000808 | | 0.00 | .03-06-2000 |
| 03-06-2000 | FAILURE TO PAY TAX PENALTY ABATED | | 3,097.02- | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                        EIN/SSN:


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120        TAX PERIOD: DEC   1996

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| 03-06-2000 | INTEREST ABATED | | 4,037.58- | |
| | ADDITIONAL TAX ASSESSED 28354-473-15013-0   20001208 | | 0.00 | 04-03-2000 |
| 07-17-2000 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 11-13-2000 | RENUMBERED RETURN 28347-718-60011-0 | | | |
| 12-18-2001 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 02-15-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 02-25-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 03-12-2004 | FEDERAL TAX LIEN | | | |

FORM 4340  (REV. 01-2002)                   PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120        TAX PERIOD: DEC  1996

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|--------------------------------------|-----------------------------|----------------------------------|
| 03-15-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 03-09-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-18-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 04-05-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 02-28-2000 | Statutory Notice of Balance Due | | | |
| 03-06-2000 | Statutory Notice of Balance Due | | | |
| 04-10-2000 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120      TAX PERIOD: DEC  1996
------------------------------------------------------------------------

BALANCE       33,407.13
------------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE, ARE SHOWN THEREIN.   I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:

PRINT NAME:_____PAUL L. CZARNECKI_____

TITLE:__ACCOUNTING CONTROL/SERVICES OPERATION MANAGER_____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE


        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE    4

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
----------------------------------------------------------------------

NEXGEN SOLUTIONS INC                      EIN/SSN:


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120       TAX PERIOD: DEC  1997

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|------------------------------------|----------------------------|----------------------------------|
| 11-27-1999 | RETURN FILED 28311-001-45522-0  200005 | | 98,390.00 | 02-14-2000 |
| 04-13-1998 | EXTENSION OF TIME TO FILE EXT. DATE   09-15-1998 | | | |
| | ESTIMATED TAX PENALTY 20000508 | 5,344.00 | | 02-14-2000 |
| | LATE FILING PENALTY 20000508 | 22,137.75 | | 09-15-1998 |
| | FAILURE TO PAY TAX PENALTY 20000508 | 11,314.85 | | 02-14-2000 |
| | INTEREST ASSESSED 20000508 | 18,697.00 | | 02-14-2000 |
| 02-28-2000 | PRIOR TAX ABATED CARRYBACK CLAIM 28354-438-91022-0 | 98,390.00- | | |
| | ADDITIONAL TAX ASSESSED 28354-438-91022-0  20000708 | 0.00 | | 02-28-2000 |
| 02-28-2000 | FAILURE TO PAY TAX PENALTY ABATED | 5,411.45- | | |

FORM 4340  (REV. 01-2002)                PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                      EIN/SSN:


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120        TAX PERIOD: DEC   1997

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|----------------------------------|
| 02-28-2000 | INTEREST ABATED | | 7,332.47- | |
| 07-10-2000 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-18-2001 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 02-15-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 02-25-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 03-12-2004 | FEDERAL TAX LIEN | | | |
| 03-15-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 03-09-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |

FORM 4340  (REV. 01-2002)               PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
-------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120       TAX PERIOD: DEC  1997

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|--------------------------|--------------------------|--------------------------|
| 04-12-2004 | FEES AND COLLECTION COSTS | | 6.00 | |
| 03-18-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 04-05-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 02-14-2000 | Statutory Notice of Balance Due | | | |
| 02-28-2000 | Statutory Notice of Balance Due | | | |
| 05-22-2000 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)               PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: U.S. CORPORATION INCOME TAX RETURN
FORM: 1120     TAX PERIOD: DEC  1997 -------------------------------
--------------------------------------------------------------------

BALANCE        44,755.68
--------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

--------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:

PRINT NAME:_____PAUL L. CZARNECKI_____

TITLE:__ACCOUNTING CONTROL/SERVICES OPERATION MANAGER___

DELEGATION ORDER:_____11_____

LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE    4

# Weir Decl. Part II

# EXHIBIT 4



# United States    of America

**Department of the Treasury**
**Internal Revenue Service**

_____

Date: **March 30, 2007**

## CERTIFICATE OF OFFICIAL RECORD

    I certify that the annexed: **Form 4340 Certificate of Assessments, and Payments, consisting of 25 page(s), of taxpayer(s) named herein in respect to the taxes specified, is a true and complete transcript for the period(s) stated, and all assessments, credits, and refunds relating thereto as disclosed by the records of this office as of the date of this certification are shown therein. Nexgen Solutions, Inc., 8630 Fenton St. Suite 925, Silver Spring, MD 20910 for Tax Period(s) 200006, 200009, 200012, 200103, 200206, 200303, 200306, 200309 and 200312 Form 941.** ⎯⎯⎯⎯⎯⎯

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

PAUL L. CZARNECKI
ACCOUNTING CONTROL/SERVICES OPERATION
MANAGER
PHILADELPHIA SUBMISSION PROCESSING CENTER

Catalog Number 19002E                    Form **2866** (Rev. 09-1997)

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:

TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941          TAX PERIOD: JUNE 2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|---------------------------------|
| 07-31-2000 | RETURN FILED 28135-207-10954-0  200034 | | 0.00 | 09-04-2000 |
| | FEDERAL TAX DEPOSIT PENALTY 20025208 | | 7,709.16 | 01-06-2003 |
| | ADDITIONAL TAX ASSESSED 28154-747-55169-2  20025208 | | 77,091.62 | 01-06-2003 |
| | INTEREST ASSESSED 20025208 | | 14,821.73 | 01-06-2003 |
| 03-24-2003 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-12-2004 | FEDERAL TAX LIEN | | | |
| 03-15-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 03-09-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-18-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

---

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941          TAX PERIOD:` JUNE 2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|----------------------------------|
| 04-05-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 01-06-2003 | Statutory Notice of Balance Due | | | |
| 01-27-2003 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)              PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941      TAX PERIOD: JUNE 2000
------------------------------------------------------------------------


BALANCE        99,622.51
------------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:
                PAUL L. CZARNECKI
PRINT NAME:_____

TITLE:__ACCOUNTING CONTROL/SERVICES OPERATION MANAGER____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE


        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE     3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
----------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: SEPT 2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| | | | 165,447.62 | 03-04-2002 |
| 01-18-2002 | RETURN FILED 17141-041-13502-2  200208 | | | |
| | LATE FILING PENALTY 20020808 | | 37,225.71 | 03-04-2002 |
| | FEDERAL TAX DEPOSIT PENALTY 20020808 | | 16,517.76 | 03-04-2002 |
| | FAILURE TO PAY TAX PENALTY 20020808 | | 14,040.10 | 03-04-2002 |
| | INTEREST ASSESSED 20020808 | | 21,936.62 | 03-04-2002 |
| 02-15-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 02-25-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| | FEDERAL TAX DEPOSIT PENALTY 20021308 | | 8,258.88 | 04-08-2002 |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
-----------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: SEPT 2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|---------------------------------|
| 06-03-2002 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-12-2004 | FEDERAL TAX LIEN | | | |
| 03-15-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 03-09-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-18-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 04-05-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-04-2002 | Statutory Notice of Balance Due | | | |
| 04-08-2002 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

-----------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: SEPT 2000
-----------------------------------------------------------------------


BALANCE        263,426.69
-----------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

-----------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:
                PAUL L. CZARNECKI
PRINT NAME:_____

TITLE:____ACCOUNTING CONTROL/SERVICES OPERATION MANAGER____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)            PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: DEC   2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|--------------------------------------|-----------------------------|----------------------------------|
| 01-18-2002 | RETURN FILED 17141-041-13501-2   200208 | | 37,376.48 | 03-04-2002 |
| | LATE FILING PENALTY 20020808 | | 8,409.71 | 03-04-2002 |
| | FEDERAL TAX DEPOSIT PENALTY 20020808 | | 3,737.65 | 03-04-2002 |
| | FAILURE TO PAY TAX PENALTY 20020808 | | 2,616.35 | 03-04-2002 |
| | INTEREST ASSESSED 20020808 | | 3,819.77 | 03-04-2002 |
| 02-15-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 02-25-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| | FEDERAL TAX DEPOSIT PENALTY 20021308 | | 1,868.82 | 04-08-2002 |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

--------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:

TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: DEC   2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|---------------------------------|

--------------------------------------------------------------------------------

06-03-2002 MODULE BLOCKED OR
           RELEASED FROM FEDERAL
           PAYMENT LEVY PROGRAM

03-12-2004 FEDERAL TAX LIEN

03-15-2004 INTENT TO LEVY COLLECTION
           DUE PROCESS NOTICE
           LEVY NOTICE ISSUED

03-09-2004 REVERSAL OF MODULE
           BLOCKED FROM FEDERAL
           PAYMENT LEVY PROGRAM

03-18-2004 INTENT TO LEVY COLLECTION
           DUE PROCESS NOTICE
           RETURN RECEIPT SIGNED

04-05-2004 MODULE IN FEDERAL PAYMENT
           LEVY PROGRAM

02-11-2002 Taxpayer Deliquency Notice

03-04-2002 Statutory Notice of Balance Due

04-08-2002 Statutory Notice of Intent to Levy

FORM 4340  (REV. 01-2002)              PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941      TAX PERIOD: DEC  2000
------------------------------------------------------------------------


BALANCE        57,828.78
------------------------------------------------------------------------

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:

PRINT NAME:_____PAUL L. CZARNECKI_____

TITLE:___ACCOUNTING CONTROL/SERVICES OPERATION MANAGER_____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
----------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: MAR   2001

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|--------------------------------|
| 04-30-2001 | RETURN FILED 28135-111-08056-1  200121 | | 56,360.88 | 06-04-2001 |
| 02-15-2001 | FEDERAL TAX DEPOSIT | | 22,869.24 | |
| 03-15-2001 | FEDERAL TAX DEPOSIT | | 18,407.91 | |
| 04-16-2001 | FEDERAL TAX DEPOSIT | | 15,083.73 | |
| | FEDERAL TAX DEPOSIT PENALTY 20013608 | 4,701.48 | | 09-17-2001 |
| 12-10-2001 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-18-2001 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 01-28-2002 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 02-15-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 02-25-2002 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: MAR  2001

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| 01-19-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 02-02-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-12-2004 | FEDERAL TAX LIEN | | | |
| 03-15-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 03-18-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 09-17-2001 | Statutory Notice of Balance Due | | | |
| 10-08-2001 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

---

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: MAR  2001

---

BALANCE        4,701.48

---

I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

---

SIGNATURE OF CERTIFYING OFFICER:
                    PAUL L. CZARNECKI
PRINT NAME:_____

TITLE:____ACCOUNTING CONTROL/SERVICES OPERATION MANAGER____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE

          ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: JUNE 2002

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|----------------------------------|
| 07-31-2002 | RETURN FILED 28135-193-08103-2   200232 | | 0.00 | 08-19-2002 |
| | FEDERAL TAX DEPOSIT PENALTY 20044308 | | 8,109.70 | 11-08-2004 |
| | ADDITIONAL TAX ASSESSED 28154-695-55005-4   20044308 | | 81,096.98 | 11-08-2004 |
| | INTEREST ASSESSED 20044308 | | 9,464.41 | 11-08-2004 |
| | FEDERAL TAX DEPOSIT PENALTY 20050308 | | 4,054.85 | 01-31-2005 |
| | ADDITIONAL TAX ASSESSED 28154-403-55008-5   20050308 | | 0.00 | 01-31-2005 |
| 01-31-2005 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-02-2005 | FEDERAL TAX LIEN | | | |
| 11-30-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
----------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                      EIN/SSN: :


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: JUNE 2002

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|----------------------|----------------|-----------|
| 01-04-2006 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE COLL DUE PROCESS NOTICE REFUSED/UNCLAIMED | | | |
| 06-19-2006 | XREF 100% PENALTY CVPN      200206 | | | |
| 11-08-2004 | Statutory Notice of Balance Due | | | |
| 11-29-2004 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)               PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
----------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941       TAX PERIOD: JUNE 2002
----------------------------------------------------------------------


BALANCE        102,725.94
----------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

----------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:

PRINT NAME:_____PAUL L. CZARNECKI_____

TITLE:____ACCOUNTING CONTROL/SERVICES OPERATION MANAGER____

DELEGATION ORDER:_____11_____

LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
-------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: MAR  2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|--------------------------------|
| 04-30-2003 | RETURN FILED<br>31141-123-12308-3  200322 | | 30,431.15 | 06-09-2003 |
| 01-10-2003 | FEDERAL TAX DEPOSIT | | 9,921.50 | |
| 02-12-2003 | FEDERAL TAX DEPOSIT | | 11,215.12 | |
| 03-12-2003 | FEDERAL TAX DEPOSIT | | 9,294.53 | |
| | FEDERAL TAX DEPOSIT<br>PENALTY<br>20050408 | 1,630.85 | | 02-07-2005 |
| | ADDITIONAL TAX ASSESSED<br>17154-418-16987-5  20050408 | 16,308.54 | | 02-07-2005 |
| | INTEREST ASSESSED<br>20050408 | 1,380.23 | | 02-07-2005 |
| J5-30-2005 | MODULE IN FEDERAL PAYMENT<br>LEVY PROGRAM | | | |
| 12-02-2005 | FEDERAL TAX LIEN | | | |
| 11-30-2005 | INTENT TO LEVY COLLECTION<br>DUE PROCESS NOTICE<br>LEVY NOTICE ISSUED | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: MAR   2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|---------------------------------|
| 01-02-2006 | FEES AND COLLECTION COSTS | | 6.00 | |
| 01-04-2006 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE COLL DUE PROCESS NOTICE REFUSED/UNCLAIMED | | | |
| 06-19-2006 | XREF 100% PENALTY CVPN        200303 | | | |
| 02-07-2005 | Statutory Notice of Balance Due | | | |
| 04-11-2005 | Statutory Notice of Intent to Levy | | | |

FORM 4340   (REV. 01-2002)                    PAGE      2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                        EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941          TAX PERIOD: MAR  2003
--------------------------------------------------------------------------


BALANCE          19,325.62
--------------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.   I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.
--------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:

PRINT NAME:_____PAUL L. CZARNECKI_____

TITLE:___ACCOUNTING CONTROL/SERVICES OPERATION MANAGER_____

DELEGATION ORDER:_____11_____

LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)                PAGE    3

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: JUNE 2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|---------------------------------|
| 07-31-2003 | RETURN FILED 17141-221-23089-3  200334 | | 11,942.77 | 09-01-2003 |
| 04-16-2003 | FEDERAL TAX DEPOSIT | | 11,942.77 | |
| 12-03-2004 | DUPLICATE RETURN 34141-332-50844-4        08 | | | |
| | ADDITIONAL TAX ASSESSED 17154-438-15721-5  20050708 | 22,677.14 | | 02-28-2005 |
| | INTEREST ASSESSED 20050708 | 1,681.17 | | 02-28-2005 |
| 05-23-2005 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-02-2005 | FEDERAL TAX LIEN | | | |
| 11-30-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 01-04-2006 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE COLL DUE PROCESS NOTICE REFUSED/UNCLAIMED | | | |
| 02-28-2005 | Statutory Notice of Balance Due | | | |
| 04-04-2005 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                        EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941.        TAX PERIOD: JUNE 2003
------------------------------------------------------------------------


BALANCE        24,358.31
------------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:
             PAUL L. CZARNECKI
PRINT NAME:_____

TITLE:_____ACCOUNTING CONTROL/SERVICES OPERATION MANAGER____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE

         ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:

TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941          TAX PERIOD: SEPT 2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|--------------------------------|
| 10-31-2003 | RETURN FILED 17141-307-84077-3   200348 | | 0.00 | 12-08-2003 |
| 12-03-2004 | DUPLICATE RETURN 34141-332-50843-4        08 | | | |
| | ADDITIONAL TAX ASSESSED 17154-433-15434-5   20050608 | | 34,619.91 | 02-21-2005 |
| | INTEREST ASSESSED 20050608 | | 2,096.85 | 02-21-2005 |
| 05-16-2005 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-02-2005 | FEDERAL TAX LIEN | | | |
| 11-30-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 01-04-2006 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE COLL DUE PROCESS NOTICE REFUSED/UNCLAIMED | | | |
| 06-19-2006 | XREF 100% PENALTY CVPN         200309 | | | |
| 02-21-2005 | Statutory Notice of Balance Due | | | |
| 03-28-2005 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
-------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: SEPT 2003 ----------------------------------
-------------------------------------------------------------------------


BALANCE        36,716.76
-------------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.   I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

-------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:

PRINT NAME:_____PAUL L. CZARNECKI_____

TITLE:__ACCOUNTING CONTROL/SERVICES OPERATION MANAGER_____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE


        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                     EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: DEC   2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|-----------------------------|----------------------------------|
| | | | 0.00 | 04-05-2004 |
| 01-31-2004 | RETURN FILED 31141-052-59248-4  200412 | | | |
| 12-03-2004 | DUPLICATE RETURN 34141-332-49983-4        08 | | | |
| | ADDITIONAL TAX ASSESSED 17154-433-15433-5  20050608 | | 34,619.91 | 02-21-2005 |
| | INTEREST ASSESSED 20050608 | | 1,728.89 | 02-21-2005 |
| 05-16-2005 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 12-02-2005 | FEDERAL TAX LIEN | | | |
| 11-30-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 01-04-2006 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE COLL DUE PROCESS NOTICE REFUSED/UNCLAIMED | | | |
| | FEDERAL TAX DEPOSIT PENALTY 20061608 | | 4,113.64 | 05-01-2006 |

FORM 4340  (REV. 01-2002)              PAGE     1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
----------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                        EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: DEC  2003

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|---|---|---|---|---|
| | ADDITIONAL TAX ASSESSED<br>28154-501-55078-6  20061608 | | 41,136.47 | 05-01-2006 |
| 05-01-2006 | MODULE REVERSED OUT OF<br>FEDERAL PAYMENT LEVY<br>PROGRAM | | | |
| | FEDERAL TAX DEPOSIT<br>PENALTY<br>20062008 | | 2,056.82 | 05-29-2006 |
| | ADDITIONAL TAX ASSESSED<br>28154-532-55032-6  20062008 | | 0.00 | 05-29-2006 |
| 06-19-2006 | XREF 100% PENALTY<br>CVPN        200312 | | | |
| 02-21-2005 | Statutory Notice of Balance Due | | | |
| 03-28-2005 | Statutory Notice of Intent to Levy | | | |
| 05-01-2006 | Statutory Notice of Balance Due | | | |
| 05-29-2006 | Statutory Notice of Balance Due | | | |

FORM 4340  (REV. 01-2002)              PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

----------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S QUARTERLY FEDERAL TAX RETURN
FORM: 941        TAX PERIOD: DEC  2003
----------------------------------------------------------------


BALANCE        83,655.73
----------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

----------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER: _____

PRINT NAME:_____PAUL L. CZARNECKI_____

TITLE:___ACCOUNTING CONTROL/SERVICES OPERATION MANAGER_____

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)              PAGE      3

# EXHIBIT 5

2915584.1



# United States of America

**Department of the Treasury**
**Internal Revenue Service**

Date: **March 30, 2007**

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: **Form 4340 Certificate of Assessments, and Payments, consisting of 3 page(s), of taxpayer(s) named herein in respect to the taxes specified, is a true and complete transcript for the period(s) stated, and all assessments, credits, and refunds relating thereto as disclosed by the records of this office as of the date of this certification are shown therein. Nexgen Solutions, Inc., 8630 Fenton St. Suite 925, Silver Spring, MD 20910 for Tax Period(s) 200012 Form 940.**

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

**PAUL L. CZARNECKI**
**ACCOUNTING CONTROL/SERVICES OPERATION**
**MANAGER**
**PHILADELPHIA SUBMISSION PROCESSING CENTER**

Form **2866** (Rev. 09-1997)

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S ANNUAL FEDERAL UNEMPLOYMENT TAX RETURN
FORM: 940          TAX PERIOD: DEC  2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| 01-18-2002 | RETURN FILED 17840-033-03192-2  200208 | | 896.00 | 03-04-2002 |
| 05-01-2000 | FEDERAL TAX DEPOSIT | | 611.50 | |
| | LATE FILING PENALTY 20020808 | 64.01 | | 03-04-2002 |
| | FAILURE TO PAY TAX PENALTY 20020808 | 19.91 | | 03-04-2002 |
| | INTEREST ASSESSED 20020808 | 29.08 | | 03-04-2002 |
| 01-18-2002 | DUPLICATE RETURN 17840-061-07115-2       08 | | | |
| | ADDITIONAL TAX ASSESSED 17854-507-15290-2   20021708 | 0.00 | | 05-06-2002 |
| 05-20-2002 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-12-2004 | FEDERAL TAX LIEN | | | |
| 03-15-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |

FORM 4340  (REV. 01-2002)              PAGE    1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN:


TYPE OF TAX: EMPLOYER'S ANNUAL FEDERAL UNEMPLOYMENT TAX RETURN
FORM: 940        TAX PERIOD: DEC  2000

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|---------------------------|-------------------------------------|----------------------------|----------------------------------|
| 03-09-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-18-2004 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 04-05-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-04-2002 | Statutory Notice of Balance Due | | | |
| 03-25-2002 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)              PAGE    2

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
------------------------------------------------------------------------

NEXGEN SOLUTIONS INC                    EIN/SSN: 


TYPE OF TAX: EMPLOYER'S ANNUAL FEDERAL UNEMPLOYMENT TAX RETURN
FORM: 940       TAX PERIOD: DEC  2000
------------------------------------------------------------------------


BALANCE         397.50
------------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

------------------------------------------------------------------------

SIGNATURE OF CERTIFYING OFFICER:
            PAUL L. CZARNECKI
PRINT NAME:_____

TITLE:  ACCOUNTING CONTROL/SERVICES OPERATION MANAGER

DELEGATION ORDER:_____11_____


LOCATION: INTERNAL REVENUE SERVICE


        ACCOUNT STATUS DATE 03/29/2007

FORM 4340  (REV. 01-2002)            PAGE    3

# Klein Decl. Part I

2915584.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INDUSTRIAL BANK, N.A.               )
                                                   )
  Plaintiff and                    )
     Counterclaim Defendant,      )    No. 07-cv-291 (RMC)
                                                     )
     v.                         )
                                                   )
UNITED STATES, et al.,         )
                                                   )
  Defendants and             )
     Counterclaim Plaintiffs.     )

DECLARATION OF JOHN W. KLEIN

I, JOHN W. KLEIN, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I am employed as the Associate General Counsel for Procurement Law at the Small Business Administration.  My office is located at 409 Third Street, SW, Washington DC 20416.

2.     As a result of my job responsibilities, I am familiar with all of the documents and facts discussed herein.

3.     On October 19, 2000, the Small Business Administration and Nexgen Solutions, Incorporated ("NEXGEN") entered into a no cost contract, number SBAHQ-01-C-0001.  ("First Contract").  A true and correct copy of the contract is attached hereto as Exhibit 101.

4.     The First Contract required NEXGEN to develop an Electronic

1

Procurement web-site designed to help small businesses provide goods and services to federal agencies by means of the internet, in essence a virtual electronic store.

5.      Small businesses participating in NEXGEN's Electronic Procurement Site would enter into a separate contract with NEXGEN requiring fees for service, including a participation fee, monthly rent and service fees.

6.      At no time did the SBA act as an intermediary regarding payments from the small businesses to NEXGEN.

7.      As previously stated, the First Contract was a "no cost" contract and contained no provisions wherein the SBA was obligated to make payments to NEXGEN. See Exhibit 101 Blocks 15B and 15G which state the total amount of the contract as 0.

8.      The SBA made no payments to NEXGEN pursuant to the First Contract prior to the contract's termination.

9.      On September 30, 2002, the SBA and NEXGEN entered into an amendment of solicitation/modification of the First Contract, which was designated as amendment number 00001. ("Amendment"). A true and correct copy of the Amendment number 00001 is attached hereto as Exhibit 102.

10.      The Amendment replaced the Statement of Work for the First Contract.

11.      The Amendment was also a "no cost" contract and contained no

2

contractual provisions obligating the SBA to make any payments to NEXGEN. See paragraph 9 which states that this is a no cost contract.

12.    The SBA made no payments to NEXGEN pursuant to the Amendment prior to the Amendment's termination.

13.    On September 30, 2002, the Small Business Administration and NEXGEN entered into a contract, number SBAHQ-02-D-001, which amended and modified the October 19, 2000, contract.  A true and correct copy of contract, number SBAHQ-02-D-001, is attached hereto as Exhibit 103. ("Second Contract").

14.    The Second Contract was a "no cost" contract and contained no provisions obligating the SBA to make payments to NEXGEN.  See Block 26 of Exhibit 103.

15.    The SBA made no payments to NEXGEN pursuant to the Second Contract prior to the contract's termination.

16.    On or about August 28, 2003, the SBA advised NEXGEN that it intended to terminate the First and Second Contracts with NEXGEN for the convenience of the government.

17.    On September 4, 2003, NEXGEN submitted a "Termination for Convenience Settlement Proposal, Stop Work Order Adjustment and Request for Equitable Adjustment" to the SBA regarding the First Contract.

18.    On October 22, 2003, NEXGEN submitted a revised "Termination for Convenience Settlement Proposal, Claim, Stop Work Order Adjustment and Request for Equitable Adjustment" to the SBA regarding the First Contract.

19.    On December 11, 2003, the SBA terminated the First and Second Contracts for the convenience of the government pursuant to the government's contractual rights.

20.    On October 15, 2004, the United States and NEXGEN entered into a stipulation of settlement. A true and correct copy of the stipulation is attached hereto as Exhibit 104.

21.    The stipulation of settlement released all claims pursuant or related to the First and Second Contracts and any claims for defamation, costs, expenses and compensatory damages.

22.    The funds paid by the United States to NEXGEN pursuant to the Stipulation of settlement were not contractually required by either the First or Second Contract or the Amendment.

23.    Pursuant to the terms of the stipulation of settlement, the United States Department of Treasury retained $600,000 to reimburse small business participants who had made registration payments to NEXGEN for their registration in the Electronic Procurement Site. Approximately, $160,000 remains from the $600,000 and is currently held by the United States Department of Treasury.

24.    The United States entered into the settlement to ensure that the small business participants who had made payments to NEXGEN would be reimbursed for any losses they incurred from their participation in the Electronic Procurement Site.

4

25.    The SBA believed the stipulation of settlement to be in the

best interests of the government.

26.    The United States made a $50,000 payment to Industrial Bank out

of the retained $600,000 on or about March 24, 2006.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2008.

John W. Klein
Washington , DC

5

# EXHIBIT 101

2915584.1

| AWARD/CONTRACT | | 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | RATING | PAGE | OF PAGES |
|---|---|---|---|---|---|
| | | | | 1 | 26 |

| 2. CONTRACT (Proc. Inst. Ident.) NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. |
|---|---|---|
| SBAHQ-01-C-0001 | OCT 19 2000 | 0.6101.0014 |

| 5. ISSUED BY | CODE | 5330 | 6. ADMINISTERED BY (If other than Item 5) | CODE | 5330 |
|---|---|---|---|---|---|
| Small Business Administration<br>Office of Procurement and Grants Mgmt.<br>409 3rd St SW Suite 5000<br>Washington, DC 20416<br><br>William Dorwart  K12          202-205-7088 | | | See Item 5 | | |

| 7. NAME AND ADDRESS OF CONTRACTOR (No., Street, City, County, State and Zip Code) | | | 8. DELIVERY |
|---|---|---|---|
| Nexgen Solutions, Inc.<br>8403 Colesville Road<br>#915<br>Silver Spring MD 20910 | Vendor ID: 00005309<br>DUNS:<br>CEC:<br>Cage Code:<br>TIN: 521764732 | | [ ] FOB ORIGIN   [ ] OTHER (See below) |
| | | | 9. DISCOUNT FOR PROMPT PAYMENT |
| | | | 10. SUBMIT INVOICES (4 copies unless otherwise specified) to THE ADDRESS SHOWN IN:  ITEM |

| CODE | FACILITY CODE |
|---|---|

| 11. SHIP TO/MARK FOR | CODE | 6101 | 12. PAYMENT WILL BE MADE BY | CODE | 5330 |
|---|---|---|---|---|---|
| Minority Enterprise Development<br>Small Business Administration<br>409 3rd St SW<br>Washington, DC 20416 | | | Small Business Administration<br>Office of Procurement and Grants Mgmt.<br>409 3rd St SW  Suite 5000<br>Washington, DC 20416 | | |

| 13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION: 15 USC 637(a) | 14. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| [ ] 10 U.S.C. 2304(c)( )    [ ] 41 U.S.C. 253(c)( ) | 6100.00.61000.2523 |

| 15A ITEM NO | 15B SUPPLIES/SERVICES | 15C QUANTITY | 15D UNIT | 15E UNIT PRICE | 15F AMOUNT |
|---|---|---|---|---|---|
| | This award is an 8(a) set aside for the procurement of an E-Procurement Exchange program under the project name SB2G (Small Business to Government) Exchange.  This contract is funded through the collection of Fee's pre-established by NEXGEN and paid for | | | | |

| | | | 15G. TOTAL AMOUNT OF CONTRACT | US$ 0.00 |
|---|---|---|---|---|

### 16. TABLE OF CONTENTS

| (x) | SEC | DESCRIPTION | PAGE(S) | (x) | SEC | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1-1 | X | I | CONTRACT CLAUSES | 17-26 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 2-2 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| | C | DESCRIPTION/SPECS./WORK STATEMENT | | | J | LIST OF ATTACHMENTS | |
| X | D | PACKAGING AND MARKING | 3-3 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 4-4 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 5-10 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 11-12 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 13-16 | | M | EVALUATION FACTORS FOR AWARD | |

### CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

| 17. [ ] CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return ___ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.) | 18. [X] AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number SBAHQ-00-R-0016 including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary. |
|---|---|

| 19A. NAME AND TITLE OF SIGNER (Type or Print) | 20A. NAME OF CONTRACTING OFFICER |
|---|---|
| Edward L. Hawthorne Jr., President & CEO | William Dorwart  202-205-7088 |

| 19B. _____ OF CONTRACTOR<br>BY _____<br>(Signature of person authorized to sign) | 19C. DATE SIGNED<br>10-19-2000 | 20B. UNITED STATES OF AMERICA<br>BY _____<br>(Signature of Contracting Officer) | 20C. DATE SIGNED<br>10-19-2000 |
|---|---|---|---|

NSN 7540-01-152-8069
PREVIOUS ADDITION UNUSABLE

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA - FAR (48 CFR) 53.214 (a)

SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS

| ITEM NO. | SUPPLIES OR SERVICES | QUANTITY US$ | UI | UNIT PRICE | AMOUNT US$ |
|---|---|---|---|---|---|
| | by each Store registered at the site.  (These fee's are outlined in section G of contract). | | | | |
| | The contract period of performance is a base year (CLIN 0001 - 0002) of two years from date of award, plus three one year options (CLIN 0003 - 0005) | | | | |
| 0001 | Development of an Electronic Procurement site as per the Statement of Work (attachment 0001). | 1 | LT | 0.00 | 0.00 |
| 0002 | Base Year Development of an Electronic Procurement Site as per the Statement of work (attachment 0001) | 1 | LT | 0.00 | 0.00 |
| | Base Year | | | | |
| 0003 | Operation of Electronic Procurement Site | 1 | LT | 0.00 | 0.00 |
| 0004 | Option Year 1 Operation of Electronic Procurement Site | 1 | LT | 0.00 | 0.00 |
| 0005 | Option Year 2 Operation of Electronic Procurement Site | 1 | LT | 0.00 | 0.00 |
| | Option Year 3 | | | | |

SECTION D
PACKAGING AND MARKING

D.1  Packaging and Marking

All deliverables shall be preserved, packaged, packed, and marked
in accordance with best commercial practices to meet the packing
requirements of the carrier, and ensure safe delivery at
destination.

D.2 MARKING

The contractor shall ensure that all documentation, reports,
invoices, and correspondence contain the following identification
numbers which can be found on standard Form 26, Award/Contract:

| | |
|---|---|
| Basic Contract No. | Block  2 |
| Requisition Number | Block  4 |
| Issuing Office | Block  5 |

D.3 CONTAINER MARKING

Containers shall be clearly marked as follows:

1. NAME OF CONTRACTOR
2. CONTRACT NUMBER
3. DESCRIPTION OF ITEMS CONTAINED THEREIN
4. CONSIGNEE'S NAME AND ADDRESS

(End of Section)

SECTION E

INSPECTION AND ACCEPTANCE

E.1.  52.246-4

INSPECTION OF SERVICES--FIXED-PRICE (AUG 1996)

(a) Definitions. "Services," as used in this clause, includes services performed, workmanship, and material furnished or utilized in the performance of services.

(b) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the services under this contract. Complete records of all inspection work performed by the Contractor shall be maintained and made available to the Government during contract performance and for as long afterwards as the contract requires.

(c) The Government has the right to inspect and test all services called for by the contract, to the extent practicable at all times and places during the term of the contract.  The Government shall perform inspections and tests in a manner that will not unduly delay the work.

(d) If the Government performs inspections or tests on the premises of the Contractor or a subcontractor, the Contractor shall furnish, and shall require subcontractors to furnish, at no increase in contract price, all reasonable facilities and assistance for the safe and convenient performance of these duties.

(e) If any of the services do not conform with contract requirements, the Government may require the Contractor to perform the services again in conformity with contract requirements, at no increase in contract amount. When the defects in services cannot be corrected by reperformance, the Government may (1) require the Contractor to take necessary action to ensure that future performance conforms to contract requirements and (2) reduce the contract price to reflect the reduced value of the services performed.

(f) If the Contractor fails to promptly perform the services again or to take the necessary action to ensure future performance in conformity with contract requirements, the Government may (1) by contract or otherwise, perform the services and charge to the Contractor any cost incurred by the Government that is directly related to the performance of such service or (2) terminate the contract for default.

(End of clause)

E.2.  52.252-2

CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text.  Upon request, the Contracting Officer will make their full text available.  Also, the full text of a clause may be accessed electronically at this/these address(es):

_____

_____

(End of clause)

(End of Section)

SECTION F

DELIVERIES OR PERFORMANCE

F.1  Term of Contract

The term of this Contract is for one (1) two year base period
from the Contract Start Date, with three 1 year
options.

F.2  Period of Performance

For planning purposes, assume the period of
performance under this
Contract to begin five (5) working days after
Contract Award.

F.3 Milestone Dates

All required services and/or support shall be
delivered in accordance
with the delivery requirements specified within the
contract.

Unless otherwise specified within this contract, all
deliverables
listed in a specific  (line item) shall be
accomplished in
accordance with the Contractor's proposed delivery
schedule, as
agreed to by the Government CO, at the time of
contract award.
Delivery shall be made to the locations identified by
the COTR.   The
schedule of significant milestones shall also be
agreed to for each Line item.

The following schedule of milestones will be used by
FEDSIM to
monitor timely progress on this contract.   In this
schedule, Project start
designates the date of the orientation meeting.   This
schedule is
required to meet client objectives.   Variances to
this schedule will be
reviewed and may or may not be acceptable.

MILESTONE/Deliverable      Responsibility      Due
Date

 (Will be incorporated in award in accordance with
negotiated schedule)

F.6  Transportation of Materials

The Contractor shall be responsible for transporting
all materials

SECTION F
DELIVERIES OR PERFORMANCE

between the Government site and the Contractor's
place of
performance.  Pickup and delivery of materials shall
be in accordance
with the schedule defined for each specific
requirement.

The Contractor shall ship all deliverables F.O.B.
destination with all
shipping and transportation costs prepaid.
Destinations will be
specified by the COTR.


F.7  Place(s) of Delivery

Each correspondence and report related to each Task
under this contract
exclusive of the deliverables shall be delivered to
the Contracting
Officer.

> ATTN: (William C. Dorwart)
> Contracting Officer
> Contract # (Enter Contract Number) SBAHQ-01-C-0001
> TO # (Enter TO#) N/A
> U.S. Small Business Administration
> 409 3rd St., SW -- Suite 5000
> Washington, DC 20416
> Telephone:  202-205-7088
> FAX:  202-205-6821


Each copy of all correspondence and reports related
to each Line item
under this contract including the deliverables shall
be delivered to the
designated Contracting Officer's Representative
(COR).

> Attn: (TBD) Judith Rousel
> Contracting Officer's Representative (COR)
> Contract # (Enter Contract Number) SBAHQ-01-C-0001
> U.S. Small Business Administration
> 409 3rd St., SW -- Suite 8000
> Washington, DC 20416
> Telephone:  202-205-7262


F.8  Deliverable Types

Specific deliverables are  set forth in each Task
described in section C.
The following sub-paragraphs under this heading
describe (or define)
representative reporting requirements that may be
imposed upon the

SECTION F

DELIVERIES OR PERFORMANCE

Contractor in support of this Contract.

F.8.1  Monthly Status Reports

Monthly status reports shall, at a minimum, detail
progress during the
month, problems encountered that may delay successful
completion
of a task(s), deliverable, and/or the entire
Contract, corrective action taken
regarding the identified problem, planned activities
for the following
month, the estimated completion dates of all
significant milestones,
task and/or deliverables as they relate to the award,
as formally modified,
if applicable.

The monthly status reports shall be delivered by the
5th working day
after the end of the calendar month for the preceding
month.

F.8.2  Trip or Meeting Reports

Trip or meeting reports shall be submitted within
five (5) working
days of the completion of each trip or meeting.
These reports shall
include, at a minimum, the purpose of the
trip/meeting, destination,
dates traveled, organizations/persons contacted, and
a discussion of
the results.

F.8.3  Project Deliverables

All deliverables shall be delivered in accordance
with Section C,  and the contractors proposal
as stated in the contractors technical proposal.

F.9  Written Deliverables

Same as F.8.3

F.9.1  Draft and Final Written Copies

All reports, documents and narrative-type
deliverables
(except Trip Reports and Monthly Status Reports)
shall
be submitted in draft  rd final form.

F.9.2  Meet the Sche u.e

SECTION F

DELIVERIES OR PERFORMANCE

All deliverables shall be delivered by the required
milestone date as
included in the award document.

F.9.3 Prepare Complete Reports

Monthly status reports and trip reports shall address
all
information as described above. All other written
deliverables
shall conform, in form and content as per COTR
requirements.

F.9.4 Format

All Contractor generated reports/written deliverables
shall follow
the format set forth and agreed upon with the COTR
(TBD).

F.9.5 Draft Versions

The word "DRAFT" shall be stamped prominently on the
document to clearly indicate these are draft
documents and
not the final products. The structure of draft
document
shall correspond to the final document.  Drafts shall
be
delivered with a cover letter unless
specified in any modifications approved by SBA.

F.9.6 Final Versions

The final version of the project deliverables shall
be provided,
revised as necessary to incorporate the Government
comments, in a style and format as prescribed in the
associated Statement of Work and ready for Government
use.

F.9.7 Review and Sign Before Submission

All final deliverables shall include a Contractor-
generated
"Letter of Transmittal"  which shall be signed by an
officer
of the company or other responsible official.

F.9.8 Make Corrections to Rejections Within 15 Days

Rejected deliverables shall be corrected and returned
to the

SECTION F
DELIVERIES OR PERFORMANCE

Government within 15 working days from the date of
the
 rejection by the Government, unless a different time
frame
 is explicitly agreed to in writing.

F.10 Deliverables Media

SBA compatible format.

F.11  Project Review Conferences

Regarding each deliverable under this Contract, the
COR, as
designated in, and for, this project, will maintain
continuing contact
with the Contractor during the project.  Aside from
this
continuing contact, the Contractor shall confer with
the
COR at least every two weeks for a project review
conference.
Telephone conferences will be acceptable unless
otherwise
specified by the COR.

F.12  Notice Regarding Late Delivery

In the event the Contractor anticipates difficulty in
complying with
 any delivery dates, the Contractor shall immediately
notify the
Contracting Officer (CO) (and the appropriate COR) in
writing giving
pertinent details, including the date by which it
expects to make
delivery.  This data shall be informational in nature
and receipt
thereof shall not be construed as a waiver by the
Government of any
schedule, rights, or remedy.

F.13  Problem Notification

The contractor shall be responsible for bringing to
the attention of the
CO and COR and the Government agency/organization
contact any
problems or potential problems in performing assigned
tasks.  Verbal
reports shall be followed up by written narrative
reports within three
(3) working days.

SECTION F
DELIVERIES OR PERFORMANCE

(End of Section)

SECTION G

CONTRACT ADMINISTRATION DATA

G.1.   SBA.17

CONTRACT NUMBER IDENTIFICATION

The contractor agrees to utilize the number of this contract on all correspondence, communications, invoices, and data concerning this contract or delivery hereunder.

Contract No:    (THE RESULTANT CONTRACT NUMBER WILL BE PROVIDED AT TIME OF CONTRACT AWARD) (SBAHQ-01-C-0001

G.2.   SBA.18

INVOICING REQUIREMENT

The Contractor shall prepare invoices in quadruplicate and forward to:

U.S. Small Business Administration

Office of Procurement and Grants Management

409 Third Street, S.W., 5th Floor

Attn:  Invoice Control Clerk

Washington, D.C. 20416

The Invoice Control Clerk will then forward to the Contracting Officer's Technical Representative (COTR), who will verify and certify that the services/supplies have been performed in accordance with the terms of this contract. The COTR shall forward the certified invoices to the Invoice Control Clerk for approval and submission to the Payment Office. In addition, all invoices submitted from the contragor must reference the contract number and requisition indicated in Block 4 of the award document. Payment of invoices will be made 30 days after the date a proper invoice is received or the date on which the Small Business Administration accepts the property or services, whichever is later.

(NOTE: Under no circumstances should the contractor submit any invoice directly to the COTR. The Contractor may submit an "Informational Copy" of the invoice to the COTR, as long as it is so marked).

Each invoice shall contain the amount billed in that invoice, the cumulative amount billed, the total amount received from the Government, invoice number and date of the invoice. Each invoice shall be sequentially numbered. The last invoice should have a suffix of "Z" after the invoice number to indicate that it is the "FINAL INVIOCE", i.e. , No. 0010z would be the tenth, and final invoice for the contract.

G.3.   SBA.19

CONTRACT MANAGEMENT AND ADMINISTRATION

Notwithstanding the Contractor's responsibility for total management during the performance of this contract, the administration of the contract will require maximum coordination between the Government and the Contractor. The following individuals will be the Government points of contact during the performance of the contract:

(i) Contracting Officer. All Contract administration will be effected by the Contracting Officer. Communications pertaining to contractual administrative matters will be addressed to the Contracting Officer. No changes in or deviation from the scope of work shall be effected without written modification to the contract executed by the Contracting Officer authorizing such changes. See block 6, of the contract/award document for the name and address of the cognizant Contracting Officer.

(ii) Contracting Officer's Technical Representative. A Contracting Officer's Technical Representative (COTR) will be given authority by the Contracting Officer to monitor all technical aspects and assist in administering the contract. The type of actions within the purview of the

SECTION G
CONTRACT ADMINISTRATION DATA

COTR's authority are to assure that the Contractor performs the technical requirements of the contract; to perform or cause to be performed inspections necessary in connection with performance of the contract; with the cognizance of the Contracting Officer, to maintain both written and oral communications with the contractor concerning the aspects of requirements of Government drawings, designs, and specifications; to monitor the Contractor's performance under the contract and notify the contractor through the Contracting Officer of any deficiencies observed; and, to coordinate Government furnished property availability and provide for site entry of contractor personnel if required.

A COTR will be designated, by the Contracting Officer, subsequent to contract award.

(iii) The COTR is not authorized to change any of the terms and conditions of this contract. Changes in the time and date of delivery, or the scope of work will be made only by the Contracting Officer by a properly signed written modification to the contract.

(iv) The COTR is not authorized to redelegate his or her authority.

(v) The COTR is not authorized to inititate acquisition actions by use of imprest funds, blanket purchase agreements, or purchase orders, to place calls or delivery orders under basic agreements, basic ordering agreements, or indefinite delivery type contracts.

(vi) If the contractor feels that they may have been given unclear or improper instructions, guidance or direction from the COTR, it is incumbent upon the contractor to contact the Contracting Officer immediately.

G.4.   SBA.20

PROGRESS REPORT

The Contractor shall prepare a written monthly progress report to the attention of the Contracting Officer with a copy to the COTR. This report is to be submitted with any monthly invoices. If the contractor is not submitting an invoice for a particular month, they shall still submit a written monthly progress report.

G.5.   SBA.21

CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE

The Contracting Officer's Technical Representative under this contract will be:    Judith Rousell          (End of Section)

SECTION H

SPECIAL CONTRACT REQUIREMENTS

H.1.   52.217-6

OPTION FOR INCREASED QUANTITY (MAR 1989)

(Reference 17.208)

H.2.   52.229-3

FEDERAL, STATE, AND LOCAL TAXES (JAN 1991)

(a) "Contract date," as used in this clause, means the date set for bid opening or, if this is a negotiated contract or a modification, the effective date of this contract or modification.

"All applicable Federal, State, and local taxes and duties," as used in this clause, means all taxes and duties, in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contract.

"After-imposed Federal tax," as used in this clause, means any new or increased Federal excise tax or duty, or tax that was exempted or excluded on the contract date but whose exemption was later revoked or reduced during the contract period, on the transactions or property covered by this contract that the Contractor is required to pay or bear as the result of legislative, judicial, or administrative action taking effect after the contract date.  It does not include social security tax or other employment taxes.

"After-relieved Federal tax," as used in this clause, means any amount of Federal excise tax or duty, except social security or other employment taxes, that would otherwise have been payable on the transactions or property covered by this contract, but which the Contractor is not required to pay or bear, or for which the Contractor obtains a refund or drawback, as the result of legislative, judicial, or administrative action taking effect after the contract date.

(b) The contract price includes all applicable Federal, State, and local taxes and duties.

(c) The contract price shall be increased by the amount of any after-imposed Federal tax, provided the Contractor warrants in writing that no amount for such newly imposed Federal excise tax or duty or rate increase was included in the contract price, as a contingency reserve or otherwise.

(d) The contract price shall be decreased by the amount of any after-relieved Federal tax.

(e) The contract price shall be decreased by the amount of any Federal excise tax or duty, except social security or other employment taxes, that the Contractor is required to pay or bear, or does not obtain a refund of, through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer.

(f) No adjustment shall be made in the contract price under this clause unless the amount of the adjustment exceeds $250.

(g) The Contractor shall promptly notify the Contracting Officer of all matters relating to any Federal excise tax or duty that reasonably may be expected to result in either an increase or decrease in the contract price and shall take appropriate action as the Contracting Officer directs.

(h) The Government shall, without liability, furnish evidence appropriate to establish exemption from any Federal, State, or local tax when the Contractor requests such evidence and a reasonable basis exists to sustain the exemption.

(End of clause)

H.3.   SBA.10

SECTION H

SPECIAL CONTRACT REQUIREMENTS

GENERAL PROVISIONS

It is anticipated that the resultant contract will be a firm-fixed price type contract. The General Provisions for use on Firm-Fixed-Price Contracts (Negotiated) are listed in Section I, incorporated by reference and made a part hereof.

H.4.  SBA.11

SUBCONTRACTING TERMS

Any subcontracting efforts shall be approved, in writing, by the Contracting Officer prior to beginning the work.

H.5.  SBA.13

STANDARD INDUSTRIAL CLASSIFICATION CODE

The Contracting Officer has determined that the services described herein are classified under the Standard Industrial Classification Manual 8732 and a concern and its affiliates having average annual receipts for the preceding three years not exceeding $5 million dollars is classified as a small business concern.

H.6.  SBA.14

TREASURY FINANCIAL COMMUNICATIONS SYSTEMS (TFCS)

The Government reserves the right to effect payments by use of the Treasury Financial Communications System (TFCS). The electronic funds transfer from the Government to the Contractor may be used on this contract at the election of the Government. Therefore, notwithstanding other provisions of the contract, Government use of TFCS shall not be precluded. The contractor agrees to furnish to the Government the necessary payment and bank information for completion of electronic transfer should the Government elect to use TFCS.

H.7.  SBA.16

PROGRESS COMPLIANCE

The contractor, or his/her representative, and the Contracting Officer, or his/her designated Contracting Officer's Technical Representative (COTR), shall communicate or meet as necessary to discuss progress of the study. The contractor shall furnish to the Contracting Officer, with a copy to the COTR, a progress report outlining accomplishments and problems encountered. The frequency for submitting such reports will be monthly.

H.8.  SBA.25

KEY PERSONNEL

The key personnel which the contractor shall furnish for the performance of work under this contract are as follows:

1. Edward L. Howlette, Jr.         2. _____
3. _____         4. _____
5. _____         6. _____
7. _____         8. _____
9. _____        10. _____

The personnel specified above are considered to be essential to the work being performed hereunder. Therefore, the personnel specified above are the same individuals used in the calculation of proposed cost/price element. Prior to diverting any of the specified individuals, the contractor shall notify the Contracting Officer reasonably in advance and shall submit justification (including proposed substitutions). No diversion shall be made by contractor without the written consent of the contracting Officer.

SECTION H

SPECIAL CONTRACT REQUIREMENTS

The listing of key personnel may, with the consent of parties, be amended from time to time during the course of the contract to either add or delete personnel as appropriate and in accordance with the clause entitled "Substitutions of Personnel".

SUBSTITUTION OF PERSONNEL

(a) The Offeror agrees to assign to the contract those persons whose resume's were submitted with his proposal and specifically listed herein the clause entitled Key Personnel above.

(b) The Offeror agrees that during the first ninety (90) days of the contract performance period, no personnel substituitions will be permitted unless such substitutions are necessitated by an individual's sudden illness, death, or termination of employment. In any of these events, the Contractor shall promptly notify the Contracting Officer and provide the information required by paragraph (c) below. After the initial ninety (90) day period, all proposed substitutions must be submitted , in writing, at least fifteen (15) days in advance of the proposed substitutions to the Contracting Officer, and provide the information required by paragraph (c) below.

(c) All requests for substituitions must provide a detailed explanation of the circumstances necessitating the proposed substituitions, a complete resume for the proposed substitute, and any other information requested by the Contracting Officer, needed by him to approve or disapprove the proposed substituition. All proposed substituition must have qualifications that are equal to or higher than the qualifications of the person to be replaced. The Contracting Officer or his authorized representative will evaluate such requests and promptly notify the Contractor of his approval or disapproval threof.

Type of Contract:

H.9.   SBA.5

ADVERTISING OF AWARD

The Contractor agrees not to refer to awards in commercial advertising in such a manner as to state or imply that the product of service provided is preferred by the Federal Government or is considered by the Government to be superior to other products or services.

H.10.   SBA.6

INTERPRETATION OF CONTRACT REQUIREMENTS

No interpretation of any provision of this contract, including applicable specifications, shall be binding on the Government unless furnished or agreed to in writing by the Contracting Officer.

Any requests for interpretations of any of the provisions of this contract shall be directed to the Contracting Officer only.

H.11.   SBA.7

NOTICE TO THE GOVERNMENT OF LABOR DISPUTES

Whenever the Contractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this contract, the Contractor shall immediately give notice thereof, including all relevant information with respect thereof, to the Contracting Officer.

H.12.   SBA.8

PERMITS AND LICENSES

The Contractor, shall, at its own expense, obtain and maintain necessary

SECTION H

SPECIAL CONTRACT REQUIREMENTS

permits, franchises, licenses, and any other necessary authorizations and certifications.

The Contractor shall comply with all applicable Federal, State, Municipal, and local requirements.

H.13.  SBA.9

FAIR LABOR STANDARDS ACT

Notwithstanding any other provision of this contract, the mimimum wage payment shall be as specified by the Fair Labor Standards Act of 1938, as amended, 29 USC Sections 201-219, or the Service Contract Act Wage Determination Rate under the Service Contract Labor Standards Act, 41 USC Section 351-358, as amended, whichever is greater. All regulations and interpretations of the Service Contract Act of 1965 expressed in 29 CFR 4 are hereby incorporated by reference in this contract.

(End of Section)

SECTION I

CONTRACT CLAUSES

I.1.  52.252-2

CLAUSES INCORPORATED BY REFERENCE (FEB 1998)


This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text.  Upon request, the Contracting Officer will make their full text available.  Also, the full text of a clause may be accessed electronically at this/these address(es):
**7504
**7504

(End of clause)


I.2.  52.203-5

COVENANT AGAINST CONTINGENT FEES (APR 1984)
(Reference 3.404)


I.3.  52.203-6

RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1995)
(Reference 3.503-2)


I.4.  52.203-7

ANTI-KICKBACK PROCEDURES (JUL 1995)
(Reference 3.502-3)


I.5.  52.203-10

PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997)
(Reference 3.104-9)


I.6.  52.203-12

LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JUN 1997)
(Reference 3.808)


I.7.  52.204-2

SECURITY REQUIREMENTS (AUG 1996)
(Reference 4.404)


I.8.  52.207-3

RIGHT OF FIRST REFUSAL OF EMPLOYMENT (NOV 1991)
(Reference 7.305)


I.9.  52.209-6

PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUL 1995)
(Reference 9.409)


I.10.  52.215-2

AUDIT AND RECORDS--NEGOTIATION (JUNE 1999)
(Reference 15.209)


I.11.  52.217-8

OPTION TO EXTEND SERVICES (NOV 1999)
(Reference 17.208)

SECTION I
CONTRACT CLAUSES

I.12.  52.217-9
       OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)
       (Reference 17.208)

I.13.  52.219-8
       UTILIZATION OF SMALL BUSINESS CONCERNS (OCT 1999)
       (Reference 19.708)

I.14.  52.219-14
       LIMITATIONS ON SUBCONTRACTING (DEC 1996)
       (Reference 19.811-3)

I.15.  52.222-1
       NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (FEB 1997)
       (Reference 22.103-5)

I.16.  52.222-3
       CONVICT LABOR (AUG 1996)
       (Reference 22.202)

I.17.  52.222-4
       CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION
       (JUL 1995)
       (Reference 22.305)

I.18.  52.222-26
       EQUAL OPPORTUNITY (FEB 1999)
       (Reference 22.810)

I.19.  52.222-29
       NOTIFICATION OF VISA DENIAL (FEB 1999)
       (Reference 22.810)

I.20.  52.222-35
       AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA
       (APR 1998)
       (Reference 22.1308)

I.21.  52.222-36
       AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)
       (Reference 22.1408)

I.22.  52.222-37
       EMPLOYMENT REPORTS ON DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA
       (JAN 1999)
       (Reference 22.1308)

I.23.  52.222-41
       SERVICE CONTRACT ACT OF 1965, AS AMENDED (MAY 1989)
       (Reference 22.1006)

I.24.  52.222-43
       FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT--PRICE ADJUSTMENT
       (MULTIPLE YEAR AND OPTION CONTRACTS) (MAY 1989)
       (Reference 22.1006)

SECTION I
CONTRACT CLAUSES

I.25.  52.223-3
HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)
(Reference 23.303)

I.26.  52.223-6
DRUG-FREE WORKPLACE (JAN 1997)
(Reference 23.505)

I.27.  52.224-1
PRIVACY ACT NOTIFICATION (APR 1984)
(Reference 24.104)

I.28.  52.224-2
PRIVACY ACT (APR 1984)
(Reference 24.104)

I.29.  52.227-1
AUTHORIZATION AND CONSENT (JUL 1995)
(Reference 27.201-2)

I.30.  52.227-14
RIGHTS IN DATA--GENERAL (JUN 1987)
(Reference 27.409)

I.31.  52.227-19
COMMERCIAL COMPUTER SOFTWARE--RESTRICTED RIGHTS (JUN 1987)
(Reference 27.409)

I.32.  52.227-23
RIGHTS TO PROPOSAL DATA (TECHNICAL) (JUN 1987)
(Reference 27.409)

I.33.  52.228-5
INSURANCE--WORK ON A GOVERNMENT INSTALLATION (JAN 1997)
(Reference 28.310)

I.34.  52.229-4
FEDERAL, STATE, AND LOCAL TAXES (NONCOMPETITIVE CONTRACT) (JAN 1991)
(Reference 29.401-4)

I.35.  52.229-5
TAXES--CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO (APR
1984)
(Reference 29.401-5)

I.36.  52.230-3
DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (APR 1998)
(Reference 30.201-4)

I.37.  52.230-4
CONSISTENCY IN COST ACCOUNTING PRACTICES (AUG 1992)
(Reference 30.201-4)

I.38.  52.232-1
PAYMENTS (APR 1984)

# Klein Decl. Part II

SECTION I

CONTRACT CLAUSES

(Reference 32.111)

I.39.  52.232-8
       DISCOUNTS FOR PROMPT PAYMENT (MAY 1997)
       (Reference 32.111)

I.40.  52.232-9
       LIMITATION ON WITHHOLDING OF PAYMENTS (APR 1984)
       (Reference 32.111)

I.41.  52.232-11
       EXTRAS (APR 1984)
       (Reference 32.111)

I.42.  52.232-16
       PROGRESS PAYMENTS (MAR 2000)
       (Reference 32.502-4)

I.43.  52.232-17
       INTEREST (JUNE 1996)
       (Reference 32.617)

I.44.  52.232-23
       ASSIGNMENT OF CLAIMS (JAN 1986)
       (Reference 32.806)

I.45.  52.232-25
       PROMPT PAYMENT (MAY 1997)
       (Reference 32.908)

I.46.  52.233-1
       DISPUTES (DEC 1998)
       (Reference 33.215)

I.47.  52.233-3
       PROTEST AFTER AWARD (AUG 1996)
       (Reference 33.106)

I.48.  52.236-12
       CLEANING UP (APR 1984)
       (Reference 36.512)

I.49.  52.237-2
       PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT, AND VEGETATION (APR 1984)
       (Reference 37.110)

I.50.  52.237-3
       CONTINUITY OF SERVICES (JAN 1991)
       (Reference 37.110)

I.51.  52.242-1
       NOTICE OF INTENT TO DISALLOW COSTS (APR 1984)
       (Reference 42.802)

I.52.  52.242-13

SECTION I

CONTRACT CLAUSES

BANKRUPTCY (JUL 1995)
(Reference 42.903)

I.53.    52.243-1
         CHANGES--FIXED-PRICE (AUG 1987)
         (Reference 43.205)

I.54.    52.243-7
         NOTIFICATION OF CHANGES (APR 1984)
         (Reference 43.107)

I.55.    52.244-5
         COMPETITION IN SUBCONTRACTING (DEC 1996)
         (Reference 44.204)

I.56.    52.245-2
         GOVERNMENT PROPERTY (FIXED-PRICE CONTRACTS) (DEC 1989)
         (Reference 45.106)

I.57.    52.246-20
         WARRANTY OF SERVICES (APR 1984)
         (Reference 46.710)

I.58.    52.246-25
         LIMITATION OF LIABILITY--SERVICES (FEB 1997)
         (Reference 46.805)

I.59.    52.247-63
         PREFERENCE FOR U.S.-FLAG AIR CARRIERS (JAN 1997)
         (Reference 47.405)

I.60.    52.249-2
         TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SEP 1996)
         (Reference 49.502)

I.61.    52.249-4
         TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (SERVICES) (SHORT FORM)
         (APR 1984)
         (Reference 49.502)

I.62.    52.249-8
         DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984)
         (Reference 49.504)

I.63.    52.249-14
         EXCUSABLE DELAYS (APR 1984)
         (Reference 49.505)

I.64.    52.251-1
         GOVERNMENT SUPPLY SOURCES (APR 1984)
         (Reference 51.107)

I.65.    52.253-1
         COMPUTER GENERATED FORMS (JAN 1991)
         (Reference 53-111)

SECTION I

CONTRACT CLAUSES

I.66.  52.202-1

DEFINITIONS (OCT 1995)

(a) "Head of the agency" (also called "agency head") or "Secretary" means the Secretary (or Attorney General, Administrator, Governor, Chairperson, or other chief official, as appropriate) of the agency, including any deputy or assistant chief official of the agency; and the term "authorized representative" means any person, persons, or board (other than the Contracting Officer) authorized to act for the head of the agency or Secretary.

(b) "Commercial component" means any component that is a commercial item.

(c) "Commercial item" means--

(1) Any item, other than real property, that is of a type customarily used for nongovernmental purposes and that--

(i) Has been sold, leased, or licensed to the general public; or

(ii) Has been offered for sale, lease, or license to the general public;

(2) Any item that evolved from an item described in paragraph (c)(1) of this clause through advances in technology or performance and that is not yet available in the commercial marketplace, but will be available in the commercial marketplace in time to satisfy the delivery requirements under a Government solicitation;

(3) Any item that would satisfy a criterion expressed in paragraphs (c)(1) or (c)(2) of this clause, but for--

(i) Modifications of a type customarily available in the commercial marketplace; or

(ii) Minor modifications of a type not customarily available in the commercial marketplace made to meet Federal Government requirements. "Minor" modifications means modifications that do not significantly alter the nongovernmental function or essential physical characteristics of an item or component, or change the purpose of a process. Factors to be considered in determining whether a modification is minor include the value and size of the modification and the comparative value and size of the final product. Dollar values and percentages may be used as guideposts, but are not conclusive evidence that a modification is minor;

(4) Any combination of items meeting the requirements of paragraphs (c)(1), (2), (3), or (5) of this clause that are of a type customarily combined and sold in combination to the general public;

(5) Installation services, maintenance services, repair services, training services, and other services if such services are procured for support of an item referred to in paragraphs (c)(1), (2), (3), or (4) of this clause, and if the source of such services--

(i) Offers such services to the general public and the Federal Government contemporaneously and under similar terms and conditions; and

(ii) Offers to use the same work force for providing the Federal Government with such services as the source uses for providing such services to the general public;

(6) Services of a type offered and sold competitively in substantial quantities in the commercial marketplace based on established catalog or market prices for specific tasks performed under standard commercial terms and conditions. This does not include services that are sold based on hourly rates without an established catalog or market price for a specific service performed;

(7) Any item, combination of items, or service referred to in

SECTION I

CONTRACT CLAUSES

subparagraphs (c)(1) through (c)(6), notwithstanding the fact that the item, combination of items, or service is transferred between or among separate divisions, subsidiaries, or affiliates of a Contractor; or

(8) A nondevelopmental item, if the procuring agency determines the item was developed exclusively at private expense and sold in substantial quantities, on a competitive basis, to multiple State and local Governments.

(d) Component means any item supplied to the Federal Government as part of an end item or of another component.

(e) Nondevelopmental item means--

(1) Any previously developed item of supply used exclusively for governmental purposes by a Federal agency, a State or local government, or a foreign government with which the United States has a mutual defense cooperation agreement;

(2) Any item described in paragraph (e)(1) of this definition that requires only minor modification or modifications of a type customarily available in the commercial marketplace in order to meet the requirements of the procuring department or agency; or

(3) Any item of supply being produced that does not meet the requirements of paragraph (e)(1) or (e)(2) solely because the item is not yet in use.

(f) "Contracting Officer" means a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings. The term includes certain authorized representatives of the Contracting Officer acting within the limits of their authority as delegated by the Contracting Officer.

(g) Except as otherwise provided in this contract, the term "subcontracts" includes, but is not limited to, purchase orders and changes and modifications to purchase orders under this contract.

(End of clause)

I.67. 52.203-3

GRATUITIES (APR 1984)

(a) The right of the Contractor to proceed may be terminated by written notice if, after notice and hearing, the agency head or a designee determines that the Contractor, its agent, or another representative--

(1) Offered or gave a gratuity (e.g., an entertainment or gift) to an officer, official, or employee of the Government; and

(2) Intended, by the gratuity, to obtain a contract or favorable treatment under a contract.

(b) The facts supporting this determination may be reviewed by any court having lawful jurisdiction.

(c) If this contract is terminated under paragraph (a) of this clause, the Government is entitled--

(1) To pursue the same remedies as in a breach of the contract; and

(2) In addition to any other damages provided by law, to exemplary damages of not less than 3 nor more than 10 times the cost incurred by the Contractor in giving gratuities to the person concerned, as determined by the agency head or a designee. (This subparagraph (c)(2) is applicable only if this contract uses money appropriated to the Department of Defense.)

(d) The rights and remedies of the Government provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this contract.

(End of clause)

SECTION I
CONTRACT CLAUSES

I.68.   52.219-11

SPECIAL 8(a) CONTRACT CONDITIONS (FEB 1990)

The Small Business Administration (SBA) agrees to the following:

(a) To furnish the supplies or services set forth in this contract according to the specifications and the terms and conditions hereof by subcontracting with an eligible concern pursuant to the provisions of section 8(a) of the Small Business Act, as amended (15 U.S.C. 637(a)).

(b) That in the event SBA does not award a subcontract for all or a part of the work hereunder, this contract may be terminated either in whole or in part without cost to either party.

(c) Except for novation agreements and advance payments, delegate to the U.S. Small Business Admin  the responsibility for administering the subcontract to be awarded hereunder with complete authority to take any action on behalf of the Government under the terms and conditions of the subcontract; provided, however, that the  U.S. Small Business Administration  shall give advance notice to the SBA before it issues a final notice terminating the right of a subcontractor to proceed with further performance, either in whole or in part, under the subcontract for default or for the convenience of the Government.

(d) That payments to be made under any subcontract awarded under this contract will be made directly to the subcontractor by the the user

(e) That the subcontractor awarded a subcontract hereunder shall have the right of appeal from decisions of the Contracting Officer cognizable under the "Disputes" clause of said subcontract.

(f) To notify the U.S. Small Business Administration  Contracting Officer immediately upon notification by the subcontractor that the owner or owners upon whom 8(a) eligibility was based plan to relinquish ownership or control of the concern.

(End of clause)

I.69.   52.219-12

SPECIAL 8(a) SUBCONTRACT CONDITIONS (FEB 1990)

(a) The Small Business Administration (SBA) has entered into Contract No. SBAHQ-01-C-0001  with the  U.S. Small Business Administration to furnish the supplies or services as described therein.  A copy of the contract is attached hereto and made a part hereof.

(b) The SBA   hereafter referred to as the subcontractor, agrees and acknowledges as follows:

(1) That it will, for and on behalf of the SBA, fulfill and perform all of the requirements of Contract No. SBAHQ-01-C-0001  for the consideration stated therein and that it has read and is familiar with each and every part of the contract.

(2) That the SBA has delegated responsibility, except for novation agreements and advance payments, for the administration of this subcontract to the SBA  with complete authority to take any action on behalf of the Government under the terms and conditions of this subcontract.

(3) That it will not subcontract the performance of any of the requirements of this subcontract to any lower tier subcontractor without the prior written approval of the SBA and the designated Contracting Officer of the SBA

(4) That it will notify the SBA  Contracting Officer in writing immediately upon entering an agreement (either oral or written) to transfer all or part of its stock or other ownership interest to any

SECTION I
CONTRACT CLAUSES

other party.

(c) Payments, including any progress payments under this subcontract, will be made directly to the subcontractor by the The users

(End of clause)

I.70.   52.219-17

SECTION 8(a) AWARD (DEC 1996)

(a) By execution of a contract, the Small Business Administration (SBA) agrees to the following:

(1) To furnish the supplies or services set forth in the contract according to the specifications and the terms and conditions by subcontracting with the Offeror who has been determined an eligible concern pursuant to the provisions of section 8(a) of the Small Business Act, as amended (15 U.S.C. 637(a)).

(2) Except for novation agreements and advance payments, delegates to the SBA  the responsibility for administering the contract with complete authority to take any action on behalf of the Government under the terms and conditions of the contract; provided, however that the contracting agency shall give advance notice to the SBA before it issues a final notice terminating the right of the subcontractor to proceed with further performance, either in whole or in part, under the contract.

(3) That payments to be made under the contract will be made directly to the subcontractor by the contracting activity.

(4) To notify the SBA  Contracting Officer immediately upon notification by the subcontractor that the owner or owners upon whom 8(a) eligibility was based plan to relinquish ownership or control of the concern.

(5) That the subcontractor awarded a subcontract hereunder shall have the right of appeal from decisions of the cognizant Contracting Officer under the "Disputes" clause of the subcontract.

(b) The offeror/subcontractor agrees and acknowledges that it will, for and on behalf of the SBA, fulfill and perform all of the requirements of the contract.

(c) The offeror/subcontractor agrees that it will not subcontract the performance of any of the requirements of this subcontract to any lower tier subcontractor without the prior written approval of the SBA and the cognizant Contracting Officer of the SBA

(End of clause)

I.71.   52.222-42

STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES (MAY 1989)

In compliance with the Service Contract Act of 1965, as amended, and the regulations of the Secretary of Labor (29 CFR Part 4), this clause identifies the classes of service employees expected to be employed under the contract and states the wages and fringe benefits payable to each if they were employed by the contracting agency subject to the provisions of 5 U.S.C. 5341 or 5332.

THIS STATEMENT IS FOR INFORMATION ONLY (IT IS NOT A WAGE DETERMINATION):

(End of clause)

I.72.   52.252-2

CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

SECTION I
CONTRACT CLAUSES

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text.  Upon request, the Contracting Officer will make their full text available.  Also, the full text of a clause may be accessed electronically at this/these address(es):

GSA.GOV

(End of clause)

I.73.  52.252-4

ALTERATIONS IN CONTRACT (APR 1984)

Portions of this contract are altered as follows:

N/A

(End of clause)
(End of Section)

Attachment 0001
SBAHQ-00-R-0016
Pg. 1 of 11

# STATEMENT OF WORK

## SB2G (Small Business to Government) Exchange

**Small Business Administration (SBA)**
**Statement of Work**

**Name of Project:**   SB2G (*Small Business to Government*) Exchange

**Proposed Term:**   2-Year Agreement with 3-option years

**Kick Off Date:**   Assume 60 – 90 days following agreement execution

**Suggested Vehicle:** IDIQ  - No Cost to the Government.

### Program Description:

The SBA has initiated an E-Procurement Exchange program to support the evolution of small businesses into internet based retailing and service delivery companies by establishing a vehicle through which they can gain affordable access to opportunities in the global marketplace.  Small business subscribers will be provided e-business tools and related services with an emphasis on selling their products and services to government buyers, at rates that have been pre-negotiated by SBA on behalf of portfolio businesses.

### *Objective #1.*

Reduce the cost and improve the efficiency of current government procurement processes by leveraging simplified acquisition procedures for purchases up to $100k and increasing utilization of the government purchase card.

### *Objective #2.*

Assist  small disadvantaged businesses in their efforts to transform themselves into internet retailing and service delivery companies by providing affordable access to global marketplace opportunities, tools, and services with an emphasis on selling products and services to government buyers.

### *Objective #3.*

Offer small disadvantaged businesses an opportunity to participate in an e-Procurement system that would have a relatively low cost of entry and which would require little or no technical expertise or equipment investment in order to participate.

The SBA is seeking the assistance of an 8(a) certified vendor who can meet the objectives of the program as outlined above by providing and implementing;

a. A system, using primarily COTS software, which provides the functionality and capability to meet objectives #1 and #2

b. Functionality as outlined in this Statement of Work

c. A pricing model and method(s) of participation that meet objective #3

### Functional Criteria – Summarized Description

The vendor's solution must include a comprehensive set of self-managed services in support of each type of participant – the vendors to the Government (the stores), all procurement personnel utilizing the system, and the SBA in its capacity as program administrator.   The web site address shall be ".gov" domain.   The first page of the home page shall contain the following statement. "This site contains hypertext links to information and web sites created and maintained by other public and private organizations and companies.  This information and these links are not owned or sponsored by the U.S. Small Business Administration (SBA), and are provided for the user's convenience.  The Federal Government or SBA is not responsible or liable for the content, accuracy, relevance, timeliness or completeness or any web sites or information that may be accessed from this site.  Furthermore, the inclusion of such links does not constitute or imply an endorsement by the Federal Government or SBA of any organization or company, or its opinions, products or services.  Please use caution and your best judgment when considering a product or service offered by a linked web site".

The use of a "bye-bye" page is required whenever a user leaves the ".gov" site and links with an outside web site.  The "bye-bye" page shall also contain the disclaimer outlined in paragraph #4, above, and make it clear that the user is leaving the SBA site and is entering a new site.

The web site shall display a Privacy Act statement crafted by SBA, and adhere to other Federally mandated rules and disclosure requirements concerning Internet activity (with the advice and guidance of the SBA Office of the Chief Information Officer).



The display on the web site of any logos or trademarks of any  public or private entity, with the exception of SBA's logo or the logo of another Federal Government agency or department is prohibited.   Advertising on the site is unallowable.

At a high level, by participant type, the functional requirements would include the following. These are outlined in greater detail in following sections of the Statement of Work:

*Stores*
1. Turnkey storefront
2. Electronic catalog management
3. Order management
4. Financial management
5. Merchant account services
6. Integration with vendor's existing corporate website and legacy systems
7. Membership in a E-Procurement Network of other vertical purchasing portals

*Procurement Personnel*
1. Consistent navigational experience within each store
2. Visibility to all stores participating in the e-Procurement program
2. Product search facilities by keyword
3. Access to catalog item descriptions, pricing, and graphics as provided by the vendor.
4. Single shopping cart and checkout process for multi-store procurements
5. Multiple procurement methods - payment cards or purchase orders
6. Access to Past Performance Records for each participating store
7. Electronic RFQ Dissemination
7. Automated bid/quote tabulation and comparison
8. Cooperative purchasing
9. Order Status Tracking and Management
10. Procurement Statistic, Credit Card utilization, and reporting

**Technical Support Criteria**
1. A fully hosted solution eliminating the need for stores to invest in hardware
2. Internet browser accessibility to all functionality eliminating the need for stores to invest or install software.
3. Network connectivity to credit card processor.
4. High speed Internet access to the hosted offering at T1 grade speed or better.
4. Store creation in less than five (5) business days from the date the vendor receives the Store Operator's license agreement.
5. Disk space for at least 100 catalog items per store for a standard store.
6. "Forgot password" support

**Functional Criteria - Detailed Descriptions**

*Stores*

1. Turnkey storefront presence
   a. Profile management
   b. Store-specific content management services
   c. Product Catalog Layout management
   d. Facility to categorize, publish, and un-publish catalog items
   e. Graphics upload services
   f. Inclusion in online directories of stores participating in this program

2. Electronic catalog management
   a. Product Catalog Layout management
   b. Item creation and maintenance
   c. Facility to categorize, publish, and un-publish catalog items
   d. Ability to easily requisition additional catalog item disk space

3. Order management
   a. View new and past orders
   b. Manage order status and product shipment notification
   c. Order data archiving subscription
   d. Order data warehousing

4. Financial management
   a. Provide order and account summary reporting
   b. Automated distribution of net receivables

5. Merchant account services
   a. No Operating History requirement for applicant
   b. Electronic application process
   c. Fraud detection / protection services
   d. Competitive discount rate

6. Integration with store operator's existing corporate systems
   a. Ability to integrate with existing internet web presence look and feel
   b. Ability to integrate with existing back office accounting and/or inventory management systems
   c. Ability to extend the product functionality for individual stores upon request


*Procurement Personnel*

1. Consistent navigational experience within each store
   a. Common navigation to product and product detail

2. Visibility to all stores participating in the program
   a. Access to catalog item descriptions, pricing, etc. as provided by store operator

    b. Provide directories of participating stores by Business Location, Product Type, Alphabetical Order, Business Type.
    c. Provide mechanism for accessing only companies with the following designations: 8a, Minority Owned, Woman, Native American, Veteran, Disabled, Hub Zone
    d. Provide mechanism for accessing only companies with specific contract vehicles in place.

3. Product search facilities
    a. Keyword search on product description
    b. Search based on product UPC code

4. Single shopping cart and checkout process for multi-store procurements
    a. Consistent navigational interface across all stores
    b. Ability to retain contents of cart for at least 48 hours without "checking out" or without having to complete the procurement process.
    c. Ability to pay one time for purchases made at multiple stores
    d. Automatic generation of P.O.'s for each store from which an order is placed
    e. Automated process for purchasing authority requisition approval.
    f. Immediate routing and availability of the order to the store.

5. Multiple procurement methods
    a. Visa, MasterCard, American Express
    b. Issuance of a New Purchase order
    c. Existing contract vehicles

6. Access to Past Performance Reporting by Store Operator
    a. Provide online access to past performance questionnaires completed at the request of store operator using the standard SBA form.
    b. Provide SBA with visibility to orders placed within the program.

7. Automated bid/quote tabulation and comparison
    a. Provide facility to submit procurements for bid.
    b. Criteria of vendors who should receive the bid and/or Selection of specific vendor(s) to receive the bid
    c. Automated method to provide a consolidated view of quotes for easy comparison

8. Cooperative purchasing
    a. Support agencies teaming together on the purchase of goods and/or services of use by both organizations to obtain greater volume discounts.
    b. Support the delivery of goods and services to multiple locations

9. Order Status Tracking and Management
    a. Visibility to order status through each step of the approval process

    b.  Ability to cancel any line item on any order prior to shipment by store.

10. Customer Support Services
    a.  Ability to call a single number for questions relating to issues in any store.

11. Profile Management for Registered Agencies
        a.  Registered Agency Profile Management
        b.  Persons authorized to manage Registered Agency Profile
        c.  Persons authorized to create requisitions
        d.  Persons authorized to approve requisitions
        e.  Persons responsible for Credit Card coordination
        f.  Name of Agency SADBU Officers
        g.  Persons Authorized to access order summaries online
        h.  Aggregated order summaries for the registered agency by:
            i.  Credit Card Purchases
          ii.  8(a) Purchases
        iii.  HUB Zone Purchases
       iv.  Minority Owned Business Purchases
        v.  Woman Owned Business Purchases
       vi.  Veteran of the Armed Forces Purchase
      vii.  Native American Owned Business Purchase
     viii.  GSA Schedule Purchases

### *SBA as Program Administrator*

1. Content Management
   a. SBA-specific content management
      - Facilities to promote the program from the site
      - Program participation guidelines
      - Graphic upload facilities
      - Approval of all Mall visual displays and editorial content
   b. Mall directory services
      - Automated inclusion of approved stores within standard directories

2. Order management
   a. View new and past orders:
      - by status of order
      - by store name (alphabetical order)
      - by customer name (alphabetical order using agency name)
      - in aggregate by date of order

3. Demographic and Procurement activity reports online
   - By registered agency
   - By region where order was placed
   - By store name (alphabetical order)
   - By Credit Card Coordinator (display only credit card orders here)
   - By Customer Name (alphabetical order using agency name)
   - By Company Type (8a, HUB Zone, Woman Owned, Minority, SDB)
   - By date of order

**Technical Support Criteria**

The vendor must be willing to provide:

1. A fully hosted solution that would include the following:
   a. An appropriate level of internet firewall security
   b. 24 x 7 availability with reasonable exceptions for maintenance and unscheduled downtime not within the control of the vendor
   c. Weekly backups with off site storage
   d. Plan for Disaster Recovery
   e. General internet activity statistics

2. Merchant account services
   a. Guaranteed merchant approval rate of 95% or better
   b. Ability to process up to 10,000 new merchant applications per month
   c. Merchant account activation within 48 hours of application approval
   d. No Operating History requirement for corporate applicants
   e. Customer service support for issues relating to use of credit cards
   f. Competitive discount rate

3. All user functionality must be completely internet-accessible whereby the user equipment requirement, regardless of role, is no more than a reasonably current release of either a Microsoft Internet explorer or the Netscape browser.

4. Store creation in less than five (5) business days from the date the vendor is approved to participate in the program.

5. Disk space for at least 100 catalog items per store.

6. Provide "Forgot password" customer support services to Store Operators and procurement personnel.

FEE SCHEDULES FOR SMALL BUSINESSES  (All fees are non-refundable)

1.      **Term:** Each store will be asked to sign-up for a 12-month term agreement and their total cost will be divided into 12 monthly installments.

2.      **Setup Fee:** Each store would pay a account setup fee of **$495.00**.

3.      **Advanced Rent:** Store is required to pay the last 2 months rent in advance along with the setup fee.

4.      **Monthly Rent:** A non-refundable monthly licensing fee of **$200.00** will be due and payable on or before the first business day of every month for the entrance leading into their store from the SBA E-Procurement site.

5.      **Service Fees:** Each store shall pay a non-refundable fee for each order received in its online store equal to **2%** of the order value.  This fee shall be due and payable immediately upon shipment of the goods or delivery of services ordered.

6.      **Product Catalog:** Each store shall pay a fee of **$29.95** monthly in consideration for the following Product Catalog features, which can be expanded at any time for an additional fee;

   6.1     Up to 100 megabytes of disk storage space in which 250 products can be stored.

   6.2     Up to 10,000 sales opportunities each month.  A sales opportunity exists each time a person arrives at your store home page and every time a person reviews a product or service that is being offered for sale in Operator's Store.

7.      Insufficient Funds: Each store is required to maintain a balance in their Business Banking Account of record which is sufficient to cover any amounts that become due and payable under this agreement as well as any fees which become due and payable under the agreements executed for payment processing, merchant account, and other services relating to the operation of Store.   An "NSF Event" shall be deemed to have occurred any time an attempt is made to electronically collect funds which have become due and payable that fails due to an insufficient balance in either Operators Business Banking Account or in the bank account established with an institution participating with the Contractor.

   7.1     Fee: Operator agrees to pay a fee of twenty-seven dollars ($27.00) for each and every NSF Event.  Contractor reserves the right to attempt automated collection of any amounts due as frequently as once daily until such time as the entire balance then owing has been collected, including any insufficient fund charges.

7.2   <u>Rate Increase</u>: Should Operator experience more than one (1) NSF Event, Contractor reserves the right to increase the Service Fee defined in section 6 by .5% for each NSF Event beyond the first occurrence.

8.    <u>Setoff</u>: Contractor will have the right, in addition to all other remedies permitted by law (including, without limitation, other rights of set-off), to set off any amounts due under this Agreement against any and all accounts, credits, money, securities, or other property now or hereafter on deposit with, held by, or in the possession of the Contractor whether or not being held for further credit to the account of Operator, without notice to or consent by Operator.

**Anchor Premium:** Entities appearing on the site's prime real estate will pay a premium of **$2,300.00** per month, in addition to monthly rent, in consideration of the prime location and link that are being provided.

**Sponsor Links:** Entities desiring to serve as "sponsors" of the e-Mall site will pay **$2,500** per month in consideration for the visibility provided the entity, as well as a link to the entity's own non-sales Internet site.

# Klein Decl. Part III

# EXHIBIT 102

2915584.1

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. Contract ID Code | | Page 1 | of Pages 2 |
|---|---|---|---|---|---|

| 2. Amendment/Modification No. | 3. Effective Date | 4. Requisition/Purchase Req. No. | 5. Project No. (if applicable) |
|---|---|---|---|
| 00001 | | | |

| 6. Issued By | Code S330 | 7. Administered By (If other than Item 6) | Code |
|---|---|---|---|
| Small Business Administration<br>Office of Procurement and Grants Mgmt.<br>409 3rd St SW Suite 5000<br>Washington, DC 20416<br>William Dorwart 202-205-7088 | | SEE BLOCK 6 | |

| 8. Name and Address of Contractor (No., Street, County, and Zip Code) | | (X) | 9A. Amendment of Solicitation No. |
|---|---|---|---|
| Nexgen Solutions, Inc.<br>8403 Colesville Road<br>#915<br>Silver Spring MD 20910 | Vendor ID: 00005309<br><br>CAGE: | | 9B. Date (See Item 11) |
| | | X | 10A. Modification of Contract/Order No.<br>SBAHQ-01-C-0001 |
| | | | 10B. Date (See Item 13)<br>Oct 4, 2000 |

| Code | Facility Code |
|---|---|
| | |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. Accounting and Appropriation Data (if required) |
|---|
| 6100.00.61000.2523 $ US          0.00 |

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACT/ORDERS.**
**IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (X) | | |
|---|---|---|
| X | A. This change order is issued pursuant to: (Specify authority) The changes set forth in Item 14 are made in the Contract Order No. in Item 10A. | |
| | 52.243-1 Changes Fixed Price | |
| | B. The above numbered Contract/Order is modified to reflect the administrative changes (such as changes in paying office, appropriation date, etc.) Set fourth Item 14, pursuant to the authority of FAR 43.103 (b) | |
| | C. This supplemental agreement is entered into pursuant to authority of: | |
| | D. Other (Specify type of modification and authority) | |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. Description of Amendment/Modification (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to make the attached changes to the requirements of the contract and to restructure the period of performance.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. Name and Title of Signer (Type or Print) | 16A. Name and title of Contracting Officer (Type or Print) |
|---|---|
| Edward L. Howlette Jr.          301-654-5555<br>President & CEO<br>Ehowlette@ngsinc.com | William Dorwart          202-205-7088<br>Contract Officer<br>william.dorwart@sba.gov |
| 15B. Contractor/Offeror<br>(Signature of person authorized to sign) | 15C. Date Signed<br>September 30, 2002 | 16B. United States of America<br>(Signature of Contracting Officer) | 16C. Date Signed<br>9/30/02 |

| NSN 7540-01-152-8070 | 30-105 | STANDARD FORM 30 (REV. 10-83) |
|---|---|---|
| PREVIOUS EDITIONS UNUSABLE | | Prescribed by GSA FAR (48 CFR) 53.243 |

Modification 0001
SBAHQ-01-C-0001
Page 1 of 15

**1. Section B Option items 0003 and 0004 and 0005 are deleted in their entirety and replaced with the following:**

| Supplies Or Services | QTY | Unit Price | Amt |
|---|---|---|---|
| Item 0003 Operation of Electronic Procurement Site<br>36 month period of performance<br>(October 01, 2002 - September 30, 2005) | 1 Lt | NO COST | |
| 0003A  Annual License<br>(includes: up to 100 catalog line items<br>         up to 50MB Disk Space<br>         up to 10 GB Monthly data transfers<br>         up to 6 incidents per supplier (support*) | 1 yr | $1,500.00 | $1,500.00 |
| 0003B  Maintenance | 1 tran | 2% | |
| Optional Items: Supplier Site | | | |
| 0004  Anchor Tenancy Premium | 1 mth | $2,500.00 | $2,500.00 |
| 0005  My Favorite Directory listing set up | 1 lt | 195.00 | 195.00 |
| 0006  My Favorite Directory maintenance | 1 mth | 4.95 | 4.95 |
| 0007  Exchange Home page banner link | 1 mth | 150.00 | 150.00 |
| 0008  Buyer Site Home page banner link | 1 mth | 125.00 | 125.00 |
| 0009  Supplier Site Home page banner link | 1 mth | 100.00 | 100.00 |
| 0010  Additional Catalog Items (100) | 1 mth | 25.00 | 25.00 |
| 0011  Additional Catalog Items (500) | 1 mth | 75.00 | 75.00 |
| 0012  Additional Catalog Items (1000) | 1 mth | 100.00 | 100.00 |
| 0013  Incidents after 6 (for suppliers) | 1 in | 50.00 | 50.00 |
| 0014  Incident 05 pack (for suppliers) | 1 pck | 100.00 | 100.00 |
| 0015  Incident 10 pack ( for suppliers) | 1 pck | 150.00 | 150.00 |
| 0016  Incident 25 pack (for suppliers) | 1 pck | 250.00 | 250.00 |

Note: Support incident is any telephone call or instant message session initiated by the supplier organization to the Nexgen Supplier site help desk support team.

**Item 0003A will have a __30__% discount for the first _2500___ of firms to register.

--2--

**2. Attachment 0001, Section J, Statement of Work, is deleted in its entirety and Replaced with the following corrected Statement of Work and shall be inserted as contract page 2A, Section C Statement of Work:**

SBAExchange Program

**Statement of Work**

### Introduction

The Small Business Administration (SBA) has selected an 8(a) firm (contractor) to assist with the development and maintenance of content and operation an e-Procurement site. This e-Procurement site is being implemented to assist small businesses in becoming Internet based retail and service delivery companies. The e-Procurement site will be part of a program known as the *SBAExchange Program (Exchange)*.

The *Exchange* is a streamlined electronic purchasing tool that will give small businesses access to government sales through simplified acquisitions up to the simplified acquisition threshold and sole source contracts under Section 8(a) of the Small Business Act. The *Exchange* will allow agencies to award these purchases and make payments electronically. Additionally, the *Exchange* will facilitate electronic purchases made with the Government wide commercial purchase card and allow Government agencies to take credit towards their small business goals.

By establishing the *Exchange*, the SBA plans to provide a vehicle through which small businesses can gain affordable access to opportunities in the global marketplace. Through the *Exchange*, small business subscribers will be provided e-business tools and related services with an emphasis on selling their products and services to government buyers.

Users of the Exchange will adhere to the rules, regulations, procedures, dollar thresholds and purchase card limitations set by their agencies. All transactions conducted through the *Exchange* will capture Level 3 data (e.g. socio-economic data). This will allow agencies to take credit towards small business goals for all purchases made through the *Exchange*, including micro-purchases. After careful analysis of the current processes and best industry practices, the SBA has identified the following mandatory requirements for the *Exchange*.

### Scope

*Website*

The first page of the *Exchange* website will be **SBAExchange.gov**, where federal government buyers will register prior to engaging in transactions. Small businesses will register on **SBAExchange.com.**

The design and layout of the various registration and information links to the site will be the result of a joint effort between SBA and the contractor. SBA must approve any hyperlinks

--3--

from **SBAExchange.com** to any public or private sites. SBA will exercise reasonableness in granting or denying approval for such hyperlinks.

NEXGEN will establish, manage and host the SBAExchange within the **SBAExchange.com** domain. This is the site where all transactions will be conducted.

SBA reserves the right to approve the layout and wording of each page on the SBAExchange site.

On the "Supporting Organizations" page, Nexgen must add a statement stating that NEXGEN has entered into separate agreements with the entities on that page and that the SBA does not endorse the products or services of the entities listed therein.

Nexgen must add a disclaimer to the **SBAExchange.com** site as follows:

> The United States Small Business Administration (SBA) has entered into a contract with NEXGEN Solutions, Inc. to bring you a national E-Procurement initiative to automate procurements by creating an Internet-based exchange for the procurement of goods and services from the members of the small business community.

> Under this initiative, small businesses can participate in conducting e-business transactions with a relatively low cost of entry and little or no technical expertise.

> NEXGEN Solutions (NEXGEN) is a commercially owned entity which operates SBAExchange under a contract with SBA. SBA's participation on the Exchange does not constitute or imply an endorsement of any of NEXGEN's additional products, services or operations or those of any other participant or vendor on SBAExchange.

A "bye-bye" must appear indicating to users that they are leaving **SBAExchange.gov** to go to **SBAExchange.com**. A disclaimer must also be included within the "bye-bye" page to read as follows:

> This site contains hypertext links to information and web sites created and maintained by other public and private organizations and companies. This information and these links are not owned or sponsored by the U.S. Small Business Administration (SBA), and are provided for the user's convenience. The Federal Government or SBA is not responsible or liable for the content, accuracy, relevance, timeliness or completeness of any web sites or information that may be accessed from this site. Furthermore, the inclusion of such links does not

--4--

constitute or imply an endorsement by the Federal Government or SBA of any organization or company, or its opinions, products or services. Please use caution and your best judgment when considering a product or service offered by a linked web site.

The use of a "bye-bye" page (including an appropriately modified disclaimer indicating that the user is leaving the Exchange) is required whenever a user leaves the **SBAExchange.com** site, including whenever there is a hyperlink to an entity that takes a user outside the Exchange.

SBA will provide a Privacy Act statement to the contractor that the contractor must display along with its own privacy statement.

Nexgen may post press releases on the **SBAExchange.com** site upon prior, written approval of the SBA's contracting officer's technical representative (COTR).

There is to be no advertising on the Exchange. This does not prohibit recognition of Supporting Organizations, as currently proposed, and banner links by Tenants to their SBAExchange storefronts.

The use or display on the Exchange of any logos or trademarks of any public or private entity, with the exception of SBA's logo, the logo of another Federal Government agency or department, Nexgen's "powered by logo, and the logos of the "Supporting Organizations" or "Tenants," is prohibited.

Nexgen may remove a buyer from the exchange if the buyer site is inactive for a period of time established mutually between Nexgen and SBA and incorporated in the buyer agreement.

### Government Agencies and Procurement Officials

*Exchange* must give Government buyers access to a unified electronic catalog containing pre-priced commodities, and relevant information on product characteristics and delivery terms. *Exchange* must also give the Government buyer the ability to:

- order on line;
- request and obtain quotes;
- format solicitations for posting to FedBizOpps;
- have a consistent navigational experience within each store;
- be visible to all other sellers on the Exchange;
- perform product searches;

--5--

- perform searches by identifying business type, geographic location, alphabetical order, and GSA schedule participation;

- have access to a single shopping cart and check-out process for multi-store procurements;

- have access to past performance data provided by SBAExchange buyers on purchases made through the *Exchange;*

- have access to automated bid/quote tabulation and comparison;

- have order status tracking and management;

- have customer support services;

- have profile management for registered Government agencies;

*Exchange* must also:

- provide a secure Internet environment for Federal buyers to conduct e-purchase credit card transactions;

- provide catalog content with a unified view to enable users to quickly search and compare commodities and services without having to visit multiple service provider web sites; and

- provide a user-friendly interface for procuring activities that can conform to applicable regulations and statutes and policies or that can be customized to do so.

### *Small Businesses*

The electronic stores set up through the *Exchange* must, at a minimum, contain the following:

- a turnkey storefront,

- electronic catalog management,

- order management,

- financial management,

    access to merchant account card processing services,

--6--

- integration with the vendor's existing corporate website and legacy systems (where applicable); and

- the ability to sell goods and services to outside customers.

### *Technical Criteria and Support*

The contractor must provide the following:

- a fully hosted solution that includes an appropriate level of Internet firewall security, 24 hours and 7 days a week availability with minimal exceptions for maintenance and unscheduled downtime;

- incremental daily backups with off-site storage when registration begins;

- a plan for disaster recovery;

- general Internet activity statistics;

- access to merchant account services;

- Internet browser accessibility via Microsoft Internet Explorer 6.0 or Netscape 6.0, without the need for small businesses to install additional software;

- network connectivity to credit card processor;

- high speed Internet access availability at T1 grade speed or better;

- store creation in less than five (5) business days from the date the vendor accepts the Store Operator's license agreement and pays license fee.

- disk space for at least 100 catalog items per store for a standard store;

- "forgot password" support and other user assistance during normal business hours in the Eastern time zone;

- a turnkey storefront presence;

- electronic catalog management;

- order management;

- financial management; and

- an ability to integrate with suppliers' corporate web sites.

- Train the trainers (SBA employees included)

--7--

- Provide user manual and incident based support to small businesses (sellers) and technical training to Federal government agencies (buyers) on the use of the exchange.

### *SBA as Program Administrator*

**SBA will:**

Provide Program outreach by:

- Jointly developing with NEXGEN, a marketing plan, to be completed 30 days after the execution of this modification.

- Provide marketing, outreach and demonstrations of the SBAExchange's system capabilities. SBA as Program Administrator will be responsible for establishing objectives to recruit small businesses from each state to register and participate in the launch of SBAExchange. At a minimum, this will include sending letters to top procurement officials at each agency and OSDBU Directors informing them of the SBAExchange Program and inviting them to participate.

- Encourage agencies committed to use the SBAExchange, to award their small purchases through the system to the maximum extent practicable.

- Notify major trade publications and newspapers in each state through SBA's Office of Communication announcing the launch of SBAExchange and its objectives for the Federal Government and small business community.

- Send a separate notice via U.S. Mail to all small businesses in ProNet (including 8(a) and HUBZone firms) announcing SBAExchange and the role that SBA envisions for SBAExchange in future Federal procurements

- Notify all U.S. Chambers of Commerce about the SBAExchange initiative and its benefits to Federal agencies and small businesses.

- Include information on SBAExchange via existing SBA News/Media publications. promoting the Exchange from SBA's Web site, **www.SBA.gov** .

- developing Exchange program participation rules or guidelines;

- reporting any problems promptly to Nexgen;

- posting any mandatory content in a timely manner; and

- establishing agreements with participating Government agencies that incorporate the necessary clauses for buying organizations to utilize the Exchange.

--8--

- Allow Registration site (sellers) to become available by October 14, 2002, based on NEXGEN providing incremental daily backups with off-site storage when registration begins.

*Milestone Chart (Estimated Timeframes Only)*

| | |
|---|---|
| Supplier Site Testing and Validation of *Exchange* by NEXGEN's contractor | July 12, 2002 |
| Amendment to NEXGEN contract | September 30, 2002 |
| Buyer Site Testing and Validation of *Exchange* by NEXGEN's contractor | October 4, 2002 |
| Small Business and Federal Agency Marketing Campaign; Launch *Exchange* Pilot Program (Ceremony) | October 7, 2002 |
| Registration Site Becomes Available | October 14, 2002 |
| Open Season for Registration | October – December 2002 |
| SBA Conducts Pre-Production Acceptance Testing | December 9, 2002 – December 31, 2002 |
| Suppliers Begin Populating Their Content | January 15, 2003 |
| Customer Agency/Supplier Training Begins | February 15, 2003 |
| Customer Agencies Begin Purchasing On-Line | March 15, 2003 |
| Three Year Period Ends | September 30, 2005 |

*Metrics for Evaluation:*

The contractor will be evaluated on the following:

- Ability to provide a fully hosted solution that includes an appropriate level of Internet firewall security, 24 hours and 7 days a week, to all participants in the Exchange;

--9--

- Minimal downtime experienced by participants, including availability 99% of the time during normal business hours in the Eastern time zone excluding scheduled maintenance (NEXGEN will notify within 48 hrs of maintenance)

- Providing daily incremental backups of transaction data with off site storage, once registration begins;

- Planning for disaster recovery;

- Providing general Internet activity statistics within 72 hours of each request;

4. **Section E, Inspection and Acceptance,** page 4, add the following :

E.3.  **FAR 52.246-4 Inspection of Services-Fixed-Price.**

Inspection of Services-Fixed-Price (Aug 1996)

(a) Definition. "Services," as used in this clause, includes services performed, workmanship, and material furnished or utilized in the performance of services.

(b) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the services under this contract. Complete records of all inspection work performed by the Contractor shall be maintained and made available to the Government during contract performance and for as long afterwards as the contract requires.

(c) The Government has the right to inspect and test all services called for by the contract, to the extent practicable at all times and places during the term of the contract. The Government shall perform inspections and tests in a manner that will not unduly delay the work.

(d) If the Government performs inspections or tests on the premises of the Contractor or a subcontractor, the Contractor shall furnish, and shall require subcontractors to furnish, at no increase in contract price, all reasonable facilities and assistance for the safe and convenient performance of these duties.

(e) If any of the services do not conform with contract requirements, the Government may require the Contractor to perform the services again in conformity with contract requirements, at no increase in contract amount. When the defects in services cannot be corrected by reperformance, the Government may-

--10--

(1) Require the Contractor to take necessary action to ensure that future performance conforms to contract requirements; and

(2) Reduce the contract price to reflect the reduced value of the services performed.

(f) If the Contractor fails to promptly perform the services again or to take the necessary action to ensure future performance in conformity with contract requirements, the Government may-

(1) By contract or otherwise, perform the services and charge to the Contractor any cost incurred by the Government that is directly related to the performance of such service; or

(2) Terminate the contract for default.

Inspection criteria include:

a.  **Completeness** - Determine whether the system fully meets the intended objectives.

b.  **Problem Identification** - Identify problems as early as possible to correct them before they are compounded in subsequent project phases.

c.  **Compliance with Standards** - Verify that the service complies with established or required standards, or that waivers are sought where it does not meet the standards.

d.  **Risk Identification** - Identify potential risk areas in the project so that they can be managed and mitigated as the project progresses.

e.  **Traceability** - Ensure that the system is traceable, which will help verify that the item satisfies its requirements.

An agency review requires one of the following decisions by reviewers:

1.  Accept the system without further modification,
2.  Reject the system due to severe errors (once corrected, another review must be performed), or
3.  Accept the system provisionally (minor errors have been encountered and must be corrected, but no additional review will be required).

Upon completion of a review, SBA records and reports review metrics with the project manager or designated representative. The report consists of the item reviewed, the number of errors detected, when the review was conducted, the number of closed error reports, and the number of open error reports.

**E.4.  Final Testing Clause**

--11--

SBA may conduct full testing on the SBAExchange services before the system is launched into a full production environment. SBA's testing criteria can be found at http://www.sba.gov/aboutsba/testcriteria.xls.

## E.5. Data Integrity and Security

Because this system is designed for use via the Internet, it must meet Federal standards for web-based systems, such as Section 508 compliance (assistive technologies) and prohibitions on the use of persistent "cookies." The site will also require facility evaluation (as discussed in item E.3) for appropriate firewall and anti-intrusion technology to prevent hacking and ensure operations during specified hours.

a.    Since the Exchange will be accessing or transferring data from/to SBA and other federal systems, such as PRO-Net and CCR, the contractor must ensure the security and integrity of the data while in the Exchange database warehouse.

b.    The system will be subject to standard annual Certification and Accreditation reviews, to ensure that it meets security and similar requirements.

c.    The contractor is responsible for risk assessment and the delivery of a computer security plan to determine that all reasonable vulnerabilities, threats, risks, and privacy issues are identified and that an accurate determination is made of the sensitivity of the program and information. The contractor's facilities, operating procedures and practices are subject to the same standards and guidelines as any other government contractor providing IT services.

d.    Spamming: The contractor must describe measures used to protect against spamming of registered companies. The contractor must post anti-spamming notices and take quick action to identify and stop any spamming that results from information obtained through SBAExchange.

e.    Data Protection and Quality: The contractor must adhere to SBA's Data Quality Guidelines, to the extent they do not otherwise conflict with this contract. These can be found at http://www.sba.gov/aboutsba/infoqualityguidelines.pdf. This includes the responsibility to report to SBA all public questions and complaints about the quality of data maintained, created or disseminated by the contractor.

## E.6 Compliance with Standards and Waiver

. SBA will provide NEXGEN with any Standards or Guidelines that the system is required to comply with. NEXGEN agrees to meet all such standards that do not require a change to its systems and/or operations, based on available resources. For standards that do require a change to its systems or operations, SBA will provide NEXGEN with a reasonable amount of time to

--12--

review the new and existing standards and guidelines and determine the extent to which the system and operations are, or are not, in compliance and will report the results to SBA. To the extent that the systems are not in compliance and the compliance will require a <u>change</u> to the system or operation, the parties will agree on an appropriate approach and reasonable timeframe for conforming and moving forward. NEXGEN may request a waiver in writing for any standard that it will not be able to meet by the time the system is placed into production

5. **Section F, Deliveries and Performance** , page 5, F.1 Term, first paragraph is deleted in its entirety and replaced with the following:

The term of this contract is for one base period of 24 months (Item 0001 and 0002), plus one 36 month option period (Item no. 0003). The total term of this contract is 5 years.

6. **Section F, Deliveries and Performance,** page 5, F.3 Milestone Dates, paragraph 3 sentence beginning "The following  schedule", delete FEDSIM and replace with SBA.

7. **Section F, Deliveries and Performance,** page 6, F.7 Place (s) of Delivery, under fourth paragraph add:

In support of the COR (also known as the contracting officer's technical representative, or COTR), the following individual (the "Program manager") shall receive all correspondence and reports related to the deliverables.

> Attn:  Carol Thompson
> Program Manager
> U.S. Small Business Administration
> 409 Third St., S.W.  Suite 7000
> Washington, DC 20416
> 202 205-6118

8. **Section G, Contract Administration Data,** page - 11, paragraph G.2. SBA.18  Invoicing Requirement, add the following first sentence: "Because this is a no-cost contract, the parties do not foresee any need for invoices. If there are any invoices, they must be handled as follows":

9. **Section H, Special Contract Requirements,** H.6. SBA.14, Treasury Financial Communications Systems (TFCS)  Add the following at beginning of first paragraph: "Because this is a no-cost contract, the parties do not for see any need for invoices. If there are any invoices they must be handled as follows":

10. **Section  H, Special Contract Requirements,  page 16, Add the following new clauses:**

--13--

### H.14 Freedom of Information Act

Generally, the Freedom of Information Act (FOIA)(5 U.S.C. § 552) and the Trade Secrets Act (18 U.S.C. § 1905) prohibit a federal government agency from disclosing to third parties, *inter alia*, any request for proprietary data or information (including trade secrets and commercial or financial information) that would cause competitive harm or constitute a clearly unwarranted invasion of personal privacy. The contractor also agrees not to disclose to third parties any data and/or information obtained pursuant to this contract that SBA could not disclose under FOIA and/or the Trade Secrets Act.

### H.15 Collection of Delinquent Fees

The SBA will not participate in or be responsible for the collection of fees (delinquent or otherwise) from small businesses. SBA will inform Suppliers that payment, in a timely manner, is necessary to participate in SBAExchange.

### H.16 Conflict of Interest

Nexgen will operate the Exchange free of conflicts of interest, whether actual or in appearance. Nexgen is barred from having a storefront on the Exchange and from being an anchor tenant during the life of this contract. Nexgen shall notify the SBA of any potential conflict of interest or the appearance of any conflict, immediately upon becoming aware of the conflict or potential conflict. **This does not restrict federal agencies from receiving small business credit when making credit card purchases from Nexgen, as long as Nexgen is small under the applicable NAICS codes.**

### H.17 Accessibility Standards

SBAExchange must conform to the accessibility standards of 36 C.F.R. part 1194.

### H.18 Rights in Data

OWNERSHIP AND LICENSE TO DATA ON EXCHANGE

Nexgen shall remain the exclusive owners of all right, title and interest in the database, the data licensed hereunder, and all copyrights (and renewals thereof) heretofore or hereafter obtained in the data or database. All publication, dissemination and other rights in the database and the data licensed hereunder are reserved to Nexgen in all languages, formats and throughout the world for the sole and exclusive use or any other disposition by Nexgen.

A. Nexgen grants to SBA a lifetime royalty-free non-exclusive license to all data residing on the Exchange and the nontransferable, irrevocable right to use the data supplied to SBA under this contract and all other information obtained by SBA under Exchange for its own

--14--

governmental purposes (including, but not limited to, posting small portions of the data on SBA's Web site and using the data to operate a system similar to Exchange if SBA and Nexgen should no longer have a contract to operate Exchange); provided, however, that those with the access to data and shall in all respects treat such data as the proprietary information of Nexgen in accordance with all procedures reasonably necessary to protect Nexgen's proprietary rights in the data.

B. SBA shall include the terms, conditions and procedures relative to protecting proprietary information in agreements with other federal agencies who will use Exchange.

C. Nexgen grants to authorized Exchange users and their employees and contractors a limited, nonexclusive, nontransferable license during the term of their agreements with SBA to use data copyrighted (or copyrightable) by Nexgen, and information accessed by them through Exchange, in performance of their governmental operations. Except for such operations, any storage, reproduction, transmission, or transfer of any portion of the information, the data, or the data base is strictly prohibited.

D. As soon as the first 6000 sellers or sponsors (or combination of the two) have registered on the Exchange, Nexgen will provide SBA a royalty-free, non-exclusive perpetual end-users license to the Exchange software. SBA acknowledges that this software is restricted rights computer software, subject to FAR clause 52.227-19. In the event the number of sellers/sponsor does not reach 6000, the software end-users perpetual license will be made available to the SBA at a negotiated price below $300,000.

E. Nexgen agrees to place a copy of the source code into safekeeping with a neutral third party to be agreed upon by SBA and Nexgen. In the event Nexgen goes out of business, or files for chapter 7 bankruptcy, SBA will receive a royalty-free, non-exclusive perpetual end-users license to the software and source code, even if the term of this contract has expired. SBA will also receive the source code from the third party and a copy of the software (at no expense to the government) at a date selected by SBA following the bankruptcy filing or the announcement that Nexgen will cease business operations. If Nexgen's contract is terminated for default, SBA will receive a copy of the software and a royalty-free, non-exclusive perpetual end-users license to that software.

F. If any of the conditions in E. above occur, SBA will also receive documentation and other support material (including, but not limited to, training and maintenance manuals) to reflect the most current configuration of the SBAExchange system.

G. SBA acknowledges that all computer software used by Nexgen in the operation of SBAExchange is proprietary software, and as such, is treated under the FAR as "restricted rights computer software". Except for the restricted rights granted to SBA under FAR 52.227-19 and H.18.D. or.E. above, Nexgen retains exclusive ownership of and all rights in such software.

11.  a. For the purposes of this paragraph, Nexgen includes the company, its officers, directors, shareholders, agents, successors and assigns.
   b. For the purposes of this paragraph, SBA is the United States Small Business  Administration and its officers, agents, and employees.
   c. In consideration of this contract modification and to the extent permitted by law, Nexgen releases and discharges SBA from all actions, causes of action, claims, demands,

--15--

equitable adjustments, and damages which against SBA Nexgen ever had, now has, or may have arising from or in connection with this contract, from the beginning of time to the day of this modification.

d.  In consideration of this contract modification and to the extent permitted by law, SBA releases and discharges Nexgen from all actions, causes of action, claims, demands, debts, equitable adjustments and damages which against Nexgen SBA ever had, now has, or may have arising from or in connection with this contract, from the beginning of time to the day of this modification.

12.    SBA agrees to grant a termination for convenience of the contract upon request of the contractor, if all the following conditions are met:

    a.  The contract must not be in default at the time of the request;

    b.  The contractor must agree to a no-cost termination settlement;

    c.  The contractor must grant SBA the data rights set out in paragraph H.18.A. and the restricted software rights set out in paragraph H.18.E; and

    d.  The contractor must deliver a copy of the software to SBA.

**13.  Section I, Contract Clauses, delete the following clauses:**

I.25  52.223-3   Hazardous Material Identification and material safety data (Jan 1997)

I.30  52.227-14  Rights in Data (General) (June 1987)

I.32  52.227-23  Rights to Proposal Data (Technical) (Jun 1987)

I.36  52.230-3   Disclosure and consistency of Cost Accounting Practices (Apr 1998)

I.37  52.230-4   Consistency In Cost Accounting Practices (Aug 1992)

I.42  52.232-16 Progress Payments (Mar 2000)

I.45  52.232-25  Prompt Payment (May 1997)

I.48  52.236-12  Cleaning Up (Apr 1984)

**Add the following to Section I, Contract Clauses:**

I.74  52.239-1  Privacy or Security Safeguards (Aug 1996)

       (Reference 39.107)

I.75  52.246-1  Contractor Inspection Requirements (Apr 1984)

--16--

(Reference 46.301)

**14.** Except as stated herein, all other contract terms and conditions remain unchanged and in full force and effect.

# Klein Decl. Part IV

# EXHIBIT 103

2915584.1

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
*Offeror to Complete Blocks 12, 17, 23, 24, & 30*

| | |
|---|---|
| 1. Requisition Number 2401001Q0064 | PAGE 1 OF   17 |
| 5. Solicitation Number | 6. Solicitation Issue Date |

| | |
|---|---|
| 2. Contract No. S...-D-0001 | 3. Award/Effective Date Sep 26, 2002 | 4. Order Number |
| 7. For Solicitation Information Call: | a. Name  William Dorwart   william.dorwart@sba.gov | b. Telephone Number (No collect calls) 202-205-7088 | 8. Offer Due Date/Local Time   / |

9. Issued By                                                Code  S330

Small Business Administration
Office of Procurement and Grants Mgmt.
409 3rd St SW  Suite 5000
Washington, DC 20416

10. This Acquisition is

Unrestricted
Set-Aside          % for

Small Business
HubZone Small Business

[X] 8(A)

NAICS:   541542
Size Standard:

11. Delivery for FOB Destination Unless Block is Marked.

See Schedule

12. Discount Terms

Discount: 0%

Net due: 0

15a. This contract is a rated order under DPAS (15 CFR 700)

13b. Rating

14. Method of Solicitation

[ ] RFQ   [ ] IFB   [ ] RFP

| | |
|---|---|
| 15. Deliver To                           Code 6355 | 16. Administered By                      Code S330 |
| Office of Government Contracting Small Business Administration 409 3rd St SW Washington, DC 20416 | Small Business Administration Office of Procurement and Grants Mgmt. 409 3rd St SW  Suite 5000 Washington, DC 20416 |
| 17a. Contractor/Offeror   Code 00005109 Facility Code | 18a. Payment Will Be Made By              Code S330 |
| Nexgen Solutions, Inc. 8403 Colesville Road #915 Silver Spring MD 20910 Telephone No. 301-654-5555        TIN: 521764732 | Small Business Administration Office of Procurement and Grants Mgmt. 409 3rd St SW Washington, DC 20416 |
| 17b. Check if Remittance is Different and Put Such Address in Offer. [ ] | 18b. Submit Invoices to Address Shown in Block 18a Unless Box Below is Checked. [X] See Addendum. |

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | Furnish Customization Services for SBA Exchange | | | | |

| | |
|---|---|
| 25. Accounting and Appropriation Data 0202.20100RA.401001.90070.2001 | 26. Total Award Amount (For Govt. Use Only) US      0.00 |

| | | |
|---|---|---|
| [ ] 27a. Solicitation Incorporates by reference FAR 52.212-1, 52.212-4, FAR 52.212-3 and 52.212-5 are attached. Addenda [ ] are [ ] are not attached | | |
| [X] 27b. Contract/Purchase Order Incorporates by reference FAR 52.212-4, 52.212-5 is attached. Addenda [X] are [ ] are not attached | | |
| [ ] 28. Contractor is required to sign this document and return ____ copies to Issuing Office. Contractor agrees to furnish and deliver all items set forth or otherwise identified above and on any additional sheets subject to the terms and conditions specified herein. | [X] 29. Award of Contract: Reference _____ Offer Dated  Sep 27, 2002 . Your offer on Solicitation (Block 5), including any additions or changes which are set forth herein, is accepted as to items: All items included in Offer | |

| | |
|---|---|
| 30a. Signature of Offeror/Contractor | 31a. United States of America (Signature of Contracting Officer) |
| 30b. Name and Title of Signer (Type or Print) Edward L. Howlette Jr, President & CEO Ehowlette@ngsinc.com | 30c. Date Signed September 30, 2002 | 31b. Name of Contracting Officer (Type or Print) William Dorwart william.dorwart@sba.gov | 31c. Date Signed 09/30/02 |

| | | |
|---|---|---|
| 32a. Quantity in Column 21 Has Been [ ] Received   [ ] Inspected   [ ] Accepted, and Conforms to the Contract, Except as Noted: _____ | | |
| 32b. Signature of Authorized Government Representative | 32c. Date | 32d. Printed Name and Title of Authorized Government Representative |
| 32e. Mailing Address of Authorized Government Representative | | 32f. Telephone Number of Authorized Government Representative |
| | | 32g. E-mail of Authorized Government Representative |

| 33. Ship Number | 34. Voucher Number | 35. Amount Verified Correct For | 36. Payment [ ] Complete  [ ] Partial  [ ] Final | 37. Check Number |
|---|---|---|---|---|
| [ ] Partial  [ ] Final | | | | |
| Account Number | 39. S/R Voucher Number | 40. Paid By | | |
| 4... certify this account is correct and proper for payment | | 42a. Received By (Print) | | |
| 41b. Signature and Title of Certifying Officer | 41c. Date | 42b. Received At (Location) | | |
| | | 42c. Date Rec'd (YY/MM/DD) | 42d. Total Containers | |

STANDARD FORM 1449 (REV. 4/2002)

## SCHEDULE Continued

| Item No. | Supplies/Services | Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| | This contract is and IDIQ 8(a) award contract with a $1,000.00 guaranteed minimum and a $3,000,000.00 contract maximum. NEXGEN shall perform the tasks outlined in the attachment 0001, statement of work and per each definitized task order.  Orders may be issued electronically per 52.216-8. This contract is for one base of 12 months plus two one year options. | | | | |
| 0001 | One Time Access License | 0 | EA | 300,000.00 | 0.00 |
| 0002 | Annual Maintenance | 0 | EA | 54,000.00 | 0.00 |
| 0003 | Named Callers (1 per marketplace) | 1 | EA | 0.00 | 0.00 |
| | Market Place Within Exchange  (unlimited buyer sites) | | | | |
| 0004 | One-Time Access License | 0 | LT | 250,000.00 | 0.00 |
| 0005 | Annual Maintenance | 0 | EA | 45,000.00 | 0.00 |
| 0006 | Annual help Desk Support  (required for first 12 months) | 0 | EA | 180,000.00 | 0.00 |
| 0007 | Named Callers (1 per site) (Named caller is the buyer administrator) | 0 | EA | 0.00 | 0.00 |
| 0008 | Additional Online reports (per additional report available to all buyer sites) | 0 | EA | 7,500.00 | 0.00 |
| | Buyer Site within a Marketplace  (Unimited individual buyers) | | | | |
| 0009 | One time Access License (no charge) | 0 | EA | 0.00 | 0.00 |
| 0010 | Annual Maintenance (no charge) | 0 | EA | 0.00 | 0.00 |
| 0011 | Registered users (no charge) (For first 100 registered users) | 0 | EA | 0.00 | 0.00 |
| | Additioanl Registered Users (per month for above the  first 100) | 0 | EA | 5.00 | 0.00 |
| 0013 | Annual Support (Help Desk) (Monthly per named caller) | 0 | MT | 1,500.00 | 0.00 |
| 0014 | Additional Online Reports (per additonal report) | 0 | EA | 2,500.00 | 0.00 |
| 0015 | Optional Dedicated Partition Setup: (1 set up) | 0 | EA | 35,000.00 | 0.00 |
| 0016 | Optional Partition Maintenance (per month) | 0 | MT | 2,500.00 | 0.00 |
| | Supplier Site | | | | |
| 0017 | Annual License (per year) | 0 | YR | 1,500.00 | 0.00 |
| 0017A | Catalog Items  (NSP) (up to 100) | 0 | IT | 0.00 | 0.00 |
| 0017B | Disk Space  (NSP) (up to 50 Megabytes) | 50 | MB | 0.00 | 0.00 |
| 0017C | Monthly Data Transfer (NSP) (up to 10 Gigabytes) | 10 | GB | 0.00 | 0.00 |
| 0018 | Maintenance (2% transansaction fee) | 0 | TR | 0.02 | 0.00 |
| | Direct Labor Category  (Labor Rates for Customization and other support) | | | | |
| 0019 | Project Manager | 0 | EA | 200.00 | 0.00 |
| 0020 | Architect (computer) | 0 | HR | 175.00 | 0.00 |
| 0021 | Consultant | 0 | HR | 125.00 | 0.00 |
| 00⌢ | Associate Consultant | 0 | HR | 95.00 | 0.00 |
| 0ι_ | Dedicated Off-Site Support Representative | 0 | HR | 35.00 | 0.00 |
| 0024 | Customer Premise Site Administrator | 0 | HR | 70.00 | 0.00 |

SCHEDULE Continued

| Item No. | Supplies/Services | Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| 0025 | Graphic Artists | 0 | HR | 65.00 | 0.00 |
| | When submitting Invocies send to:<br>U.S. Small Business Administration<br>Office of Procurement and Grants Management<br>409 Third St. S.W., Suite 5000<br>Washington, DC 20416<br>Attn:  Invoice Control Clerk<br><br>Reference the requisition number on every invoice<br>submitted and the Task order number supplied at time<br>of task award.  Failure to reference these numbers<br>may result in non-payment. | | | | |

Page

SECTION I - CONTRACT CLAUSES.................................................................................................5
   I.1 52.219-11 SPECIAL 8(a) CONTRACT CONDITIONS (FEB 1990)........................................5
   I.2 52.219-14 LIMITATIONS ON SUBCONTRACTING (DEC 1996)..........................................5
   I.3 52.212-3 OFFEROR REPRESENTATIONS AND CERTIFICATIONS—COMMERCIAL ITEMS (July 2002).....5
   I.4 52.212-4 CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (Feb 2002) ...............11
   I.5 52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR
EXECUTIVE ORDERS--COMMERCIAL ITEMS (May 2002) .................................................13
   I.6 52.216-18 ORDERING (OCT 1995)....................................................................................15
   I.7 52.216-22 INDEFINITE QUANTITY (OCT 1995)...............................................................15
   I.8 52.216-25 CONTRACT DEFINITIZATION (OCT 1997) ....................................................16
   I.9 52.219-12 SPECIAL 8(a) SUBCONTRACT CONDITIONS (FEB 1990)...............................16

CONTRACT CLAUSES

I.1  **52.219-11**  **SPECIAL 8(a) CONTRACT CONDITIONS (FEB 1990)**
(Reference 19.811-3)

I.2  **52.219-14**  **LIMITATIONS ON SUBCONTRACTING (DEC 1996)**
(Reference 19.811-3)

I.3  **52.212-3**  **OFFEROR REPRESENTATIONS AND CERTIFICATIONS--COMMERCIAL ITEMS (July 2002)**
    (a) Definitions.  As used in this provision:
    "Emerging small business" means a small business concern whose size is no greater than 50 percent of the numerical size standard for the NAICS code designated.
    "Forced or indentured child labor" means all work or service--
    (1) Exacted from any person under the age of 18 under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily; or
    (2) Performed by any person under the age of 18 pursuant to a contract the enforcement of which can be accomplished by process or penalties.
    "Service-disabled veteran-owned small business concern"--
    (1) Means a small business concern--
      (i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and
      (ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.
    (2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).
    "Small business concern" means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and size standards in this solicitation.
    "Veteran-owned small business concern" means a small business concern--
    (1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and
    (2) The management and daily business operations of which are controlled by one or more veterans. "Women-owned business concern" means a concern which is at least 51
    percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and whose management and daily business operations are controlled by one or more women. "Women-owned small business concern" means a small business concern--
    (1) That is at least 51 percent owned by one or more women; or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and
    (2) Whose management and daily business operations are controlled by one or more women.
    (b) Taxpayer Identification Number (TIN) (26 U.S.C. 6109, 31 U.S.C. 7701). (Not applicable if the offeror is required to provide this information to a central contractor registration database to be eligible for award.)
    (1) All offerors must submit the information required in paragraphs (b)(3) through (b)(5) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041,

SBAHQ-02-D-0001

6041A, and 6050M, and implementing regulations issued by the Internal Revenue Service (IRS).

(2) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(3) Taxpayer Identification Number (TIN).
/_/ TIN: _____.
/_/ TIN has been applied for.
/_/ TIN is not required because:
    /_/ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States;
    /_/ Offeror is an agency or instrumentality of a foreign government;
    /_/ Offeror is an agency or instrumentality of the Federal Government.
(4) Type of organization.
    /_/ Sole proprietorship;
    /_/ Partnership;
    /_/ Corporate entity (not tax-exempt);
    /_/ Corporate entity (tax-exempt);
    /_/ Government entity (Federal, State, or local);
    /_/ Foreign government;
    /_/ International organization per 26 CFR 1.6049-4;
    /_/ Other_____
(5) Common parent.
/_/ Offeror is not owned or controlled by a common parent;
    TIN _____

(c) Offerors must complete the following representations when the resulting contract is to be performed inside the United States, its territories or possessions, Puerto Rico, the Trust Territory of the Pacific Islands, or the District of Columbia. Check all that apply.

(1) Small business concern. The offeror represents as part of its offer that it /_/ is, /_/ is not a small business concern.

(2) Veteran-owned small business concern. [Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents as part of its offer that it [ ] is, [ ] is not a veteran-owned small business concern.

(3) Service-disabled veteran-owned small business concern. [Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (c)(2) of this provision.] The offeror represents as part of its offer that it [ ] is, [ ] is not a service-disabled veteran-owned small business concern.

(4) Small disadvantaged business concern. [Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents, for general statistical purposes, that it /_/ is, /_/ is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(5) Women-owned small business concern. [Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents that it /_/ is, /_/ is not a women-owned small business concern.
Note: Complete paragraphs (c)(6) and (c)(7) only if this solicitation is expected to exceed the simplified acquisition threshold.

(6) Women-owned business concern (other than small business concern). [Complete only if the offeror is a women-owned business concern and did

SBAHQ-02-D-0001

not represent itself as a small business concern in paragraph (c)(1) of
this provision.]  The offeror represents that it /_/ is a women-owned
business concern.

(7) Tie bid priority for labor surplus area concerns.  If this is an
invitation for bid, small business offerors may identify the labor
surplus areas in which costs to be incurred on account of manufacturing
or production (by offeror or first-tier subcontractors) amount to more
than 50 percent of the contract price:

_____

(8) Small Business Size for the Small Business Competitiveness
Demonstration Program and for the Targeted Industry Categories under the
Small Business Competitiveness Demonstration Program.  [Complete only if
the offeror has certified itself to be a small business concern under
the size standards for this solicitation.]

(i) (Complete only for solicitations indicated in an addendum as
being set-aside for emerging small businesses in one of the four
designated industry groups (DIGs).)  The offeror represents as part of
its offer that it /_/ is, /_/ is not an emerging small business.

(ii) (Complete only for solicitations indicated in an addendum as
being for one of the targeted industry categories (TICs) or four
designated industry groups (DIGs).)  Offeror represents as follows:

(A) Offeror's number of employees for the past 12 months (check
the Employees column if size standard stated in the solicitation is
expressed in terms of number of employees); or

(B) Offeror's average annual gross revenue for the last 3 fiscal
years (check the Average Annual Gross Number of Revenues column if
size standard stated in the solicitation is expressed in terms of
annual receipts).

(Check one of the following):

| Number of Employees | Average Annual Gross Revenues |
|---|---|
| _____ 50 or fewer | _____ $1 million or less |
| _____ 51 - 100 | _____ $1,000,0001 - $2 million |
| _____ 101 - 250 | _____ $2,000,001 - $3.5 million |
| _____ 251 - 500 | _____ $3,500,001 - $5 million |
| _____ 501 - 750 | _____ $5,000,001 - $10 million |
| _____ 751 - 1,000 | _____ $10,000,001 - $17 million |
| _____ Over 1,000 | _____ Over $17 million |

(9) [Complete only if the solicitation contains the clause at FAR
52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged
Business Concerns, or FAR 52.219-25, Small Disadvantaged Business
Participation Program--Disadvantaged Status and Reporting, and the
offeror desires a benefit based on its disadvantaged status.]

(i) General.  The offeror represents that either--

(A) It /_/ is, /_/ is not certified by the Small Business
Administration as a small disadvantaged business concern and
identified, on the date of this representation, as a certified
small disadvantaged business concern in the database maintained by
the Small Business Administration (PRO-Net), and that no material
change in disadvantaged ownership and control has occurred since its
certification, and, where the concern is owned by one or more
individuals claiming disadvantaged status, the net worth of each
individual upon whom the certification is based does not exceed
$750,000 after taking into account the applicable exclusions set
forth at 13 CFR 124.104(c)(2); or

(B) It /_/ has, /_/ has not submitted a completed application to
the Small Business Administration or a Private Certifier to be
certified as a small disadvantaged business concern in accordance
with 13 CFR 124, Subpart B, and a decision on that application is
pending, and that no material change in disadvantaged ownership and
control has occurred since its application was submitted.

(ii) Joint Ventures under the Price Evaluation Adjustment for Small Disadvantaged Business Concerns.  The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements in 13 CFR 124.1002(f) and that the representation in paragraph (c)(9)(i) of this provision is accurate for the small disadvantaged business concern that is participating in the joint venture.  [The offer shall enter the name of the small disadvantaged business concern that is participating in the joint venture: _____.]

(10) "HUBZone small business concern." [Complete only if the offeror represented itself as a small business concern in paragraph (c)(1) of this provision.] The offeror represents, as part of its offer, that--

(i) It o is, o is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business A dministration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126; and

(ii) It o is, o is not a joint venture that complies with the requirements of 13 CFR part 126, and the representation in paragraph (c)(10)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. ["The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture": _____.] Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

(d) Representations required to implement provisions of Executive Order 11246-
-(1) Previous Contracts and Compliance.  The offeror represents that--

(i) It /_/ has, /_/ has not participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation; and

(ii) It /_/ has, /_/ has not filed all required compliance reports.

(2) Affirmative Action Compliance.  The offeror represents that--

(i) It /_/ has developed and has on file, /_/ has not developed and does not have on file, at each establishment, affirmative action programs required by rules and regulations of the Secretary of Labor (41 CFR Parts 60-1 and 60-2), or

(ii) It /_/ has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

(e) Certification Regarding Payments to Influence Federal Transactions (31 U.S.C. 1352).  (Applies only if the contract is expected to exceed $100,000.) By submission of its offer, the offeror certifies to the best of its knowledge and belief that no Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress or an employee of a Member of Congress on his or her behalf in connection with the award of any resultant contract.

(f) Buy American Act Certificate.  (Applies only if the clause at Federal Acquisition Regulation (FAR) 52.225-1, Buy American Act--Supplies, is included in this solicitation.)

(1) The offeror certifies that each end product, except those listed in paragraph (f)(2) of this provision, is a domestic end product as defined in the clause of this solicitation entitled "Buy American Act--Supplies" and that the offeror has considered components of unknown origin to have been mined, produced, or manufactured outside the United States.  The offeror shall list as foreign end products those end products manufactured in the United States that do not qualify as domestic end products.

(2) Foreign End Products:

LINE ITEM NO                          COUNTRY OF ORIGIN

SBAHQ-02-D-0001

_____     _____
_____     _____
                [List as necessary]
   (3) The Government will evaluate offers in accordance with the policies
and procedures of FAR Part 25.
   (g)(1) Buy American Act--North American Free Trade Agreement--Israeli Trade
Act Certificate.  (Applies only if the clause at FAR 52.225-3, Buy American Act-
-North American Free Trade Agreement--Israeli Trade Act, is included in this
solicitation.)
      (i) The offeror certifies that each end product, except those listed
   in paragraph (g)(1)(ii) or (g)(1)(iii) of this provision, is a domestic
   end product as defined in the clause of this solicitation entitled "Buy
   American Act--North American Free Trade Agreement--Israeli Trade
   Act" and that the offeror has considered components of unknown origin
   to have been mined, produced, or manufactured outside the United States.
   (ii) The offeror certifies that he following supplies are NAFTA
country end products or Israeli end products as defined in the clause
of this solicitation entitled "Buy American Act--North American Free
Trade Agreement--Israeli Trade Act":
NAFTA Country or Israeli End Products:
      LINE ITEM NO                    COUNTRY OF ORIGIN
      _____                 _____
      _____                 _____
                [List as necessary]
   (iii) The offeror shall list those supplies that are foreign end
products (other than those listed in paragraph (g)(1)(ii) of this
provision) as defined in the clause of this solicitation entitled "Buy
American Act--North American Free Trade Agreement--Israeli Trade
Act."  The offeror shall list as other foreign end products those end
products manufactured in the United States that do not qualify as
domestic end products.
      LINE ITEM NO                    COUNTRY OF ORIGIN
      _____                 _____
      _____                 _____
      _____                 _____
                [List as necessary]
   (iv) The Government will evaluate offers in accordance with policies
and procedures of FAR Part 25.
   (2) Buy American Act-North American Free Trade Agreements-Israeli
Trade Act Certificate, Alternate I (May 2002). If Alternate I to the
clause at FAR 52.225-3 is included in this solicitation, substitute the
following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic
provision:
(g)(1)(ii) The offeror certifies that the following supplies are
Canadian end products as defined in the clause of this solicitation
entitled ''Buy American Act-North American Free Trade Agreement-
Israeli Trade Act'':
Canadian End Products:
Line Item No.
      _____
      _____
      _____
(List as necessary)
(3) Buy American Act-North American Free Trade Agreements- Israeli Trade
Act Certificate, Alternate II (May 2002). If Alternate II to the clause
at FAR 52.225-3 is included in this solicitation, substitute the
following paragraph (g)(1)(ii) for paragraph (g)(1)(ii) of the basic
provision:
(g)(1)(i ) The offeror certifies that the following supplies are
Canadian end products or Israeli end products as defined in the clause
of this solicitation entitled ''Buy American Act-North American Free

## CONTRACT CLAUSES

```
Trade Agreement-Israeli Trade Act'':
Canadian or Israeli End Products:
Line Item No.

_____
_____
_____

Country of Origin

_____
_____
_____
```

(List as necessary)

(4) Trade Agreements Certificate. (Applies only if the clause at FAR 52.225-5, Trade Agreements, is included in this solicitation.)

(i) The offeror certifies that each end product, except those listed in paragraph (g)(4)(ii) of this provision, is a U.S.-made, designated country, Caribbean Basin country, or NAFTA country end product, as defined in the clause of this solicitation entitled "Trade Agreements."

(ii) The offeror shall list as other end products those end products that are not U.S.-made, designated country, Caribbean Basin country, or NAFTA country end products.

Other End Products:

| LINE ITEM NO | COUNTRY OR ORIGIN |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

[List as necessary]

(iii) The Government will evaluate offers in accordance with the policies and procedures of FAR Part 25. For line items subject to the Trade Agreements Act, the Government will evaluate offers of U.S.-made, designated country, Caribbean Basin country, or NAFTA country end products without regard to the restrictions of the Buy American Act. The Government will consider for award only offers of U.S.-made, designated country, Caribbean Basin country, or NAFTA country end products unless the Contracting Officer determines that there are no offers for such products or that the offers for such products are insufficient to fulfill the requirements of the solicitation.

(h) Certification Regarding Debarment, Suspension or Ineligibility for Award (Executive Order 12549). (Applies only if the contract value is expected to exceed the simplified acquisition threshold.) The offeror certifies, to the best of its knowledge and belief, that the offeror and/or any of its principals-

(1) [ ] Are, [ ] are not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency; and

(2) [ ] Have, [ ] have not, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: Commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a Federal, state or local government contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(3) [ ] Are, [ ] are not presently indicted for, or otherwise criminally or civilly charged by a Government entity with, commission of any of these offenses.

(i) Certification Regarding Knowledge of Child Labor for Listed End Products (Executive Order 13126). [The Contracting Officer must list in paragraph (i)(1) any end products being acquired under this solicitation that are included in the List of Products Requiring Contractor Certification as to Forced or Indentured Child Labor, unless excluded at 22.1503(b).]

(1) Listed end products.

SBAHQ-02-D-0001

SECTION I
CONTRACT CLAUSES

| Listed End Product | Listed Countries of Origin |
|---|---|
| | |
| | |

(2) Certification. [If the Contracting Officer has identified end products and countries of origin in paragraph (i)(1) of this provision, then the offeror must certify to either (i)(2)(i) or (i)(2)(ii) by checking the appropriate block.]

/_/ (i) The offeror will not supply any end product listed in paragraph (i)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product.

/_/ (ii) The offeror may supply an end product listed in paragraph (i)(1) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product. The offeror certifies that it has made a good faith effort to determine whether forced or indentured child labor was used to mine, produce, or manufacture any such end product furnished under this contract. On the basis of those efforts, the offeror certifies that it is not aware of any such use of child labor.

(End of provision)

I.4  52.212-4  CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (Feb 2002)

(a) "Inspection/Acceptance." The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The Government must exercise its post-acceptance rights--

(1) Within a reasonable time after the defect was discovered or should have been discovered; and

(2) Before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(b) "Assignment." The Contractor or its assignee may assign its rights to receive payment due as a result of performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency in accordance with the Assignment of Claims Act (31 U.S.C. 3727). However, when a third party makes payment (e.g., use of the Governmentwide commercial purchase card), the Contractor may not assign its rights to receive payment under this contract.

(c) "Changes." Changes in the terms and conditions of this contract may be made only by written agreement of the parties.

(d) "Disputes." This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(e) "Definitions." The clause at FAR 52.202-1, Definitions, is incorporated herein by reference.

(f) "Excusable delays." The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

SBAHQ-02-D-0001

(g) "Invoice."

(1) The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized) to the address designated in the contract to receive invoices. An invoice must include--

(i) Name and address of the Contractor;

(ii) Invoice date and number;

(iii) Contract number, contract line item number and, if applicable, the order number;

(iv) Description, quantity, unit of measure, unit price and extended price of the items delivered;

(v) Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;

(vi) Terms of any discount for prompt payment offered;

(vii) Name and address of official to whom payment is to be sent;

(viii) Name, title, and phone number of person to notify in event of defective invoice; and

(ix) Taxpayer Identification Number (TIN). The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.

(x) Electronic funds transfer (EFT) banking information.

(A) The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract.

(B) If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause (e.g., 52.232;V33, Payment by Electronic Funds Transfer--Central Contractor Registration, or 52.232-34, Payment by Electronic Funds Transfer-- Other Than Central Contractor Registration), or applicable agency procedures.

(C) EFT banking information is not required if the Government waived the requirement to pay by EFT.

(2) Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) prompt payment regulations at 5 CFR part 1315.

(h) "Patent indemnity." The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(i) "Payment." Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract. The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and OMB prompt payment regulations at 5 CFR part 1315. If the Government makes payment by Electronic Funds Transfer (EFT), see 52.212-5(b) for the appropriate EFT clause. In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to have been made on the date which appears on the payment check or the specified payment date if an electronic funds transfer is made.

(j) "Risk of loss." Unless the contract specifically provides otherwise, risk of loss or damage to the supplies provided under this contract shall remain with the Contractor until, and shall pass to the Government upon:

(1) Delivery of the supplies to a carrier, if transportation is f.o.b. origin; or

(2) Delivery of the supplies to the Government at the destination specified in the contract, if transportation is f.o.b. destination.

(k) "Taxes." The contract price includes all applicable Federal, State, and local taxes and duties.

(l) "Termination for the Government's convenience." The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately

stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work.  Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose.  This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

(m) "Termination for cause."  The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance.  In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law.  If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(n) "Title."  Unless specified elsewhere in this contract, title to items furnished under this contract shall pass to the Government upon acceptance, regardless of when or where the Government takes physical possession.

(o) "Warranty."  The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

(p) "Limitation of liability."  Except as otherwise provided by an express warranty, the Contractor will not be liable to the Government for consequential damages resulting from any defect or deficiencies in accepted items.

(q) "Other compliances."  The Contractor shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance under this contract.

(r) "Compliance with laws unique to Government contracts."  The Contractor agrees to comply with 31 U.S.C. 1352 relating to limitations on the use of appropriated funds to influence certain Federal contracts; 18 U.S.C. 431 relating to officials not to benefit; 40 U.S.C. 327, et seq., Contract Work Hours and Safety Standards Act; 41 U.S.C. 51-58, Anti-Kickback Act of 1986; 41 U.S.C. 265 and 10 U.S.C. 2409 relating to whistle blower protections; 49 U.S.C. 40118, Fly American; and 41 U.S.C. 423 relating to procurement integrity.

(s) "Order of precedence."  Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order:

(1) The schedule of supplies/services.

(2) The Assignments, Disputes, Payments, Invoice, Other Compliances, and Compliance with Laws Unique to Government Contracts paragraphs of this clause.

(3) The clause at 52.212-5.

(4) Addenda to this solicitation or contract, including any license agreements for computer software.

(5) Solicitation provisions if this is a solicitation.

(6) Other paragraphs of this clause.

(7) The Standard Form 1449.

(8) Other documents, exhibits, and attachments.

(9) The specification.

(End of clause)


I.5  52.212-5  CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS (May 2002)

(a) The Contractor shall comply with the following FAR clauses, which are incorporated in this contract by reference, to implement provisions of law or executive orders applicable to acquisitions of commercial items:

(1) 52.222-3, Convict Labor (E.O. 11755).

SBAHQ-02-D-0001

   (2) 52.233-3, Protest after Award (31 U.S.C. 3553).
   (b) The Contractor shall comply with the FAR clauses in this paragraph (b)
that the Contracting Officer has indicated as being incorporated in this
contract by reference to implement provisions of law or Executive orders
applicable to acquisitions of commercial items or components: _____ (1)
52.203-6, Restrictions on Subcontractor Sales to the Government, with Alternate
I (41 U.S.C. 253g and 10 U.S.C. 2402). _____ (2) 52.219-3, Notice of Total
HUBZone Small Business Set-Aside (Jan 1999). _____ (3) 52.219-4, Notice of
Price Evaluation Preference for HUBZone Small Business Concerns (Jan 1999) (if
the offeror elects to waive the preference, it shall so indicate in its offer).
_____ (4)(i) 52.219-5, Very Small Business Set-Aside (Pub. L. 103-403,
section 304, Small Business Reauthorization and Amendments Act of 1994).
_____ (ii) Alternate I to 52.219-5. _____ (iii) Alternate II to
52.219-5. _____ (5) 52.219-8, Utilization of Small Business Concerns (15
U.S.C. 637(d)(2) and (3)). _____ (6) 52.219-9, Small Business
Subcontracting Plan (15 U.S.C. 637(d)(4). _____ (7) 52.219-14, Limitations
on Subcontracting (15 U.S.C. 637(a)(14)). _____ (8)(i) 52.219-23, Notice
of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (Pub.
L. 103-355, section 7102, and 10 U.S.C. 2323) (if the offeror elects to waive
the adjustment, it shall so indicate in its offer). _____ (ii) Alternate I
of 52.219-23. _____ (9) 52.219-25, Small Disadvantaged Business
Participation Program--Disadvantaged Status and Reporting (Pub. L. 103-355,
section 7102, and 10 U.S.C. 2323). _____ (10) 52.219-26, Small
Disadvantaged Business Participation Program--Incentive Subcontracting (Pub. L.
103-355, section 7102, and 10 U.S.C. 2323). _____ (11) 52.222-21,
prohibition of Segregated Facilities (Feb 1999). _____ (12) 52.222-26,
Equal Opportunity (E.O. 11246). _____ (13) 52.222-35, Equal Opportunity
for Special Disabled Veterans and Veterans of the Vietnam Era, and Other
Eligible Veterans (38 U.S.C. 4212). _____ (14) 52.222-36, Affirmative
Action for Workers with Disabilities (29 U.S.C. 793). _____ (15) 52.222-
37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam
Era, and Other Eligible Veterans (38 U.S.C. 4212). _____ (16) 52.222-19,
Child Labor--Cooperation with Authorities and Remedies (E.O. 13126). _____
(17)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-
Designated Products (42 U.S.C. 6962(c)(3)(A)(ii)). _____ (ii) Alternate I
of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). _____ (18) 52.225-1, Buy American
Act--Supplies (41 U.S.C. 10a - 10d). _____ (19)(i) 52.225-3, Buy American
Act--North American Free Trade Agreement--Israeli Trade Act (41 U.S.C. 10a -
10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note). _____ (ii) Alternate I of
52.225-3. _____ (iii) Alternate III of 52.225-3. _____ (20) 52.225-5,
Trade Agreements (19 U.S.C. 2501, et. seq., 19 U.S.C. 3301 note). _____
_____ (21) 52.225-13, Restriction on Certain Foreign Purchases (E.O.
12722, 12724, 13059, 13067, 13121, and 13129). _____ (22) 52.225-15,
Sanctioned European Union Country End Products (E.O. 12849). _____ (23)
52.225-16, Sanctioned European Union Country Services (E.O. 12849). _____
(24) 52.232-33, Payment by Electronic Funds Transfer--Central Contractor
Registration (31 U.S.C. 3332). _____ (25) 52.232-34, Payment by Electronic
Funds Transfer--Other than Central Contractor Registration (31 U.S.C. 3332).
_____ (26) 52.232-36, Payment by Third Party (31 U.S.C. 3332). _____
(27) 52.239-1, Privacy or Security Safeguards (5 U.S.C. 552a). _____
(28)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels
(46 U.S.C. 1241). _____ (ii) Alternate I of 52.247-64.
   (c) The Contractor shall comply with the FAR clauses in this paragraph (c),
applicable to commercial services, which the Contracting Officer has indicated
as being incorporated in this contract by reference to implement provisions of
law or executive orders applicable to acquisitions of commercial items or
components: _____ (1) 52.222-41, Service Contract Act of 1965, As amended
(41 U.S.C. 351, et seq.). _____ (2) 52.222-42, Statement of Equivalent
Rates for Federal Hires (29 U.S.C. 206 and 41 U.S.C. 51, et seq.). _____
(3) 52.222-43, Fair Labor Standards Act and Service Contract Act - Price
Adjustment (Multiple Year and Option Contracts) (29 U.S.C. 206 and 41 U.S.C.

SBAHQ-02-D-000

351, et seq.). _____ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act - Price Adjustment (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).
_____ (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreement (CBA)(41 U.S.C. 351, et seq.).
(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records--Negotiation.
    (1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.
    (2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.
    (3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.
(e) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) or (d) of this clause, the Contractor is not required to include any FAR clause, other than those listed below (and as may be required by an addenda to this paragraph to establish the reasonableness of prices under Part 15), in a subcontract for commercial items or commercial components--
    (1) 52.222-26, Equal Opportunity (E.O. 11246);
    (2) 52.222-35, Affirmative Action for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (38 U.S.C. 4212);
    (3) 52.222-36, Affirmative Action for Workers with Disabilities (29 U.S.C. 793);
    (4) 52.247-64, Preference for Privately-Owned U.S.-Flag Commercial Vessels (46 U.S.C. 1241)(flow down not required for subcontracts awarded beginning May 1, 1996); and
    (5) 52.222-41, Service Contract Act of 1965, As Amended (41 U.S.C. 351, et seq.).
                        (End of clause)

**I.6  52.216-18  ORDERING (OCT 1995)**
    (a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from 09/30/02 through 09/29/03
    (b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.
    (c) If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.
                        (End of clause)


**I.7  52.216-22  INDEFINITE QUANTITY (OCT 1995)**

SBAHQ-02-D-0001

CONTRACT CLAUSES

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after 09/30/05

(End of clause)

I.8  52.216-25  CONTRACT DEFINITIZATION (OCT 1997)

(a) A IDIQ definitive contract is contemplated. The Contractor agrees to begin promptly negotiating with the Contracting Officer the terms of a definitive contract that will include (1) all clauses required by the Federal Acquisition Regulation (FAR) on the date of execution of the letter contract, (2) all clauses required by law on the date of execution of the definitive contract, and (3) any other mutually agreeable clauses, terms, and conditions. The Contractor agrees to submit a Fixed Price proposal and cost or pricing data supporting its proposal.

(b) The schedule for definitizing this contract is: 10/19/02

(c) If agreement on a definitive contract to supersede this letter contract is not reached by the target date in paragraph (b) above, or within any extension of it granted by the Contracting Officer, the Contracting Officer may, with the approval of the head of the contracting activity, determine a reasonable price or fee in accordance with Subpart 15.4 and Part 31 of the FAR, subject to Contractor appeal as provided in the Disputes clause. In any event, the Contractor shall proceed with completion of the contract, subject only to the Limitation of Government Liability clause.

(1) After the Contracting Officer's determination of price or fee, the contract shall be governed by--

(i) All clauses required by the FAR on the date of execution of this letter contract for either fixed-price or cost-reimbursement contracts, as determined by the Contracting Officer under this paragraph (c);

(ii) All clauses required by law as of the date of the Contracting Officer's determination; and

(iii) Any other clauses, terms, and conditions mutually agreed upon.

(2) To the extent consistent with subparagraph (c)(1) of this section, all clauses, terms, and conditions included in this letter contract shall continue in effect, except those that by their nature apply only to a letter contract.

(End of clause)

I.9  52.219-12  SPECIAL 8(a) SUBCONTRACT CONDITIONS (FEB 1990)

(a) The Small Business Administration (SBA) has entered into Contract No. SBAHQ-02-D-0001 with the NEXGEN to furnish the supplies or services as

described therein.  A copy of the contract is attached hereto  and made a part hereof.

(b) The vendor   hereafter referred to as the subcontractor, agrees and acknowledges as follows:

(1) That it will, for and on behalf of the SBA, fulfill and perform all of the requirements of Contract No. SBAHQ-02-D-0001  for the consideration stated therein and that it has read and is familiar with each and every part of the contract.

(2) That the SBA has delegated responsibility, except for novation agreements and advance payments, for the administration of this · subcontract to the SBA/OPGM  with complete authority to take any action  on behalf of the Government under the terms and conditions of this subcontract.

(3) That it will not subcontract the performance of any of the requirements of this subcontract to any lower tier subcontractor without the prior written approval of the SBA and the designated Contracting Officer of the SBA/OPGM

(4) That it will notify the SBA/OPGM  Contracting Officer in writing immediately upon entering an agreement (either oral or written) to transfer all or part of its stock or other ownership interest to any other party.

(c) Payments, including any progress payments under this subcontract, will be made directly to the subcontractor by the SBA/OPGM

(End of clause)

Attachement 0001
SBAHQ-02-D-0001

## STATEMENT OF WORK

The U.S. Small Business Administration (SBA) has entered into a service contract with NEXGEN Solutions (SBAHQ-02-D-0001) for the purpose of obtaining services in connection with the SBA Exchange Program (the Exchange). Agencies are permitted to use this contract for funding small business participation, customization of the Exchange business processes and/or integration of the Exchange with the Government Agency or Department to be named in each task order (Agency) system.

The SBA Exchange Program (the Exchange) provides small businesses with access to simplified acquisitions up to $100,000. The Exchange serves as the access point for agencies to award simplified purchases of $100,000 and under, including Governmentwide commercial purchase card purchases. Agencies may use the Exchange to award purchases over $25,000 that have been posted in Federal Business Opportunities (FedBizOpps) provided the notice states that the award will be made through this electronic system.

The Exchange possesses a commercial technical capability that lends itself to the furtherance of Government eProcurement objectives. Through the Exchange, small business subscribers are provided e-business tools and related services with an emphasis on selling their products and services to government buyers.

Agencies receive credit for purchases made from small businesses using their purchase cards and have access to detailed demographic reports on how, where, and with whom procurement dollars are being spent.

Agencies can enter into an Agreement with U.S. Small Business Administration (SBA) using the Exchange as a vehicle for making internet-based purchases from small businesses and mandatory sources.

Agencies can use the Exchange for the following:

- electronic creation and dissemination of solicitations;

- automated bid/quote tracking and comparison;

- multiple procurement/payment methods (e.g. credit cards and purchase orders);

- a marketplace that optimizes search capability across all vendors within a unified catalog (e.g. NAIC, etc.);

- capture of and access to past performance records created by buyers (e.g. Amazon.com vendor reviews);

- order status tracking and management capability from the desktop;

- procurement statistics,

- credit card utilization and reporting accessible to **the Agency** or Department (to be named in each task order),

- management based on "point & click" configuration by **the Agency** administrator/users.

- administrative setup and training of users; and

- a help desk/technical support operation for buyers and sellers.

The following is a list of some of the services that Agencies can obtain through this contract.

1. **Small business vendors** – The inclusion of small businesses within an electronic marketplace. Agency has strategic relationships with vendors that do not have Federal Supply Schedules (FSS). There is a need to establish an internet-based electronic purchasing process with these vendors.

2. **Control of purchasing processes** – Agency management wants the ability to control purchases in an internet-based marketplace. This includes the use of the Government purchase card. The Exchange has the capability of controlling purchases by defining business rules; establishing approved workflow and checks; directing purchases to mandatory sources; applying the Government Agency or Department's (to be named in each task order) contract pricing; applying web-based oversight of individual and organizational buyer activity; and supplying web-based access to business utilization reports.

3. **Business rule enforcement** – Application of organizational purchasing rules. Rules will be provided by the Government Agency or Department.

4. **Workflow** – The ability to route requests for approval via an internet-based buying tool to minimize or eliminate manual intervention for approvals in the purchasing process. Workflow rules are subject to approved Government Agency or Department (to be named in each task order) Instructions.

5. **Application of Government Agency or Department (to be named in each task order) contract pricing** – The application of Government Agency or Department (to be named in each task order) pricing schedules to both new and pre-existing Government-wide acquisition contracts and FSSs by commodity/service type, vendor and location (e.g. Blanket Purchase Agreement pricing in addition to FSS pricing).

6.  **Business Utilization Reports** – Streamlined internet-based access to a buyer and an organizational buying activity for: users; designated administrators; billing/approving officials; and senior level managers. This will be based on a Government Agency or Department's (to be named in each task order) level of access for each user. The business reports provided by the Exchange will be validated/certified by the SBA to the maximum extent practicable to ensure accurate reporting to Congress of the Government Agency or Department's (to be named in each task order) purchasing activity.

Additional services may be obtained by specifying the requirements in each specific task order.

It is expected that the Service Provider (SP) for the Exchange will adequately address the primary services noted above using currently commercially available software.

**Summary**

Agency will fund, as necessary, electronic "store-fronts" within <u>SBA Exchange</u> for small businesses. The actual number of "storefronts" will be stated in each task order.

Agency will fund, as necessary, any customization or integration requirements.

Customization will be provided per agreed to Task orders awarded to NEXGEN via this IDIQ contract based on the rates negotiated herein. Each task order will be initiated by the SBA by providing NEXGEN with the Statement of Work (SOW) for each interested agency. NEXGEN will be required to provide a cost and brief technical proposal necessary to accomplish each agency requirement.

The Services to be delivered are as follows:

**Annual Support (E-mail):** Email based customer support service is available 24 hours daily. Emails are reviewed between the hours of 10:00am and 3:00pm Monday through Friday. This form of customer support service is available to both Buyer Site and Supplier Site License holders at no cost for up to a maximum of 5 e-mails per day. NEXGEN will provide one named representatives within the Client Organization with the ability to submit email based support requests on behalf of their organization. Additional named representatives from the Client organization can be registered for an additional fee. Annual Support is required for the first 12 months of any Exchange or Marketplace license.

**Annual Support (Help Desk):** Telephone based customer support service available from 9:00am to 8:00pm eastern standard time, Monday through Friday. This form of customer support service is available to the Exchange, Marketplace, and Buyer Site License holders on a monthly fee basis. This service is available to Suppliers on an incident basis. NEXGEN will provide one named representatives within the Client Organization with a toll-free customer support telephone number through which they can obtain answers to questions and direction on maximizing the utility of the deliverables. Additional named representatives from the Client organization can be registered for an additional fee. Annual Support is required for the first 12 months of any Exchange or Marketplace license.

**Annual Maintenance:** NEXGEN will provide Client Organization with the benefit of new updates and enhancements to the core software at no additional charge. Annual Maintenance does not cover new components or modules, nor does it cover new releases. New releases will be made available to all existing customers who are current on payment of their annual maintenance at 20% of the license price.

**Requirements Analysis:** NEXGEN will work closely with domain experts within the Client Organization to review the functional requirements of the organization and assist Client in determining the most cost effective way to maximize features and capabilities of NEXGEN proprietary software based on their unique business rules and practices.

**Integration:** We will provide integration services to seamlessly connect the software being delivered under this agreement with existing third party offerings. Additionally, we will define any data integration schemes necessary for the software being delivered under this agreement to export and import data with other systems using standards such as XML, cXML, EDI, or others as identified in the requirements analysis.

**Customization:** During the requirements analysis sessions we will review existing software components with Client Organization to determine the extent to which they may be leveraged or how they must be modified to address the unique requirements and nuances of the Client Organization.

**End User Training:** Once deliverables have been finalized, accepted, and moved into the production hosting environment, we will provide the Client Organization with hands-on training to ensure efficient utilization of the deliverables.

**Hosting Services:** NEXGEN will provide all hosting related services to Client Organization for deliverables produced under this agreement. Pricing may vary based on changes in Client requirements that occur between now and production implementation.

**On-site Site Administration:** NEXGEN will assign resources to work on site at the customer location as the organizations site administrator, or as an aid to the organizations designated site administrator.

**Dedicated Off-site Support Rep:** NEXGEN will provide additional customer support representatives at the NEXGEN call center facility to service calls from the buying organization on a per hour, per seat basis.

Success of the effort will be determined by the Exchange's ability to meet Agency's functional objectives as stated in each task order.

( END )

# Klein Decl. Part V

# EXHIBIT 104

2915584.1

AUG-09-2006  10:41         SBA LITIGATION                202 205 7154    P.06/18

## IN THE MATTER OF NEXGEN SOLUTIONS, INC.
## AND THE UNITED STATES

### SETTLEMENT AGREEMENT

For the purpose of disposing of any pending or potential claims of NEXGEN Solutions, Inc., its principals, parents, affiliates and subsidiaries, and any other related entities or individuals (collectively "NEXGEN"), or the United States arising out of or related to contracts SBAHQ-01-C-001 and SBAHQ-02-D-001 between NEXGEN Solutions, Inc., and the United States Small Business Administration ("SBA"), without any judicial or administrative proceedings, and without there being any trial or adjudication of any issue of law or fact, and without constituting an admission of liability on the part of any party, and for no other purpose, NEXGEN and the United States (the "parties") stipulate and agree as follows:

### DEFINITIONS

A.  For purposes of this Settlement Agreement (the "Agreement"), the term "NEXGEN" shall include NEXGEN Solutions, Inc., all of its subsidiaries, parents, affiliates (including, but not limited to, NEXGEN Commerce, Inc., and/or any other corporation owned and controlled by Edward Howlette, Jr.), and each of their respective past, present, and future shareholders, owners, directors, officers, employees, partners, agents, attorneys, predecessors and successors in interest, legal representatives, and assigns, both in their official capacities

and individually.

B.   For purposes of this Agreement, the term "United States" shall include all of its agencies and departments, including the SBA, and any officials, employees, agents, representatives, and attorneys acting on their behalf.

C.   For purposes of this Agreement, the term "Small Business Registrants" shall include the small business entities that registered and paid for the SBA Exchange Program, as well as their principals, owners, employees and agents.  The Small Business Registrants are listed in Attachment A, appended hereto, along with the amount of registration fees they paid.

## TERMS

1.   On October 19, 2000, SBA entered into contract number SBAHQ-01-C-001 with NEXGEN Solutions, Inc. ("the first contract") pursuant to SBA's Business Development (8(a)) Program to develop an e-commerce marketplace known as "SBA Exchange" (or "SBA Exchange Program").

2.   On September 30, 2002, SBA entered into contract number SBAHQ-02-D-001 with NEXGEN Solutions, Inc. ("the second contract") under which task orders would be issued and NEXGEN Solutions, Inc. would "furnish customized services for SBA Exchange."

3.   On or about August 28, 2003, SBA advised NEXGEN Solutions, Inc. that it planned to terminate the first and second

2

contracts for the convenience of the Government.

4. On September 4, 2003, NEXGEN submitted a "Termination for Convenience Settlement Proposal, Stop Work Order Adjustment and Request for Equitable Adjustment of NEXGEN Solutions, Inc. Pursuant to Contract No. SBAHQ-01-C-001."

5. On October 22, 2003, NEXGEN submitted a revised "Termination for Convenience Settlement Proposal, Claim, Stop Work Order Adjustment and Request for Equitable Adjustment of NEXGEN Solutions, Inc. Pursuant to Contract Nos. SBAHQ-01-C-001 and SBAHQ-02-D-001."

6. On December 11, 2003, SBA terminated the first and second contracts for the convenience of the Government.

7. The parties subsequently entered into negotiations designed to resolve amicably any and all claims NEXGEN has or may have against the United States under or related to the first and second contracts.

8. NEXGEN has offered to settle its claims for payment by the United States in the amount of $2,900,000; of which $2,300,000 is to be paid as soon as possible to NEXGEN (c/o its attorneys, Holland & Knight, LLP); and $600,000 is to be held by the United States for the purpose of reimbursing the Small Business Registrants, as described in paragraphs 10 and 11, below, with any balance remaining from the $600,000 remitted to NEXGEN in accordance with paragraph 11d, following payments to

3

the Small Business Registrants listed in Attachment A to this

Agreement that have made or may make claims against SBA for

refund of their fees.  This payment is inclusive of interest,

with each party to bear its own costs, attorney fees and

expenses.

    9.  NEXGEN's offer has been accepted on behalf of the

Attorney General.

    10. a.  At the time of execution of this Agreement, NEXGEN

agrees to furnish to SBA the following information with respect

to each and every Small Business Registrant listed on Attachment

A:

       (1) the company name;

       (2) the contract with the Small Business
Registrant and the amount paid;

       (3) the amount, if any, refunded by NEXGEN or from
any other source;

       (4) the name of a point of contact, if any;

       (5) the business address, telephone number and e-
mail address (if any); and

       (6) any additional information in its possession
that will assist SBA in identifying and contacting
each and every Small Business Registrant.

    b.  NEXGEN and Edward Howlette, Jr. hereby warrant and

represent that to the best of their knowledge, the information in

4

subparagraph 10a is true and correct and that Attachment A

contains each and every Small Business Registrant that paid

registration or other fees to NEXGEN to participate in SBA

Exchange.

   c.  NEXGEN agrees to undertake all reasonable efforts

to assist SBA in identifying and locating the Small Business

Registrants, resolving any issues concerning the amount and

nature of fees paid by and/or refunded to such Small Business

Registrants, and distributing the funds in exchange for the Small

Business Registrant's release of claims referred to in paragraphs

8 and 11b.

   11.  The United States agrees to take the following actions:

      a.  Counsel for the Department of Justice will refer

the matter to the Department of the Treasury for payment pursuant

to the Judgment Fund, 28 U.S.C. § 2414, in the amount of

$2,300,000.  The United States will request that payment be made

to counsel for NEXGEN, Gerry Sikorski, Esq., Holland & Knight,

LLP, in the manner identified by NEXGEN Solutions, Inc. and/or

Mr. Sikorski.

      b.  Upon receipt of the information identified in

paragraph 10a, above, the appropriate official(s) within SBA will

make best efforts to identify and locate the Small Business

Registrants identified in Attachment A; provide these Registrants

with a claim form and notice of the deadline for filing their

5

claims for refund of the registration fees paid to NEXGEN (minus
any reimbursement of these fees in whole or part from any source
whatsoever), which payment will be conditioned on the release by
the Small Business Registrant of any and all claims the Small
Business Registrant may have against NEXGEN and/or SBA and the
United States, as a result of having registered to participate in
SBA Exchange and its agreement with NEXGEN; and to establish and
implement the procedures for refunding such fees to the
appropriate Registrants and execution of the release.  Nothing
herein shall be construed as an admission by NEXGEN or the United
States that any Small Business Registrant is entitled to a refund
of money or that any Small Business Registrant has a valid claim
against the United States or NEXGEN.  SBA will have the sole
discretion in determining the amount to be refunded to each of
the Registrants.  The United States will refer the approved
claims of the Small Business Registrants to the Department of the
Treasury for payment pursuant to the Judgment Fund, 28 U.S.C. §
2414, in the amount determined by SBA, for each Small Business
Registrant that has agreed to accept such amount in exchange for
the release of any and all claims that the Registrant may have
against NEXGEN and/or SBA and the United States as a result of
having registered to participate in SBA Exchange and its
agreement with NEXGEN.

     c.  If the $600,000 identified in paragraphs 8 and 11b,

above, is not sufficient to reimburse fully all Small Business
Registrants that file a timely claim and release, SBA shall have
the sole discretion to determine the amount each Registrant shall
receive.   NEXGEN will not be required to provide any additional
funds for this purpose.

     d.  If any part of the $600,000 to be distributed to
Small Business Registrants following the expiration of the claim
period is not expended to reimburse fully all the Small Business
Registrants, the remaining amount shall be paid to NEXGEN
Solutions, Inc., c/o its attorneys, Holland & Knight, LLP.  In
the event of an unresolved dispute with a Small Business
Registrant, the United States may hold back from the payment to
NEXGEN a reasonable amount sufficient to resolve the dispute.

    12.  Upon satisfaction of the terms set forth in paragraphs
10 and 11, above, NEXGEN releases, waives, and abandons all
claims against the United States, its political subdivisions
(including but not limited to SBA), its officers, agents, and
employees, both in their official capacities and individually,
arising out of or related to the first and second contracts, the
SBA Exchange Program, and NEXGEN's agreements with the Small
Business Registrants, regardless of whether they were included in
the termination for convenience and claim proposals, including
but not limited to any claims for defamation, costs, expenses,
interest, attorney fees, compensatory damages, and exemplary

damages.

13.  Upon satisfaction of the terms set forth in paragraphs 10 and 11, above, the United States releases, waives, and abandons any and all potential claims which it may have against NEXGEN, except fraud, arising out of or related to the first and second contracts and the SBA Exchange Program, including but not limited to any claims for defamation, costs, expenses, interest, attorney fees, compensatory damages, and exemplary damages.

14.  This Agreement is in no way related to or concerned with income or other taxes for which NEXGEN is now liable or may become liable in the future as a result of this Agreement.

15.  NEXGEN warrants and represents that no other action, alternative dispute resolution proceeding, or suit arising out of or related to the claims advanced in its termination for convenience proposals and claims, the first and second contracts, the SBA Exchange Program, and/or its agreements with the Small Business Registrants against the United States is pending or will be filed in or submitted to any court, administrative agency, legislative body, or any other legal proceeding. NEXGEN further warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to any such claims. Should there be now or in the future any violation of these warranties and representations, any amount paid by the United States pursuant to this Agreement shall

8

be refunded promptly by NEXGEN, together with interest thereon at

the rates provided in 41 U.S.C. § 611, computed from the date the

United States makes payment.

16.  This Agreement is for the purpose of settling any and

all pending, or potential claims arising out of or related to the

first and second contracts, the SBA Exchange Program, as well as

the claims of the Small Business Registrants as described in

paragraphs 10 and 11, above, and for no other purpose.

Accordingly, this Agreement shall not bind the parties, nor shall

it be cited or otherwise referred to, in any proceedings, whether

judicial or administrative in nature (including dispute

resolution proceedings), in which the parties or counsel for the

parties have or may acquire an interest, except as is necessary

to effect the terms of this Agreement.

17.  All persons signing this Agreement represent that they

are authorized to enter into this Agreement on behalf of the

entity for which they sign.

18.  This document constitutes a complete integration of the

agreement between NEXGEN and the United States and supercedes any

and all prior oral or written representations, understandings or

agreements among or between them.

AGREED TO:

PETER D. KEISLER
Assistant Attorney General

9

AUG-09-2006  10:43        SBA LITIGATION                    202 205 7154    P.15/18

DAVID M. COHEN
Director
Authorized Representative of
the Attorney General

KATHRYN A. BLEECKER
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn:  Classification Unit
       8th floor
1100 L Street, N.W.
Washington, D.C.    20530

Attorneys for the
United States

Dated: _11/12/04_

EDWARD HOWLETTE, JR.
Individually and as President
of NEXGEN Solutions, Inc.

Dated:

HOLLAND & KNIGHT, LLP

By: PAUL KIERNAN
Suite 100
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Attorneys for NEXGEN

Dated: _11/15/04_

10