UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| INDUSTRIAL BANK, N.A., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-291 (RMC) |
| UNITED STATES, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

In this case, a creditor and the Internal Revenue Service battle over who holds a superior interest in certain settlement monies. Industrial Bank, N.A. brought this suit against the United States and the Commissioner of the IRS seeking a declaratory judgment that it has the superior claim to approximately $160,000 in monies from a settlement agreement between the Small Business Administration and Nexgen Solutions, Inc. The federal tax liens have priority in this case, and the government has a right of offset; thus, summary judgment will be granted in favor of the government.

**I. FACTS**

Pursuant to certain "no cost" contracts between Nexgen and the Small Business Administration ("SBA"), Nexgen agreed to set up an electronic procurement website to be used by small businesses seeking government contracts. Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem."), Ex. 2 Klein Decl. ¶¶ 4, 7, 11, & 14. The SBA made no payments to Nexgen prior to the termination of the contracts. Instead, Nexgen was to receive payments directly from participants in

its electronic marketplace.  *Id*. ¶ 5.  At the end of 2003, the SBA terminated its contracts with Nexgen "for the convenience of the government pursuant to the government's contractual rights." *Id*. ¶ 19.  Then, on October 15, 2004, the government and Nexgen entered into a stipulation of settlement, whereby by the SBA paid $2.3 million to Nexgen immediately and retained $600,000 to reimburse small business participants who had made payments to Nexgen for services related to the electronic procurement website.  The government wanted to ensure that small business participants who had made payments to Nexgen would be reimbursed for any losses they incurred from their participation in the electronic procurement website.  *Id*. ¶ 24.  Nexgen retained a reversionary interest in any monies remaining that were not used to reimburse small businesses.  About $160,000 remains from this $600,000 fund; the remaining money is currently held by the Department of the Treasury.  *Id*. ¶ 23.[1]

Industrial Bank, N.A. (the "Bank") extended loans to Nexgen in 1996 and 1997, which were secured by collateral agreements covering all "accounts receivable and contract rights, chattel paper, general intangibles and instruments, inventory, equipment and proceeds thereof that Nexgen then owned or thereafter acquired."  Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem."), Ex. 1 Gamble Decl. ¶¶ 2-6.  Nexgen defaulted on the loans.  *Id*. ¶ 9.  On September 1, 2000, the Bank obtained a judgement by confession against Nexgen.  *Id*. ¶ 10.

The Bank contends that it has a right to the remaining $160,000 that is prior and superior to any right held by the government.  The government has an interest in the monies pursuant to two notices of federal tax lien filed against Nexgen.  The government filed the first notice on

---

[1] The government made a $50,000 payment to Industrial Bank from the retained monies on March 24, 2006.

March 17, 2004, reflecting an amount due of $504,133.77, and the second notice on December 15, 2005, showing an amount due of $219,469.43. Defs.' Mem., Ex. 1 Weir Decl. ¶¶ 1-2. Nexgen has outstanding federal tax liabilities totaling $770,922.13, plus interest and statutory additions. *Id.* ¶¶ 5, 7, & 9.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not

significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

The Bank contends that it has a superior interest in the settlement proceeds as the holder of a confession judgment and that it has super-priority status under federal statute. In fact, the government's lien interest is superior; further, the government has a right of set-off.

#### A. Tax Lien Priority Over An Inchoate Lien

The federal tax liens in this case have priority over the Bank's confession judgment lien. Pursuant to statute, federal tax liens arise as follows:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. A tax lien arises when an assessment is recorded and continues until the debt is satisfied or becomes unenforceable due to the lapse of time, *id*. § 6322, and it reaches "every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985).

The priority of federal tax liens against competing liens is governed by federal law, *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960), and under federal law "first in time is first in right." *United States v. McDermott*, 507 U.S. 447, 449 (1993). For a state-created lien to take priority over a federal tax lien, the state lien must be both perfected and choate. *County Nat'l Bank of S. Florida v. Duper*, No. 95-2165, 1996 WL 881160, at *3 (D.D.C. Oct. 28, 1996). Thus, a

general tax lien takes priority over a perfected but inchoate lien. *Id*. A lien is choate if "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Id*. (quoting *United States v. New Britain*, 347 U.S. 81, 84 (1954)).

The government filed two notices of tax lien, one in March 2004 and the other in December 2005. The Bank acquired its lien by way of a confession judgment in September 2000. While the Bank's lien predates the federal tax lien, the Bank's lien was not choate because the property allegedly subject to the Bank's lien, the settlement fund, was not established prior to the federal tax lien notices. The settlement agreement that created the fund is dated October 15, 2004, seven months after the first federal tax lien.

The Bank contends that its lien attached to the contracts between Nexgen and the SBA, that these contracts were "definite and enforceable pre-existing contracts entered into before the IRS filed its tax liens," and that these contracts created a right to payment that led to the settlement agreement between Nexgen and the SBA. Pl.'s Mem. at 7-9. The Bank relies on *Dorrough, Parks & Co. v. Aspen Marine Croup*, 185 B.R. 46, 48 (E.D. Tenn. 1995), which held that a secured creditor's perfected security interest took priority over a federal tax lien in the proceeds of a settlement. In *Dorrough*, however, the settlement arose pursuant to a pre-existing contract that required payment for services rendered. *Id*. at 49. Here, in contrast, the contracts between Nexgen and the SBA were "no cost" contracts that did not require the SBA to make any payments to Nexgen. Under the "no cost" contracts, Nexgen was to receive payment directly from the small business participants in the electronic marketplace, not from the SBA. The SBA's obligation to make payments to Nexgen arose when the SBA entered into the October 2004 settlement agreement. The government's lien and the Bank's judgment lien attached on the date the settlement fund was created.

When liens attach at the same time, the federal liens generally have priority. *McDermott*, 507 U.S. at 455. Thus, the government's tax lien primes the Bank's lien.

### B. Super-Priority Protection Does Not Apply

The Bank also erroneously claims that it qualifies for "super-priority" protection under 26 U.S.C. § 6323(c). Section 6323(c) provides that a federal tax lien will not have priority over a security interest which came into existence after the notice of tax lien was filed if the security interest "is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting . . . a commercial transactions financing agreement." *Id*. § 6323(c)(1)(A). With respect to commercial transactions financing agreements, the statute limits qualified property to commercial financial security acquired by the taxpayer before the 46th day after the date of the tax filing. *Id*. § 6323(c)(2)(A). Accordingly, under this "45-day rule," property not yet owned or acquired by the debtor/taxpayer by the 45th day after the tax lien filing is not subject to the creditor's super-priority. *Donald v. Madison Indus., Inc.*, 483 F.2d 837, 844-45 (10th Cir. 1973). For example, the IRS has priority over accounts receivable earned more than 45 days after a notice of federal tax lien is filed. *See In re Thomas Comm., Inc.*, 161 B.R. 621, 627 (S.D. W. Va. 1993).

For the Bank's commercial transactions financing agreement to be entitled to super-priority protection, Nexgen had to have acquired the property that served as collateral for the Bank loan within 45 days after the government filed its first notice of tax lien, i.e., March 17, 2004. However, Nexgen and the SBA did not enter into the settlement agreement until October 15, 2004,

almost seven months after the notice of tax lien. The Bank's lien on property that was acquired more than 45 days after the federal tax lien was filed is not entitled to super-priority status.[2]

The Bank also contends that it is a judgment lien creditor entitled to super-priority status. *See* 26 U.S.C. § 6323(a). A "judgment lien creditor" is a person who has obtained a valid judgment for a sum of money and has "perfected a lien under the judgment on the property involved." 26 C.F.R. § 301.6323(h)-1(g). A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established. *Id*. Further, "[i]f under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such law is not perfected until levy or seizure of the personal property involved." *Id*. Maryland law provides that a writ of execution on a money judgment does not become a lien on personal property until actual levy is made. Md. Code. Ann. Cts. & Jud. Proc. § 11-403.

The Bank is not a judgment lien creditor under section 6323(a) because the property subject to the lien – the settlement fund – was not defined and known until the settlement agreement was reached in October 2004, well after the first notice of tax lien was filed in March 2004. Moreover, the Bank did not perfect its judgment lien by actually levying on Nexgen's personal property. *See* Pl.'s Mem. at 2-3 (the Bank "agreed not to levy on its judgment" based on Nexgen's assurances that its outstanding debt would be satisfied by payment from its contracts with the SBA).

---

[2] The government also argues that the Bank is not a holder of a perfected security interest under § 6323(a) because it let its financing statements lapse. "Upon lapse, a financing statement ceases to be effective and any security interest . . . that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise." Md. Code. Ann. Com. Law. § 9-515(c); D.C. Stat. § 28:9-515(c); *see General Elec. Credit Corp. v. Isaacs*, 581 P.2d 1032, 1035 (Wash. 1978) (upon lapse, a tax lien acquires priority). It is not necessary to reach this issue.

### C. The Government's Right of Offset

The government has the right to offset the settlement fund against Nexgen's federal tax liabilities. The common law right of offset, or set-off, permits a person "to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due him." *United States v. Munsey Trust Co.*, 332 U.S. 234, 239 (1947). The federal government has the same right of set-off as any other creditor. *Id.*; *Glassman Constr. Co. v. Fid. & Cas. Co.*, 356 F.2d 340, 342 n.1 (D.C. Cir. 1966).

Nexgen has federal tax liabilities totaling $770,922.13. The Department of the Treasury is holding $160,000, the remainder of the settlement fund. The government is entitled to set-off Nexgen's tax debt against the monies held by the Department of Treasury.

### IV. CONCLUSION

For the reasons explained above, the Bank's motion for summary judgment [Dkt. # 17] will be denied and the government's motion for summary judgment [Dkt. # 18] will be granted. A memorializing order accompanies this Memorandum Opinion.

Date:   October 16, 2008                             /s/
                                      ROSEMARY M. COLLYER
                                      United States District Judge